# EXHIBIT 1

Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ABDIKARIM KARRANI,<br><br>        Plaintiff,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, a<br>Delaware corporation,<br><br>        Defendant. | No.: 2:18-cv-01510-RSM<br><br>PLAINTIFF'S FIRST INTERROGATORIES<br>AND REQUESTS FOR PRODUCTION TO<br>DEFENDANT JETBLUE AIRWAYS<br>CORPORATION *AND DEFENDANT<br>JETBLUE AIRWAYS CORPORATION'S<br>FIRST SUPPLEMENTAL RESPONSES<br>THERETO* |

JetBlue Airways Corporation ("JetBlue") supplement their initial responses to Plaintiff's

First Interrogatories and First Requests for Production, as follows. These supplemental responses

are based on information reasonably available at this time after a duty diligent search.

**GENERAL OBJECTIONS**

JetBlue objects to the extent that Plaintiff's instructions purport to impose a duty beyond

that imposed by the Federal Rules of Civil Procedure and Local Civil Rules. JetBlue also objects

to Plaintiff's definitions to the extent they differ from the plain meaning of any particular term.

JetBlue specifically objects to the definition of AS7 as being a JetBlue flight. AS7 was the flight

Plaintiff originally booked with Alaska Airlines but apparently missed when he was delayed

during his travels. The JetBlue flight was Flight B263.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 1

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

JetBlue is prohibited from releasing any information or documents designated by the Transportation Security Administration as Sensitive Security Information ("SSI") pursuant to 49 U.S.C. § 114(r) (formerly (s)) (2009); 49 C.F.R. § 1520.5; *Chowdhury v. Northwest Airlines*, 226 F.R.D. 608 (N.D. Cal. 2004). SSI shall not be disclosed to persons without a "need to know," as defined in 49 CFR parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation. Unauthorized release may result in civil penalty or other action. *See, e.g., Chowdhury*, 226 F.R.D. at 610–15 (N.D. Cal. 2004) ("The regulations do not include a 'civil litigant' or 'his attorney' as a person with a 'need to know.'"). In addition, certain interrogatories and requests for production of documents may seek confidential, commercial and financial information that is exempt from disclosures pursuant to 49 C.F.R. § 7.17.

JetBlue objects to any request to produce a privilege log for documents created after the filing of the original complaint in this matter, including those documents created by JetBlue's counsel of record, JetBlue's in-house counsel/risk management department, or JetBlue's insurance adjusters. Responsive documents containing Sensitive Security Information and other privileged or non-disclosable matters will be identified in JetBlue's privilege log.

Finally, to the extent JetBlue has objected to discovery requests below, JetBlue requests a conference of counsel pursuant to FRCP 26(b)(2)(C) so that JetBlue can determine if an agreement can be reached regarding the scope of discovery or if a motion for protective order should be filed.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 2

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**     Identify every person who has any knowledge or information pertaining to the facts and occurrences that are the subject of this lawsuit, the claims and defenses in the case, or with regard to the matters asserted in Plaintiffs' Complaint or Defendant's Answer thereto. For each person identified, state the following:

    (a) Set forth their name, address and most recent known contact information including home and work phone numbers and home and work email addresses;
    (b) If the person is your employee, state that employee's job title or titles in 2018; and
    (c) Describe in detail the knowledge or information possessed by the person.

**ANSWER**:

Upon information and belief, JetBlue discloses the following JetBlue employees who can be contacted through counsel:

Cindy Pancerman
Mary Ann Salvador
Lamont Wilkinson
Mitchell Ouillette, Captain
Michael Cheney, First Officer

JetBlue's employees are anticipated to possess knowledge regarding the allegations and claims asserted against it in Plaintiff's Complaint, JetBlue's defenses to Plaintiff's allegations and claims, JetBlue's operations, policies, and practices and circumstances relating to the subject incident. JetBlue is investigating and will supplement this response as it identifies additional employees or former employees who may have knowledge of matters related to the subject incident.

By way of further response, see the parties' Initial Disclosures and documents produced with these responses.

**REQUEST FOR PRODUCTION NO. 1:**  Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* the parties' Initial Disclosures and supplemental disclosures with these responses.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 3

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 2:**  Please produce the personnel file for each employee identified in the prior interrogatory.

**RESPONSE:**

Objection.  This request is overly broad, unduly burdensome, and seeks information that is not pertinent to the issues, disproportionate to the needs of the case and the importance of the requested matters to the litigation, *see* FRCP 26(b)(1), and unnecessarily invades the reasonable privacy interests of JetBlue's employees. By way of example, this request purports to seek personal and confidential information related to employees' compensation, payroll data, benefits, retirement benefits, insurance, dependents, and other sensitive employment information that has no relation or relevance to Plaintiff's claims.

**INTERROGATORY NO. 2:**      Please identify and describe any instance in which a passenger has complained or sent you a complaint since January 1, 2014.

**ANSWER:**

Objection. This interrogatory is overly broad, unduly burdensome, and expensive, taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues because it is not reasonably limited in terms of time, geographic scope, or subject matter. *See* FRCP 26(b)(1). The interrogatory is overly broad and unduly burdensome to the extent it seeks the identification of "any instance" in which any passenger "complained" about any matter. This could include an inconceivable number of incidents. To illustrate, with respect to subject matter, this interrogatory is improper because it is not reasonably limited to alleged discrimination-based complaints, nor is it limited to complaints regarding passengers removed from flights by law enforcement. As such, this interrogatory is not reasonably limited in terms of time or subject matter and is not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, JetBlue objects to the request that it provide information for the past five years as unreasonable, unduly burdensome, and overly broad. Finally, JetBlue objects to the request that it provide information on other complaints as seeking irrelevant information.

Notwithstanding and without waiving any objection, interpreting this request as seeking complaints related to the Subject Flight, see JB 000080 – JB 000081.

**SUPPLEMENTAL ANSWER:**

**Notwithstanding and without waiving any objections and as agreed between the parties in the March 27, 2019 discovery conference, the scope of this interrogatory is limited to litigated claims related to discrimination. JetBlue conducted a duly diligent search for**

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

litigated claims involving allegations of discrimination since 2014. After receiving a lawsuit, JetBlue's insurer assigns it a code and enters a 5-word description of the claim in its database. JetBlue identified five lawsuits initiated since 2014 by searching for all codes and descriptions that included the word "discrimination." JetBlue produces documents related to these lawsuits as JB 000133–000381

See also redacted version of customer complaint initially produced subject to the Protective Order as JB 000080–JB 000081, now produced as JB 000412–000413.

REQUEST FOR PRODUCTION NO. 3:  Please produce any and all documents related to your answer to the proceeding interrogatory.

RESPONSE:

*See* objection and response to Interrogatory No. 2.

SUPPLEMENTAL RESPONSE:

*See* objection and supplemental answer to Interrogatory No. 2.

REQUEST FOR PRODUCTION NO. 4:  For each investigation, please produce any and all documents that are related to the investigation.

RESPONSE:

Objection. This request is vague and confusing because it is unclear what is intended by "each investigation." By way of further objection, to the extent this Request seeks documents related to JetBlue's investigation of the subject incident conducted in anticipation of litigation, JetBlue further objects that any such documents would be protected by the attorney-client privilege or work product doctrine.

Notwithstanding and without waiving any objection, *see* previously produced Incident Reports [JB 000001 – JB 000010] and supplemental production of Incident Reports with these responses [JB 000072 – JB 000079].

SUPPLEMENTAL RESPONSE:

*See* objection and supplemental answer to Interrogatory No. 2.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 5

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 5:**  Please produce all emails related to each investigation.

**RESPONSE:**

*See* objection to Request for Production 4.

Notwithstanding and without waiving any objections, JetBlue searched for and did not locate emails in the JetBlue email accounts of the subject flight's crew members that related to flight B263.   Note that, in the ordinary course of business and consistent with JetBlue's e-mail deletion policy, all emails are deleted after 90 days unless archived.

**INTERROGATORY NO. 3:**          For each complaint stated above, please identify each investigation, whether internal and external, into each complaint.  For each investigation, state:

(a)  A summary of the complaint;
(b)  The name, address, telephone number and email address of the person making the complaint;
(c)  The date of the complaint;
(d)  The identity of the persons or entities conducting the investigation;
(e)  Findings and conclusions of each investigation;
(f)  Whether the findings and conclusions were written;
(g)  Actions taken by you as a result of each investigation.

**ANSWER:**

*See* objection and response to Interrogatory No. 2.

**SUPPLEMENTAL ANSWER:**

*See* **objection and supplemental answer to Interrogatory No. 2.**

**REQUEST FOR PRODUCTION NO. 6:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 2.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS*
*CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 6

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**SUPPLEMENTAL RESPONSE:**

*See* objection and supplemental answer to Interrogatory No. 2.

**INTERROGATORY NO. 4:** Please identify the flight crew.

**ANSWER:**

> Cindy Pancerman
> Mary Ann Salvador
> Lamont Wilkinson
> Mitchell Ouillette, Captain
> Michael Cheney, First Officer

**REQUEST FOR PRODUCTION NO. 7:** Please produce the personnel file for each member of the flight crew.

**RESPONSE:**

Objection.  This request is overly broad, unduly burdensome, and seeks information that is not pertinent to the issues, disproportionate to the needs of the case and the importance of the requested matters to the litigation, *see* FRCP 26(b)(1), and unnecessarily invades the reasonable privacy interests of JetBlue's employees. By way of example, this request purports to seek personal and confidential information related to employees' compensation, payroll data, benefits, retirement benefits, insurance, dependents, and other sensitive employment information that has no relation or relevance to Plaintiff's claims.

**REQUEST FOR PRODUCTION NO. 8:** Please produce all emails from or to any member of the flight crew that relate to Flight AS7.

**RESPONSE:**

Objection. JetBlue objects to the extent this request seeks information or documents protected by the attorney-client privilege and/or the work product doctrine. By way of further objection, the subject flight was JetBlue Flight B263.

Notwithstanding and without waiving any objections, JetBlue searched for and did not locate any emails from or to flight crew members on flight B263 that related to flight B263.  Note that, in the ordinary course of business and consistent with JetBlue's e-mail deletion policy, all emails are deleted after 90 days unless archived.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 7

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 9:** Please produce all text messages from or to any member of the flight crew that relate to Flight AS7.

**RESPONSE:**

Objection. To the extent this Request seeks text messages exchanged in the course of or in anticipation of litigation as any such text messages are protected by the attorney-client privilege and work product doctrine. JetBlue objects to this interrogatory to the extent it seeks information in the custody or control of third parties. By way of further objection, the subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waiving any objections, JetBlue does not provide company issued phones and does not have access to the flight crew's private phones or text messages.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents related to the training received by JetBlue employees on or relating to race or national origin discrimination.

**RESPONSE:**

Objection. This request for production is overly broad and unduly burdensome, taking into account the needs of the case and the importance of the issues at stake in the litigation. *See* FRCP 26(b)(1). By way of example, requests for policies or training not in effect at the time of the subject incident are not reasonably calculated to lead to the discovery of admissible evidence.

JetBlue will search for and produce documentation related to policies of inclusivity and diversity. By way of initial response, see JB 000095 and FAM Section 2.7.1, produced subject to the protective order as JB 000096.

**SUPPLEMENTAL RESPONSE:**

Notwithstanding and without waiving any objections, *see* **JB 000382–000411.**

**INTERROGATORY NO. 5:** Please identify all investigations, both internal and external into the actions of the flight crew on Flight AS7. For each investigation, state:

(a) A summary of the complaint you had investigated;
(b) The identity of the persons or entities conducting the investigation;
(c) Findings and conclusions of each investigation;
(d) Whether the findings and conclusions were written;
(e) Actions taken by you as a result of each investigation.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**ANSWER:**

Objection. JetBlue objects to the extent this request seeks information or documents protected by the attorney-client privilege and/or the work product doctrine. By way of further objection, the subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waving any objections, *see* previously produced Incident Reports [JB 000001 – JB 000010] and supplemental production of same removing certain redactions [JB 000070 – JB 000079].

**REQUEST FOR PRODUCTION NO. 11:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* response to Interrogatory No. 5.

**INTERROGATORY NO. 6:** Please state your gross and net profits from January 1, 2010 to the present.

**ANSWER:**

Objection. This request is overly broad, unduly burdensome, and seeks irrelevant information because it seeks financial information from 2010. JetBlue further objects to the extent responsive information may be obtained by Plaintiff though public court records or other means by which Plaintiff has equal access.

Notwithstanding and without waving any objections, JetBlue directs Plaintiff to the publicly-available financial information available via:

https://www.nasdaq.com/symbol/jblu/financials?query=income-statement

**SUPPLEMENTAL ANSWER:**

**Notwithstanding and without waiving any objections, *see* http://blueir.investproductions.com/investor-relations/financial-information/sec-filings.**

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 9

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 12:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 6.

**INTERROGATORY NO. 7:** Please identify every complaint against Cindy Pancerman in the last ten years. As to each:

    (a) State the nature of the alleged complaint;
    (b) State the date(s) of the alleged mistreatment;
    (c) Identify all documents related to the alleged mistreatment;
    (d) Identify all documents that relate to your response to the alleged mistreatment;

**ANSWER:**

Objection. This request is overly broad taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues because it is not reasonably limited in terms of time, geographic scope, or subject matter. *See* FRCP 26(b)(1). To illustrate, with respect to subject matter, this request is improper because it is not reasonably limited to discrimination-related allegations, nor is it limited to actions between passengers and Ms. Pancerman. The request is vague in that it does not define what kind of complaint so as to be subject to multiple interpretations. In addition, JetBlue objects to the request that it provide information for the past ten years as unreasonable, unduly burdensome, and overly broad. Finally, JetBlue objects to the request that it provide information on other complaints as seeking irrelevant and private information regarding other customers.

Subject to and without waiving any objections, JetBlue will search for and produce any documented customer complaints involving crew member Cindy Pancerman in the three years prior to the subject flight. Any such material will be produced subject to protective order.

**SUPPLEMENTAL ANSWER:**

Notwithstanding and without waiving any objections, in the ordinary course of business and consistent with JetBlue's document retention policy and 14 CFR 249.20, customer complaints are deleted after 3 years. By way of further response, JetBlue produces the following complaints regarding crewmember Cindy Pancerman and corresponding incident reports, if any, since 2016. JetBlue is still working to produce these records in their original format. JB 000414–000419.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 13:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 7.

**SUPPLEMENTAL RESPONSE:**

*See* **objection and supplemental answer to Interrogatory No. 7.**

**INTERROGATORY NO. 8:** Please identify every passenger on Flight AS7.

**ANSWER:**

Objection. This request is overly broad, unduly burdensome, and an unreasonable invasion into the privacy interests of passengers, particular of passengers not in a position to observe the interactions at issue in this litigation. *See* FRCP 26(b)(1). By way of further objection, airline passengers have a federally-recognized expectation of privacy. 14 C.F.R. § 243. JetBlue also notes that the subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waiving any objections JetBlue produces, subject to the protective order, available contact information for passengers assigned to seats A–F in rows 1–3 as well as the passengers mentioned in the Incident Reports related to the subject flight. [JB 000082].

**REQUEST FOR PRODUCTION NO. 14:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 8. By way of further objection, it is unclear what "documents" are sought. JetBlue objects to the production of Passenger Name Records of other passengers as such documents contain private and confidential information.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 11

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 15:** Please produce a seating chart for Flight AS7.

**RESPONSE:**

*See* objection and response to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 16:** Please produce a diagram showing the seat layout of Flight AS7.

**RESPONSE:**

Objection. The subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waiving any objection, see the attached reflecting a seat diagram for the subject aircraft [JB 000083 – JB 000084].

**INTERROGATORY NO. 9:** On the date of his removal, please state every reason for removing Mr. Karrani from Flight AS7. For each reason, please state:

(a)  The identity of the person who formulated this reason, and whether the reason was recorded or was made in writing on the date that Mr. Karrani was removed from Flight AS7;

(b) If the reason was stated verbally or in writing to a member of the flight crew, state who stated the reason, and who was told or otherwise informed of the reason;

(c)  If the reason was recorded or was made in writing at a later date, please state the date and identify who made the document recording the reason;

(d) The Identity of each person who participated in formulating the reason;

(e) Identify the person or persons who made, or participated, in the decision to remove Mr. Karrani from Flight AS7.

**ANSWER:**

Objection. The subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waiving any objections, *see* the information contained in previously produced Incident Reports [JB 000001 – JB 000010] and supplemental production of same removing certain redactions [JB 000072 – JB 000079]. Further information is available via deposition of the involved flight crew members.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 17:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 9.

**INTERROGATORY NO. 10:**     Please identify all passengers on Flight AS7. For each please state:

    (a) Their first and last name;
    (b) Most recent known address;
    (c) Last know phone number;
    (d) The seat number occupied by the passenger.

**ANSWER:**

*See* objection and response to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 18:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 8 and Request for Production No. 14.

**INTERROGATORY NO. 11:**     Please state every reason for JetBlue's refusal to reimburse Mr. Karrani for the cost of the following flights which he took on January 21, 2018:

    (a) Delta Flight No. 1698 from Billings, Montana to Salt Lake City, Utah.
    (b) Delta Flight No. 827 from Salt Lake City, Utah to Seattle, Washington.

**ANSWER:**

Objection. JetBlue objects to this Interrogatory as argumentative and misleading in that it assumes Plaintiff made a request to JetBlue to be reimbursed and that JetBlue denied such request.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Notwithstanding and without waiving any objections, JetBlue responds that it has no record of Plaintiff requesting reimbursement for the Delta Flights. As such, JetBlue denies any refusal.

**SUPPLEMENTAL ANSWER:**

**Notwithstanding and without waiving any objections, JetBlue responds that Mr. Karrani spoke with Airport Operations Supervisor, Clathyn Williams, sometime after the flight regarding a request for reimbursement. Mr. Williams directed Mr. Karrani to email JetBlue's Customer Commitment team regarding this request. JetBlue has no record of receiving such an email.**

**REQUEST FOR PRODUCTION NO. 19:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 11.

**INTERROGATORY NO. 12:** For each request for production, please identify each document that is responsive to each request. If you use Bates stamps, please provide the Bates-stamp number of each document, which is intended to be responsive to the request for production.

**ANSWER:**

JetBlue's document productions in this matter are bates labeled.

**INTERROGATORY NO. 13:** Identify the person or persons answering these interrogatories including anyone who contributed information used in answering these interrogatories. If more than one individual provided the answers or contributed any information used in answering these interrogatories, identify the specific interrogatory answered by each person and the information provided.

**ANSWER:**

Objection. JetBlue objects to the extent this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine.

Notwithstanding and without waiving any objections, the information responsive to these requests was identified and collected by authorized JetBlue personnel at the direction of counsel.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 14

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 20:** Please produce all documents related to the rules, policies or procedures in effect at JetBlue regarding medical emergencies on a flight.

**RESPONSE:**

Objection. This request for production is overly broad and unduly burdensome, taking into account the needs of the case and the importance of the issues at stake in the litigation. Requests for policies not in effect at the time of the subject incident are not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding and without waving any objections, JetBlue produces, subject to the protective order, Flight Attendant Manual Sections 11.3, 11.4, 11.5, and 11.14 [JB 000085 – JB 000094].

**REQUEST FOR PRODUCTION NO. 21:** Please produce all documents related to the training received by JetBlue employees on or relating to cultural sensitivity.

**RESPONSE:**

*See* objections and response to Request for Production No. 10.

**SUPPLEMENTAL RESPONSE:**

*See* **objection and supplemental response to Request for Production No. 10.**

**REQUEST FOR PRODUCTION NO. 22:** Please produce all documents related to the training received by JetBlue employees on or relating to race or national origin discrimination.

**RESPONSE:**

*See* objections and response to Request for Production No. 10.

**SUPPLEMENTAL RESPONSE:**

*See* **objection and supplemental response to Request for Production No. 10.**

**REQUEST FOR PRODUCTION NO. 23:** Please produce all documents related to the training received by JetBlue employees on or relating to implicit bias.

**RESPONSE:**

Objection. This request for production is overly broad and unduly burdensome, taking into account the needs of the case and the importance of the issues at stake in the litigation.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 15

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Requests for policies not in effect at the time of the subject incident are not reasonably calculated to lead to the discovery of admissible evidence. *See* FRCP 26(b)(1). JetBlue further objects to this request as seeking irrelevant information that is disproportionate to the needs of the case and the importance of the requested matters to the litigation. For example, implicit bias is not an element of Plaintiff's discrimination claim.

*See* response to Request for Production No. 10.

**SUPPLEMENTAL RESPONSE:**

*See* **objection and supplemental response to Request for Production No. 10.**

**REQUEST FOR PRODUCTION NO. 24:** For each year since January 2013, please produce all documents related to the rules, policies, procedures, contract provisions, federal or state regulations or laws in effect at JetBlue or governing JetBlue's actions for the removal of a passenger from a flight before, during, or after the flight.

**RESPONSE:**

Objection. This request for production is overly broad and unduly burdensome, taking into account the needs of the case and the importance of the issues at stake in the litigation. For example, and without limitation, requests for policies not in effect at the time of the subject incident are not reasonably calculated to lead to the discovery of admissible evidence. JetBlue further objects to the extent the information sought in this discovery request is equally available to the propounding party. In addition, JetBlue objects as this request seeks information determined by the Transportation Security Administration ("TSA") to be "Sensitive Security Information," ("SSI") which is prohibited from disclosure in discovery unless the circumstances outlined Section 525(d) of the of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109–295, 120 Stat. 1355, 1382 (Oct. 4, 2006), are met. *See* 49 C.F.R. § 1520 *et seq.*; *Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 998 (9th Cir. 2012); *see also* https://www.dhs.gov/publication/sensitive-security-information-use-litigation.

Notwithstanding and without waving any objections, see JetBlue's previously produced Contract of Carriage [JB 000014 – JB 000067]. The pertinent federal regulations responsive to this request include but may not be limited to: 49 U.S.C. § 44902; 14 C.F.R. § 91.11; 14 C.F.R. § 121.580; and 14 C.F.R. § 121.533. Additionally, JetBlue's Flight Attendant Manual contains information relevant to this request; however, these manual excerpts are designated as Sensitive Security Information and JetBlue is prohibited by federal law from producing these materials. *See* 49 C.F.R. § 1520 *et seq.*

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 16

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## ATTORNEY'S CERTIFICATION

I certify that the foregoing responses comply with FRCP 26.

DATED April 12, 2019.

MILLS MEYERS SWARTLING P.S.
Attorneys for Defendant JetBlue Airways
Corporation

By: _Samantha Pitsch_

Caryn Geraghty Jorgensen
WSBA No. 27514
John Fetters
WSBA No. 40800
Samantha Pitsch
WSBA No. 54190

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**VERIFICATION**

Under penalty of perjury under the laws of the United States, I make the following declaration: I am _____ for JetBlue Airways Corporation, and I am an authorized agent for the purposes of verifying these responses on its behalf.  These responses are not within my personal knowledge, but rather have been drafted and assembled by counsel based on information supplied by authorized employees, and JetBlue Airways Corporation believes the responses are true and correct.

DATED _____, 2019.


JETBLUE AIRWAYS CORPORATION



_____
Michael Carbone

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 18

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner indicated a copy of the within and foregoing document upon the following persons:

*Attorneys for Plaintiff:*

John P Sheridan
Mark W. Rose
Sheridan Law Firm, P.S.
705 Second Avenue, Suite 1200
Seattle, WA  98104

☐  Via first class mail, postage prepaid
☐  Via facsimile to
☐  Via legal messenger
☑  Via e-mail:
jack@sheridanlawfirm.com
mark@sheridanlawfirm.com
colton@sheridanlawfirm.com
alea@sheridanlawfirm.com

DATED April 12, 2019.


_____
Linda McIntosh Wheeler

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S FIRST SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 19

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON  98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

EXHIBIT 2

**From:** **Mark Rose** mark@sheridanlawfirm.com
**Subject:** Karrani - Def's Supplemental Answer to Interrogatory 2 and Related Discovery Requests
**Date:** April 16, 2019 at 10:45 PM
**To:** Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Samantha Pitsch spitsch@millsmeyers.com
**Cc:** Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com, Paula McMillan pmcmillan@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Linda Wheeler lwheeler@millsmeyers.com

Counsel:

Defendant's supplemental answer to Interrogatory No. 2 claims that "as agreed between the parties in the March 27, 2019 discovery conference, the scope of this interrogatory [No. 2] is limited to litigated claims related to discrimination." We disagree that Plaintiff agreed to limit Interrogatory No. 2 in this way. Mr. Sheridan's notes of the meet-and-confer state that he "agreed to limit the request to the 'heavy set black woman' who Ms. Pancerman claimed 'screamed' at her on another flight *and* to lawsuits related to discrimination by passengers." He stated as much in the sworn declaration filed in support of Plaintiff's motion to compel. See Dkt. # 20 at p. 5, para. 13 ("At the meet-and-confer, I agreed to limit the requests for other complaints to the woman involved in the prior incident with Ms. Pancerman *and* to other lawsuits by passengers related to discrimination. Opposing counsel could not agree at this time.").

Please supplement your answers to Interrogatory No. 2 and to the related discovery requests (Interrogatory No. 3, and RFP 3-6) without delay, to include responsive information and records related to the previous complaint of racial discrimination made against Ms. Pancerman. The limited documents produced so far about the previous discrimination complaint against Pancerman, JB 414-415, do not include all of the information requested by our discovery requests, including for example the address, telephone number and email address of the person who made the complaint. See Interrogatory No. 3. The copy of the passenger's complaint that we received has several sentences cut off at the side of the page and nowhere does it state the passenger's name or any other identifying information. It seems very unlikely that the passenger wrote several paragraphs to complain to the company, but nowhere listed her name or provided the company with any way for JetBlue to respond to her complaint.  In fact, part of the document produced seems to reveal there may have been back-and-forth with a customer service representative at JetBlue. See JB 414 ("Thank you for your thoughtful email."). If there was such a response by JetBlue, we have not yet received it.

Please confirm that you have no other documents or versions of JB 414 showing the text that was cut off in the version we received; nor any other documents regarding the prior discrimination complaint against Ms. Pancerman (such as statements by other crew members or the "Supervisor" referenced in the complaint), and please provide a signed verification page for Defendant's supplemental answers to support any claim made that no further responsive records exist with respect to the prior incident or with regard to other litigated claims involving allegations of discrimination since 2014.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

# EXHIBIT 3

**On Thursday, February 11, 2016 12:04 PM, Dear JetBlue <DearJetBlue@jetblue.com> wrote:**

To: REDACTED
Re: Email received – Thur 2/11/2016, Contact # 189893

Hello REDACTED,

Thanks so much for your reply and for the additional information to pass along. Please know action will be internally taken regarding what you've sent us. We again, truly apologize that your experience with us wasn't a better one.

We really do hope to be able to coach these crewmembers individually as well as pass along the compliments you shared with us. We hope to improve service and to make sure your next experience with us is a great one.

JetBlue wishes you a most wonderful weekend Fatima, we hope to see you onboard again in the near future.

Warm regards,

Clarissa
Customer Commitment
JetBlue Airways
Crewmember

**On Thursday, February 11, 2016 5:32 AM, Customer wrote:**

Hi Clarissa,

Thank you for your thoughtful email. I would like to file a racial discrimination complaint against both Cindy and the Airport Supervisor (very tall, light skinned black male) who I never got his name, but was told that he is also the supervisor for LAX.

Cindy was intentional in wanting get me off of the plane although I did nothing wrong. While waiting to speak with Michael, she continued to walk past and move in close to me as she initially did. When I realized this, I looked at another passenger who also saw what she was doing and said to him, "do you see how she's moving in close to me to try have us bump into each other?" And, the white male passenger in the front row agreed. Her actions further indicated that her racially targeted actions were intentional. Michael. another airport supervisor, vouched me but she continued to protest that she wanted me off the plane. Subsequently, that did in fact happen.

After I was removed from the plane, I explained the situation to the light skinned black male supervisor who then refused to accommodate me in any capacity other than getting rescheduling my trip. He also yelled at me when I explained to him that I felt racially targeted, as did other non-black passengers that I spoke to while the situation was happening. He told me that I wasn't discriminated against. While this discussion took place, another ethnic woman was taken off the plane and brought in from the plane kicking and screaming. I looked at the officers when they came back in and said in a joking manner, "what is this get black people off Jet Blue tonight?" The officer laughed, understanding that it was just an observational joke, but the light skinned black male supervisor started yelling at me and told me that I

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

wasn't racially discriminated against and we both proceeded to argue. He told me to take another airline if that's how I felt. He said he would not get me a hotel or a cab to LAX. He was extremely rude.

This is not to say that everyone on Jet Blue was being discriminatory. Another stewardess was cordial, Michael, the other airport supervisor was extremely sweet and accommodating and I really appreciate that. Both officers and the additional flight crew and baggage handlers were awesome. We joked around and made the best of the situation, but Cindy and the light skinned black male airport supervisor were the worse I ever dealt with and left a bad taste in my mouth with flying on Jet Blue. That was my first time in Hollywood and my return flight experience was the worse I EVER experienced.


On Wednesday, February 10, 2016 3:50 PM, Dear JetBlue <DearJetBlue@jetblue.com> wrote:

To: REDACTED
Re: Email received - Mon 2/8/2016, Contact # 184863

Hello REDACTED,

We truly regret to hear of the inappropriate and unprofessional conduct of our Inflight crewmember
Cindy. We appreciate you taking the time to provide us with valuable and specific feedback regarding
your experience with both our Inflight and Airport crewmembers. We truly apologize for the distress
and frustration caused.

We strive to provide excellent service and therefore take such matters seriously. Please know your
comments have been forwarded on to Inflight and Airport Leadership for an internal review and individual coaching opportunity to improve service for the future. As a gesture of goodwill and invitation to fly with us again, we've issued you a JetBlue credit of $50 to your Travel Bank. Please accept this credit given in the spirit intended.

If you have any questions about Travel Bank, feel free to visit http://bit.ly/nKT44N for helpful information about how to use and manage credits.

We appreciate your patience with this matter and look forward to the opportunity to better serve you
the next time JetBlue suits your travel needs.

Sincerely,

Clarissa
Customer Commitment
JetBlue Airways
Crewmember ███

**Original Message Follows:**
------------------------
From: REDACTED
To: dearjetblue@jetblue.com
Subject: Delays/Cancellations/Diversions:Crewmember Specific:2

Date: February 8, 2016 9:18:17 PM MST

E-mail Address: REDACTED
Customer: REDACTED
Phone Number: REDACTED
TrueBlue member: Y
PNR: SJTULB
Departure City: BUR
Destination City: JFK
Flight Date: 2/06/2016
Flight Number: 358
Urgent: N
Crewmember: Cindy (Stewardess) & Airport Supervisor (Black Male/Light)
LevelOne: Delays/Cancellations/Diversions
LevelTwo: Crewmember Specific
LevelThree:
Comments: Overall I was racially targeted by Cindy and was yelled at by the airport supervisor
(tall
light skin black male).


I put my bags on the seat and asked a passing stewardess (Cindy) where I can store my
camera bag.
She told me to just open the bin directly above my seat section. Figuring that bin was full since it
was closed, I saw an open overhead bin down the aisle. I turned back around and grabbed my
bags from
the seat. With one in each hand, I backed up out of my seat section with my back towards the
aisle.
Unbeknownst to me this stewardess was blocking my seat section. So when I backed up, I
thought she
had continued down the aisle since no further words were exchanged. I bumped into her and
she said
"stop pushing me!" I never pushed her. She said you're not getting on this flight, which indicated
that she intentionally stood there for me to bump into her. Her face was to my back, so she saw
me
moving backwards but I didn't see her. I asked how I pushed her, she said with my hand.
Recommend Level: 0
Response Required:

EXHIBIT 4

From: **Mark Rose** mark@sheridanlawfirm.com
Subject: Re: Karrani - Confidential Designation of JB 000414
Date: April 18, 2019 at 3:16 PM
To: Samantha Pitsch spitsch@millsmeyers.com
Cc: Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Jack Sheridan
jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com, Paula McMillan
pmcmillan@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Linda Wheeler lwheeler@millsmeyers.com

Samantha,

Thank you for providing this supplemental production. It's certainly a fuller response than what
we were originally provided, but it is still not a full and complete answer to Interrogatories 2-3
and RFPs 3-6. For example, we still don't have the complainant's home address or information
about what internal investigation and follow-up was conducted by JetBlue.

Will you agree to drop the Confidential designations on these new documents if we redact the
names and other identifying information?  We still have to file the evidence with the Court, since
it is Defendant's position that "there is no justifiable need for production of [Pancerman's]
personnel file." The records just produced contradict that position, stating that, owing to the
discrimination complaint filed against Pancerman, "**action will be internally taken regarding
what you've sent us**" and that JetBlue would "**coach these crewmembers individually**."

Please advise if you'll agree to us redacting the records you've provided or whether we'll need
to meet-and-confer on that issue tomorrow. If you're agreeable to redactions, we can send you
a draft of those to review and approve before we filed our reply.

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

On Apr 18, 2019, at 2:50 PM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:

Counsel,

We just received the following records from JetBlue which we think resolve the issue noted
below. The attached productions show the complaint referenced in JB 000414 in its native
format (JB 000420–422) as well as JetBlue's response to the complaint (JB 000423–425). Please
let us know if you agree that this issue is now resolved.

Thank you,
Samantha

_____

**Samantha K. Pitsch |   vCard**
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA  98104
Direct: 206.812.7476 | Reception: 206.382.1000
spitsch@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential
information.  If you are not a person for whom the e-mail was intended, please notify me

EXHIBIT 5

**From:** **Samantha Pitsch** spitsch@millsmeyers.com
**Subject:** Re: Karrani - Confidential Designation of JB 000414
**Date:** April 18, 2019 at 5:55 PM
**To:** Mark Rose mark@sheridanlawfirm.com
**Cc:** Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com, Paula McMillan pmcmillan@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Linda Wheeler lwheeler@millsmeyers.com

Mark,

None of the documents JetBlue has identified to-date contain the passenger's home address. We will ask JetBlue again if it has the passenger's home address (as previously explained, passengers do not always provide their home addresses to JetBlue). If JetBlue can locate a home address for this passenger, it will be produced.

It would be an unreasonable invasion of the non-party passenger's privacy to file the complaint documents in the context of this motion. We have consulted with JetBlue and it has agreed to produce crew member Pancerman's personnel file subject to protective order. This production should resolve the issues you have identified.

Thank you,
Samantha

_____

**Samantha K. Pitsch | vCard**
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
Direct: 206.812.7476 | Reception: 206.382.1000
spitsch@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

EXHIBIT 6

From: **Caryn Jorgensen** cjorgensen@millsmeyers.com
Subject: RE: Karrani - Other Incident Discovery
Date: April 19, 2019 at 6:29 PM
To: Mark Rose mark@sheridanlawfirm.com
Cc: **Jack Sheridan** jack@sheridanlawfirm.com, **John Fetters** jfetters@millsmeyers.com, **Alea Carr** alea@sheridanlawfirm.com,
**Samantha Pitsch** spitsch@millsmeyers.com, **Jamie Wipf** Jamie@sheridanlawfirm.com, **Paula McMillan**
pmcmillan@millsmeyers.com, **Anna Armitage** aarmitage@millsmeyers.com, **Linda Wheeler** lwheeler@millsmeyers.com

Mark,

I have just arrived home from the deposition in Bellingham so was not able to respond sooner.

If JetBlue identifies further responsive information related to the complaints against Ms. Pancerman, that information will be produced in response to Interrogatory Nos 2, 3, and 7 as well as the associated RFPs.

Have a good weekend, Caryn

# Caryn Geraghty Jorgensen | Bio | vCard
# Managing Shareholder
# Admitted in Washington, Oregon, and Alaska
Aviation | Product Liability | Tort and Commercial Litigation

# Mills Meyers Swartling P.S.
1000 Second Avenue, 30th Floor | Seattle, WA  98104
310 K Street, Suite 200 | Anchorage, AK 99501

Direct: 206.812.7463 | Cell: 206.390.3276
cjorgensen@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Friday, April 19, 2019 12:13 PM
**To:** Caryn Jorgensen <cjorgensen@millsmeyers.com>
**Cc:** Jack Sheridan <jack@sheridanlawfirm.com>; John Fetters <jfetters@millsmeyers.com>; Alea Carr <alea@sheridanlawfirm.com>; Samantha Pitsch <spitsch@millsmeyers.com>; Jamie Wipf <Jamie@sheridanlawfirm.com>; Paula McMillan <pmcmillan@millsmeyers.com>; Anna Armitage <aarmitage@millsmeyers.com>; Linda Wheeler <lwheeler@millsmeyers.com>
**Subject:** Re: Karrani - Other Incident Discovery

I'm sorry but I don't understand what part is inaccurate. You wrote:

> As for further supplemental responses to interrogatory numbers 2 and 3, we can further **supplement** those responses **to reference the information disclosed in the supplemental responses to Interrogatory No. 7** and RFP 13 which capture the complaints alleging discrimination against crew member Pancerman.

EXHIBIT 6 - PAGE 1

Is JetBlue agreeing to supplement and provide a narrative response to Interrogatories 2-3, irrespective of whether it locates any additional information?  If so, we'll advise the Court of that. Otherwise, we need to have the Court to resolve the issue.

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

On Apr 19, 2019, at 11:54 AM, Caryn Jorgensen <cjorgensen@millsmeyers.com> wrote:

Mark,

That is not accurate.  JetBlue has produced the information located to-date. We have agreed to supplement with any additional responsive information JetBlue is able to locate.

Caryn

## Caryn Geraghty Jorgensen | Bio | vCard
## Managing Shareholder
## Admitted in Washington, Oregon, and Alaska
Aviation | Product Liability | Tort and Commercial Litigation

## Mills Meyers Swartling P.S.
1000 Second Avenue, 30th Floor | Seattle, WA  98104
310 K Street, Suite 200 | Anchorage, AK 99501

Direct: 206.812.7463 | Cell: 206.390.3276
cjorgensen@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Friday, April 19, 2019 11:45 AM
**To:** Caryn Jorgensen <cjorgensen@millsmeyers.com>
**Cc:** Jack Sheridan <jack@sheridanlawfirm.com>; John Fetters <jfetters@millsmeyers.com>; Alea Carr <alea@sheridanlawfirm.com>; Samantha Pitsch <spitsch@millsmeyers.com>; Jamie Wipf <Jamie@sheridanlawfirm.com>; Paula McMillan <pmcmillan@millsmeyers.com>; Anna Armitage <aarmitage@millsmeyers.com>; Linda Wheeler <lwheeler@millsmeyers.com>

EXHIBIT 6 – PAGE 2

**Subject:** Re: Karrani - Other Incident Discovery

Okay. We'll advise the Court in our Reply that we have asked JetBlue to provide substantive answers to Interrogatory No. 2-3 with respect to the prior discrimination complaint filed against Ms. Pancerman, but that Defendant has not agreed to provide any answer beyond the limited information it provided in response to Interrogatory 7.

To be clear, Defendant's answer to Interrogatory 7 and RFP 13 does not satisfy what is requested in Interrogatory 2-3, because it state:

> INTERROGATORY NO. 3:   **For each complaint stated above, please identify each investigation, whether internal and external, into each complaint.**   For each investigation, state:
> …
> (d) **The identity of the persons or entities conducting the investigation;**
> (e) **Findings and conclusions of each investigation;**
> (f) **Whether the findings and conclusions were written;**
> (g) **Actions taken by you as a result of each investigation.**

If you're saying that JetBlue has identified no documents reflecting an investigation into the prior complaint, and hence has no responsive documents to produce, can't you state there was no investigation in a signed answer to Interrogatory No. 3? That's the admissible evidence we'll be asking the Court to order produced.

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel: (206) 381-5949

> On Apr 19, 2019, at 11:32 AM, Caryn Jorgensen
> <cjorgensen@millsmeyers.com> wrote:
>
> Mark,
>
> What I can tell you is that we have produced the responsive information JetBlue has identified to-date within the scope of other incident discovery agreed to (litigated claims and complaints of discrimination involving crew member Pancerman). If additional responsive information is discovered, it will be produced. We also are in the process of obtaining a verification signature for the supplemental discovery responses and will forward it upon receipt.
>
> As for further supplemental responses to interrogatory numbers 2 and 3, we can further supplement those responses to reference the information disclosed in the supplemental responses to Interrogatory

EXHIBIT 6 - PAGE 3

No. 7 and RFP 13 which capture the complaints alleging discrimination against crew member Pancerman.

Best regards, Caryn

## Caryn Geraghty Jorgensen | [Bio]() | [vCard]()
## Managing Shareholder
## Admitted in Washington, Oregon, and Alaska
Aviation | Product Liability | Tort and Commercial Litigation

## Mills Meyers Swartling P.S.
1000 Second Avenue, 30th Floor | Seattle, WA  98104
310 K Street, Suite 200 | Anchorage, AK 99501

Direct: 206.812.7463 | Cell: 206.390.3276
[cjorgensen@millsmeyers.com]() | [www.millsmeyers.com]()

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and
then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <[mark@sheridanlawfirm.com]()>
**Sent:** Friday, April 19, 2019 11:05 AM
**To:** Caryn Jorgensen <[cjorgensen@millsmeyers.com]()>
**Cc:** Jack Sheridan <[jack@sheridanlawfirm.com]()>; John Fetters <[jfetters@millsmeyers.com]()>; Alea Carr <[alea@sheridanlawfirm.com]()>; Samantha Pitsch <[spitsch@millsmeyers.com]()>; Jamie Wipf <[Jamie@sheridanlawfirm.com]()>; Paula McMillan <[pmcmillan@millsmeyers.com]()>; Anna Armitage <[aarmitage@millsmeyers.com]()>; Linda Wheeler <[lwheeler@millsmeyers.com]()>
**Subject:** Re: Karrani - Confidential Designation of JB 000423-425

Caryn,

I appreciate your cooperation, but as I explained in my email last night, the issue is that we have no idea what Ms. Pancerman's file will reveal. Based on her deposition testimony, in which she denied having ever received discipline for her treatment of passengers, we expect the production of her personnel file is unlikely to offer a full and complete response to our requests seeking the specifics about what investigation, if any, JetBlue conducted in response to the prior discrimination complaint against Ms. Pancerman.

This is now the fourth time in this email thread that I'm asking the question:

EXHIBIT 6 - PAGE 4

 **Will JetBlue agree to provide a supplemental written answer
to Interrogatories 2-3 and to the related RFPs 3-6, so we can have clear
answers as to what investigation, if any, was made following the prior
written discrimination complaint against Ms. Pancerman?**

As I stated before, we're being tasked with proving a negative and need to
show the jury that the statements made to the prior complainant were just
lip-service ("your comments have been forwarded on to Inflight and Airport
Leadership for an internal review"; "action will be internally taken regarding
what you've sent"; and JetBlue will "coach these crew members
individually") and there was likely little to no investigation or any meaningful
follow-up on the prior complaint alleging that a passenger was "racially
targeted" by Ms. Pancerman, who had the passenger removed from her
flight prior to take-off. These quotations are all taken from JB 423-425, which
precisely why we're being pushed to present the document to the Court, so
we can explain why the supplemental answers and production JetBlue has
provided to date remain inadequate.

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On Apr 19, 2019, at 8:22 AM, Caryn Jorgensen
<cjorgensen@millsmeyers.com> wrote:

Mark,

The sensitivities around passenger and JetBlue employee
privacy flow in part from Plaintiff's counsels' decision to
file police reports submitted by JetBlue's crew with their
personal addresses on them.  Those reports were then
included in the media attention Plaintiff pursued after
filing.  Just as Plaintiff has asked for his own privacy to be
respected in this process, JetBlue reasonably asks that its
passengers' and employees' privacy be respected.

JB 423-425 is materially different from JB 412-413.  The
passenger identified in 412-413 was a witness to the
subject event and has agreed to appear for deposition.  By
voluntarily providing information both to JetBlue after the
flight and to the parties in the litigation demonstrates that
passenger's willingness to have his information revealed.

There is no equivalency to the passenger who was not
simply a witness but was actually involved in another,
unrelated incident.

EXHIBIT 6 - PAGE 5

unrelated incident.

That being said, we will agree to de-designate JB 423-425 but we ask that you and Jack think carefully about whether filing that document in the public docket is necessary to the present issues.

JetBlue has agreed to produce the information Plaintiff has requested, in particular, Ms. Pancerman's personnel file, in light of the comment on JB 423.  We produced JB423-425 to you the day we received it.  Consequently, the comment in that document changed our analysis regarding the discoverability of Ms. Pancerman's personnel file.

We still need to conduct a review of her personnel file to determine if anything (e.g., SSN, other non-responsive, confidential information) needs to be redacted before production – but the key piece is that JetBlue has agreed to produce her file.

This should obviate the need to file JB 423-425 with the Court at this time.

We appreciate your professional courtesies and good judgment in this regard,

Caryn

**Caryn Geraghty Jorgensen
| Bio | vCard
Managing Shareholder
Admitted in Washington, Oregon, and Alaska**
Aviation | Product Liability | Tort and Commercial Litigation

**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
310 K Street, Suite 200 | Anchorage, AK 99501

Direct: 206.812.7463 | Cell: 206.390.3276
cjorgensen@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended,
please notify me immediately and then permanently

EXHIBIT 6 - PAGE 6

please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

---

**From:** Mark Rose <[mark@sheridanlawfirm.com](mailto:mark@sheridanlawfirm.com)>
**Sent:** Friday, April 19, 2019 7:35 AM
**To:** Samantha Pitsch <[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com)>
**Cc:** Caryn Jorgensen <[cjorgensen@millsmeyers.com](mailto:cjorgensen@millsmeyers.com)>; John Fetters <[jfetters@millsmeyers.com](mailto:jfetters@millsmeyers.com)>; Jack Sheridan <[jack@sheridanlawfirm.com](mailto:jack@sheridanlawfirm.com)>; Alea Carr <[alea@sheridanlawfirm.com](mailto:alea@sheridanlawfirm.com)>; Jamie Wipf <[Jamie@sheridanlawfirm.com](mailto:Jamie@sheridanlawfirm.com)>; Paula McMillan <[pmcmillan@millsmeyers.com](mailto:pmcmillan@millsmeyers.com)>; Anna Armitage <[aarmitage@millsmeyers.com](mailto:aarmitage@millsmeyers.com)>; Linda Wheeler <[lwheeler@millsmeyers.com](mailto:lwheeler@millsmeyers.com)>
**Subject:** Re: Karrani - Confidential Designation of JB 000414

Correction:

> We ask that Defendant please reconsider its position and withdraw the Confidential designation as to **JB 423-425**, with the understanding that we agree to redact all passenger identifying information from the document.

Here is a copy of the document showing our proposed redactions.

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

> On Apr 18, 2019, at 9:17 PM, Mark Rose <[mark@sheridanlawfirm.com](mailto:mark@sheridanlawfirm.com)> wrote:
>
> Counsel,
>
> I'm disappointed with this latest response, as it seems JetBlue is going to force us to file another unnecessary motion to seal, when it should instead just agree that the previous passenger

EXHIBIT 6 - PAGE 7

EXHIBIT 7

**Intimación de Pago y Puesta en Mora.**

Acto Número: _____

En la ciudad de Santo Domingo de Guzmán, Distrito Nacional, Capital de la  República Dominicana, a los _____ ) días, del mes de  septiembre del año dos mil dieciocho (2018). Actuando a Requerimiento de **Mayreni Lisairys De Los Santos,** dominicana, soltera, empleada privada, mayor de edad, portadora de la cédula de identidad y electoral No. REDACTED , domiciliada y residente en  la calle  Luis Escoto Gómez, REDACTED , Edificio REDACTED REDACTED , Apartamento No. REDACT ,  del Sector Ensanche Serrallés, de esta ciudad de Santo Domingo, Distrito Nacional, quien tiene como Abogados constituidos y apoderados especiales para todos los fines y consecuencias legales del presente  acto, a los Licenciados **Félix Moreta Familia y Any Méndez Comas,** dominicanos, mayores de edad, casados, Abogados de los Tribunales de la República, titulares de las cédulas de identidad y electoral Nos. REDACTED  y REDACTED , respectivamente, debidamente inscritos en el Colegio de Abogados de la República Dominicana, con estudio profesional abierto  en la Calle Andrés Julio Aybar REDACTED , Edificio REDACTED o  , Apto REDACTED  del Sector Ensanche Piantini, de esta ciudad de Santo Domingo, Distrito Nacional, con el teléfono REDACTED , lugar donde mi Requeriente hace formal y expresa elección de domicilio,  para todos los fines y consecuencias legales del presente acto y todas las consecuencias jurídicas de tal elección;----------------------------------------------------------------

Yo; Ariel Paulino Caraballo, dominicano, mayor de edad,  casado, Alguacil de Estrados de la Cuarta Sala de la Cámara Civil y Comercial del Juzgado de Primera Instancia del Distrito Nacional, portador de la cédula de identidad y electoral No. REDACTED , con mi domicilio y  residencia establecido en la Calle  Caonabo No. del Sector Los REDACTED  del Municipio Santo Domingo Este, Provincia de Santo Domingo, debidamente nombrado, recibido y juramentado para el regular ejercicio de los actos de mi propio ministerio. Expresamente y en virtud del anterior Requerimiento,  me he trasladado dentro de esta misma ciudad,  a la Avenida Winston Churchill, esquina Calle REDACTED  Plaza REDACTED , Local No. REDAC  de esta ciudad de Santo Domingo, Distrito Nacional, que es donde tiene su domicilio social la entidad **JET BLUE AIRWAYS  CORPORATION,** y una vez allí,  hablando  personalmente  con _____ quien  me  declaró  y  dijo  ser

Página **1** de **2**

_empleada_ de mi Requerida y tener calidad para recibir el presente acto, según sus propias declaraciones, de lo cual doy fe; Le He Notificado a mi Requerida **JET BLUE AIRWAYS CORPORATION,** en su expresada calidad, que mi Requeriente, por medio del presente acto:

**Primero: Le Intima Formalmente y Le Pone en Mora**, para que en el **improrrogable plazo de un (1) día franco**, contado a partir de la presente notificación, proceda a pagar en manos de sus Abogados apoderados, la suma de **Quince Mil Dólares de los Estados Unidos de América, Con 00/100 (US$15,000.00)**, como justa reparación por los daños y perjuicios materiales y morales, causados a mi Requeriente, por los maltratos ocasionados, en el servicio de transporte aéreo prestado por la entidad JET BLUE AIRWAYS CORPORATION, en el vuelo 1705 procedente desde el Aeropuerto Internacional de Orlando FL, Estados Unidos de América, saliendo el día 14 del mes de septiembre del año 2017; y llegando el viernes 15 de septiembre del año 2017, al Aeropuerto Internacional de Las Américas, en la ciudad de Santo Domingo, Distrito Nacional, Capital de la República Dominicana.

**Segundo:** Que mi Requirente por medio del presente acto, le declara y advierte a mi Requerida, que de no obtemperar al presente Requerimiento, mi Requeriente procederá por las vías de derecho establecidas en su favor, a los fines de obtener el pago de la indemnización correspondiente, por los daños y perjuicios materiales y morales que le han sido ocasionados por mi Requerida a mi Requeriente, sin perjuicio de las demás disposiciones previstas por la ley; Bajo las Más Amplias y Expresas Reservas de Derechos y Acciones;-------------------------------------------

Y para que mi Requerida, JET BLUE AIRWAYS CORPORATION, no pretenda alegar ignorancia o desconocimiento del presente acto, así se lo he Notificado, Declarado y Advertido, dejándole copia del presente acto, en las manos de la persona con quien dije haber hablado en el lugar de mi traslado, acto que consta de dos (02) hojas, escritas a computadora, las cuales han sido debidamente firmadas, rubricadas y selladas por mí, Alguacil infrascrito que certifico y doy fe.

Costo del Acto: RD$ _1000_

Doy Fe.-

El Alguacil.-

Página **2** de **2**

JB 000178

# EXHIBIT 8

Ravinder S. Bhalla, Esq. (RB2870)
Florio Perrucci Steinhardt & Fader, L.L.C.
218 Rt. 17 North, Suite 400
Rochelle Park, NJ 07662
Attorneys for Plaintiffs Ramsey Abdallah,
Ghadeer Abbasi, and Riyanna Abdallah

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMSEY ABDALLAH, individually and as Guardian for RIYANNA ABDALLAH; and GHADEER ABBASI, individually and as Guardian for RIYANNA ABDALLAH | : : : : : : | |
| Plaintiffs | : : | **COMPLAINT & JURY DEMAND** |
| v. | : : | |
| JETBLUE AIRWAYS CORPORATION, and JOHN DOES 1-10 | : : : | *Electronically Filed* |
| Defendants. | : : | |

Plaintiffs Ramsey Abdallah and Ghadeer Abbasi, individually and as guardians *ad litem* for Riyanna Abdallah complaining against all Defendants, hereby assert and state as follows:

### INTRODUCTION

1.     This action seeks redress for an incident where Defendants removed Plaintiffs, United States citizens of the Islamic religious faith, from its airplane, on the false pretext that the Plaintiffs' 18-month-old infant was on a "No-Fly list".  In actuality, Defendants engaged and/or participated in unlawful profiling against Plaintiffs on the basis of race, religion and/or national origin, in violation of federal and state statutory and common laws.

2.      This action is a lawsuit brought under 42 U.S.C.A. 1981, *et seq.*, 42 U.S.C.A. 2000(d), 42 U.S.C. 2000(a), 49 U.S.C.A. § 40127(a), and the common law, alleging, among other things, discrimination based on race and/or religion in the making and enforcement of contracts under federal law, discrimination based on race and/or religion in a place of public accommodation under federal law, discrimination based on race and/or color of skin by a program receiving federal funding under federal law, false imprisonment under common law, discrimination based on race and/or religion in a place of public accommodation under New Jersey State law, and failure to train and supervise under the common law.  This action is wholly based on the intentional, discriminatory, and reckless conduct of Jet Blue Corporation and Jet Blue Corporation Employees, John Does 1-10, (collectively, "Defendants") who acted without regard to the rights of the Plaintiffs.

## Jurisdiction

3.      Jurisdiction is proper in the District Court of New Jersey under 28 U.S.C.A. §§ 1333 and 1343(a)(4), which provides for federal jurisdiction in matters,  "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."  This Court has pendant and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C.A. § 1367. Declaratory and injunctive relief is authorized by 28 U.S.C.A. §§ 1343(a)(4), 2201, and 2202.

## Venue

4.      Under 28 USC § 1391, Venue is properly laid in any venue where any defendant resides. 28 USC § 1391(d) provides that corporate defendants reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 USC § 1391(d)

## THE PARTIES

5.     Plaintiff, Ramsey Abdallah, is a resident of the State of New Jersey.  Mr. Abdallah is Plaintiff Ghadeer Abbasi's husband and Riyanna Abdallah's biological and custodial parent.  Mr. Abdallah is a United States citizen of the Islamic religious faith who resides at 38 Porter Road, West Orange, New Jersey 07052.  All Plaintiffs are of Arab racial descent.

6.     Plaintiff Ghadeer Abbasi is a resident of the State of New Jersey.  Mrs. Abbasi is Plaintiff Ramsey Abdallah's wife and Riyanna Abdallah's biological and custodial parent.  Mrs. Abbasi is a United States citizen and a visibly identifiable practitioner of the Islamic religious faith.  Mrs. Abbasi wears a *hijab*, a traditional Islamic head covering.  At the time of the actions in this complaint, Mrs. Abbasi was three (3) months pregnant.  Mrs. Abdallah resides at 38 Porter Road, West Orange, New Jersey, 07052.

7.     Riyanna Abdallah is a minor child whose interests are represented by her parents, who are each Plaintiffs and who are Riyanna's Guardians pursuant to R. 46:26-2(a).  Riyanna resides with the Plaintiffs at 38 Porter Road, West Orange, New Jersey, 07052.  Riyanna Abdallah was approximately 18-months-old on the day of the events that led to this Complaint.

8.     Defendant JetBlue Corporation ("JetBlue") is an air carrier operating flights to 84 destinations in 24 states, and twelve (12) countries in the Caribbean, South America and Latin America.  Defendant regularly conducts flights to and from Newark Liberty International Airport in this district.

9.     Defendants John Does 1-10 are fictitious names supplied for unknown corporate entities and or unknown individuals who engaged in the conduct identified herein.

## FACTS COMMON TO ALL COUNTS

10.     Plaintiffs are United States citizens residing in West Orange, New Jersey.  They are practitioners of the Islamic religious faith.  Plaintiff Ghadeer Abbasi wears a *hijab*, a traditional Islamic head covering.

11.     On May 10, 2012, Plaintiffs were removed from their JetBlue flight ("the Flight") from Ft. Lauderdale/Hollywood Airport with service to Newark Liberty International Airport, along with an unrelated Muslim family.

12.     The Plaintiffs had previously flown on JetBlue and other airlines, both domestically and internationally, along with their daughter, on multiple occasions.  During these travels, aside from routine secondary screenings, none of the Plaintiffs had ever been subject to any form of extra scrutiny during the security check process.  The Plaintiffs, on a return trip from Newark, encountered no security issues in flying with JetBlue to Ft. Lauderdale/Hollywood Airport ("the Airport") from Newark.

13.     On or about May 10, 2012, and upon arrival at the Airport, each member of Plaintiffs had: a) checked in at the front departure desk and were provided boarding passes; b) were permitted to check-in their luggage, which was checked-in and placed on the plane the Plaintiffs were to board to Newark; c) passed through the departure gate checkpoint administered by the United States Transportation Security Administration ("TSA"); d) had their boarding passes scanned at the departure gate; and e) were permitted to be seated onboard the aircraft.  At no point during the check-in, ticketing, baggage check-in, security check, or boarding process were the Plaintiffs set aside for any additional screening or otherwise advised that there was any security problem with their presence on the flight.

14. Thereafter, JetBlue employees engaged in a course of conduct against the Plaintiffs that was discriminatory, intentional, reckless, and demonstrated a complete ignorance of passenger rights under federal and state civil rights law and the common law.

15. First, JetBlue employees, without question, arbitrarily removed an unrelated Muslim family, later identified as the "Hussein family".

16. Thereafter, a Jet Blue Flight Attendant pointed out the Plaintiffs to a JetBlue Supervisor. The Supervisor approached the Plaintiffs and, in a voice audible to other passengers, falsely claimed that the Plaintiffs needed to leave the plane because the Transportation Security Administration (the "TSA" or "Federal Authorities") wanted to speak with the Plaintiffs.

17. Remarkably, the Supervisor stated to Plaintiffs they were being removed because their eighteen (18) month old baby, Riyanna, was on a "No-Fly-List" administered by the TSA.

18. By failing to handle this situation discreetly and in a manner that did not cause embarrassment to the Plaintiffs, other passengers on the flight began making comments about and to the Plaintiffs. These comments included words to the effect of "oh, they got you, good, I just wonder what they got you on" and "thank God they caught you." Similar comments were made by other passengers in rows ahead as the Plaintiffs disembarked. Such unwarranted humiliation against the Plaintiffs could have been avoided had the Supervisor conducted himself in a professional manner.

19. The Plaintiffs, who at all times were fearful of unwanted and undeserved criminal prosecution should they not comply with airline personnel and who were compliant with JetBlue employees at all times, then disembarked the airplane. As the Plaintiffs disembarked, Ramsey Abdallah asked the Supervisor for an explanation as to what was happening to the Plaintiffs.

The Supervisor falsely replied that JetBlue was following standard procedure and that their removal was prompted by the TSA, not JetBlue.

20.  Once outside the departure gate, where they were met by armed Broward County Sheriff's officers, the Plaintiffs were further subjected to discriminatory conduct as they were kept standing in full visibility of other airline passengers, some of whom began to photograph the Plaintiffs with their camera phones, and were subjected to further humiliation.

21.  The Plaintiffs at this time learned that the other family pulled off the flight was also Muslim couple with young child, the Hussein family.

22.  The Plaintiffs remained outside the flight gate and complied with JetBlue employees for a period of about 45 minutes.  At no point during this time period did JetBlue indicate, nor did the Plaintiffs believe, that they were free to leave, use the restroom, or were free to use the rest of the Airport's facilities.  The Plaintiffs were falsely led to believe by JetBlue that they were under investigation by the TSA and they would be prosecuted if they did not cooperate with JetBlue employees.

23.  After about 45 minutes, Defendants, who had summoned the TSA to the flight gate, determined that Riyanna was not on a "No-Fly list" and did not pose a security concern in any manner.  Defendants then stated that the Plaintiffs could reboard the airplane.

24.  By this point, Plaintiffs naturally felt too upset, embarrassed and humiliated to reboard the plane, and asked for their checked-in baggage back.  Remarkably, JetBlue refused to remove the Plaintiffs' luggage and the luggage travelled on to Newark even though the Plaintiffs were not on the plane.

25.     For two days following this incident, Plaintiff Ghadeer Abbasi, pregnant at the time, could not use the restroom without assistance because of the physical and emotional impact this incident placed upon her.

26.     JetBlue thereafter made false statements of "clarification" to the media as to the facts surrounding this event.  Left with no plausible explanation, JetBlue blamed a "computer glitch" for the incident.  Upon information and belief, no such computer-glitch occurred.  This explanation was proffered as a pre-text to cover up unlawful discrimination against Plaintiffs.

27.     The TSA thereafter released a statement confirming JetBlue lied to Plaintiffs in their assertion that they were removed from the plane by the TSA.  Specifically, the TSA was quoted in the Atlanta Journal-Constitution as stating:

> TSA did not flag this child as being on the No Fly list.
> TSA was called to the gate by the airline and after talking
> to the parents and confirming through our vetting system,
> TSA determined the airline had mistakenly indicated the
> child was on a government watchlist.

28.     Defendants' conduct in removing a docile 18-month-old infant from an airplane was arbitrary, capricious, unreasonable, and had no rational basis in safety.

## COUNT ONE

## (DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS, 42 U.S.C. § 1981B, *ET SEQ.*)

29.     Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

30.     Defendants purposefully and intentionally deprived the Plaintiffs from the enjoyment of the benefits, privileges, terms, and conditions of the Plaintiff's contractual relationship with JetBlue in violation of 42 U.S.C. § 1981(b), *et seq.*

31.     Defendants are prohibited from imposing additional restrictions on protected minorities in order to receive service as doing so would alter the terms and conditions of the contractual relationship.

32.     No similarly situated white passengers were, at the time of this incident, accused of being on the No-Fly list, removed from the airplane, or detained in any contrived extra security measures imposed by Defendants.

33.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT TWO

### (DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION 42 U.S.C.A. 2000A)

34.     Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

35.     Defendants discriminated against the Plaintiffs in a place of public accommodation, by failing to provide full and equal enjoyment of services and privileges of use of the Ft. Lauderdale/Hollywood Airport, while the Plaintiffs were forced to stand at the flight gate and subjected to humiliation in violation of 42 U.S.C.A. 2000a, *et seq.*

36.     Plaintiffs were left in open, public isolation at the airport gate based upon their race, ethnicity, religion and/or national origin.

37.     Defendants refusal to remove the Plaintiffs' luggage from the plane, which was demanded while in the Airport terminal, was a discriminatory denial of service in a place of public accommodation.

38.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

39. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT THREE

## (DISCRIMINATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A. 2000D)

40. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

41. Upon information and belief, Defendant JetBlue is a recipient of federal funding.

42. Defendants did discriminate against the Plaintiffs in a manner actionable under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d.

43. Plaintiffs were intentionally discriminated against on the basis of their religion and/or race when they were pointed out and subjected to humiliation and to unnecessary additional scrutiny by Defendants despite having passed through all normal security protocols.

44. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT FIVE

## (FALSE IMPRISONMENT)

45. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

46. Defendants did commit the tort of falsely imprisonment against the Plaintiffs under the common law.

47. From the time the Plaintiffs were made aware they were to disembark the plane until the time they would have been allowed to reboard the plane, the Plaintiffs were instructed

to stay within an area defined by Defendants and in fact the Plaintiffs did not, in fact, leave this area out of fear for their safety, harassment, and unwanted and unnecessary prosecution.

48.     Defendants falsely stated that they were acting under TSA instruction and that their confinement to the area that defendants had instructed was under color of law.

49.     The Plaintiffs at no point believed that they were free to leave and believed that should they try to leave they would face criminal prosecution and Defendants' use of force.

50.     The Plaintiffs' perception was rational in light of Defendants' actions, Defendants' statements, the amount of security at any airport, in light of the terrible events of 9/11, and in light of common knowledge.

51.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT SIX

### (DISCRIMINATION PURSUANT TO 49 U.S.C.A. § 40127)

52.     Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

53.     Defendants are an air carrier and, as an air carrier, are expressly prohibited from discriminating against a person in air transportation on the basis of race, color, national origin or religion, pursuant to 49 U.S.C. § 40127.

54.     Defendants, engaging in conduct described herein, did discriminate against the Plaintiffs in violation of 49 U.S.C. § 40127.

55.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

## COUNT NINE

### (FAILURE TO TRAIN AND SUPERVISE)

56. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully incorporated herein.

57. JetBlue is responsible for the training, instruction, and supervision of JetBlue agents, employees, and/or representatives who were at all times relevant acting within the scope of their employment.

58. Upon information and belief, JetBlue provided grossly inadequate training, instruction, and supervision to JetBlue's agents, employees, and/or representatives.

59. JetBlue should have known, trained, and instructed its employees, agents, and/or representatives to be aware that it is illegal profiling to consider a passenger's religion or ethnicity in determining whether a passenger is a security threat or engaged in a form of suspicious activity.

60. JetBlue's inadequate training, and supervision of its employees, agents, and/or representatives subjected Plaintiffs to unlawful discrimination on the basis of their race, ethnicity, religion, and/or national origin.

61. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that the actions of Defendants described above constituted discrimination on the basis of race, religion, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. §

40127;

b.      Enter a permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000d;

c.      Award Plaintiffs compensatory damages in an amount to be determined at trial to compensate them for being deprived of their right to travel as passengers in air transportation regardless of their perceived race, color, national origin, religion, ethnicity, and/or ancestry, including damages for fear, mental pain, inconvenience, humiliation, embarrassment, emotional distress, and financial injury, as provided under 42 U.S.C. § 1981, 42 U.S.C. 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. § 40127;

d.      Award Plaintiffs punitive or exemplary damages against Defendants under the provisions of 42 U.S.C. § 1981, 42 U.S.C. 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. § 40127;

e.      Award Plaintiffs reasonable attorney's fees and the costs incurred in this action pursuant to 42 U.S.C. § 1988;

g.      Award Plaintiffs such other relief as the Court deems just and proper.

*/s/ Ravinder S. Bhalla*
Ravinder S. Bhalla, Esq.
Florio Perrucci Steinhardt & Fader, L.L.C.
218 Rt. 17 North, Suite 400
Rochelle Park, New Jersey 07662
Attorneys for Plaintiffs Ramsey Abdallah,
Ghadeer Abbasi, and Riyanna Abdallah

Dated: February 17, 2014

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I hereby certify to the best of my knowledge that the above-captioned action is not subject to any other action pending in any court or the subject of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated at this time. I know of no other party who should be jointed in this action.

/s/ Ravinder S. Bhalla
Ravinder S. Bhalla, Esq.
Florio Perrucci Steinhardt & Fader, L.L.C.
218 Rt. 17 North, Suite 400
Rochelle Park, New Jersey 07662
Attorneys for Plaintiffs Ramsey Abdallah,
Ghadeer Abbasi, and Riyanna Abdallah

Dated: February 17, 2014

EXHIBIT 9

1

2

3

4

5

6                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

8   DOROTHY HODGES,                      )
                                         )
9                           Plaintiff,   )   Case No. C09-1547-BAT
                                         )
10        v.                             )   **ORDER REGARDING**
                                         )   **DISCOVERY AND**
11  DELTA AIR LINES, INC., et al.,       )   **CONFIDENTIALITY OF**
                                         )   **PASSENGER MANIFEST**
12                          Defendants.  )
                                         )

13        Plaintiff is an individual proceeding against defendants Delta Air Lines and AirServ

14  Corporation.  She alleges she was injured while disembarking from a flight operated by Delta Air

15  Lines with the assistance of AirServ employees.  Plaintiff has filed a motion to compel seeking

16  production of (1) the passenger manifest from the flight in question and (2) the identity of the

17  FAA inspector who was on the flight.  Dkt. 19.  Defendants oppose the motion and request fees.

18  Dkt. 21.  Having reviewed the pleadings of both parties and the relevant law, the Court hereby

19  finds and **ORDERS** as follows:

20                    I.  PLAINTIFF'S MOTION TO COMPEL

21        (1)    Plaintiff's motion to compel the identity of the FAA inspector is **DENIED**.

22  Defendants have produced the name of the inspector and stated that they have no contact

23  information for him.  Dkt. 21 at 2.

     ORDER REGARDING DISCOVERY AND CONFIDENTIALITY
     OF PASSENGER MANIFEST- 1

(2)     Plaintiff's motion to compel production of the passenger manifest is **GRANTED**.

Although the manifest itself may not be admissible at trial, the request for it is "reasonably

calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Plaintiff has

presented declarations alleging there were passengers still on board her flight at the time she was

injured.  It is reasonable to conclude that production of the manifest would allow plaintiff to

identify any passenger who might have witnessed her fall.  Defendants have also presented

declarations to the effect that no passengers were present to witness the fall; however, that

argument wrongly asks this Court to decide disputed facts as part of the discovery process.  The

Court therefore concludes that the passenger manifest is discoverable.

(3)     Defendants' request for fees is **DENIED**.

## II.  PROTECTIVE ORDER

Recognizing that federal law limits the release of information contained in defendants'

passenger manifest the Court enters the following **ORDER**:

(1)     Defendants are ordered to produce the manifest by May 28, 2010.

(2)     The non-party passenger information to be produced by Delta Airlines shall be treated

as confidential and used only for the purposes of this litigation.  Except upon the prior written

consent of Delta Airlines or upon order of this Court, the passenger information to be produced

by Delta Airlines in this litigation may be disclosed only to the following persons:

(a)     Counsel of record for each party in this lawsuit, including other members of

counsel's law firms and any other counsel of record associated to assist in the preparation or trial

of this case;

(b)     Employees of counsel of record who assist in the preparation or trial of this case;

(c)     Experts, non-attorney consultants, and other persons retained by the parties to

ORDER REGARDING DISCOVERY AND CONFIDENTIALITY
OF PASSENGER MANIFEST- 2

1  assist in the preparation of this action retained to this litigation for the preparation or trial of this

2  case, provided that no disclosure shall be made to any expert or consultant who is employed by a

3  competitor of Delta Airlines;

4        (d)   Any party to this litigation;

5        (e)   Any mediator(s) retained by the parties to assist with the potential settlement of

6  this lawsuit; and

7        (f)   The Court and its staff.

8     (3)   No party, nor that party's counsel or experts or any other person retained by the party

9  to assist in the preparation of this action shall under any circumstances sell, share, advertise, or

10  publicize the non-party passenger information to be produced by Delta Airlines in this litigation.

11     (4)   This Order may not be waived modified, abandoned, or terminated, in whole or in

12  part, except by an instrument in writing signed by the parties and approved by the Court.  If any

13  provision of this Order shall be held invalid for any reason whatsoever, the remaining provisions

14  shall not be affected thereby.

15     (5)   The Court retains jurisdiction over the parties and recipients of the Protected

16  Documents for the enforcement of the provisions of this Order following termination of this

17  litigation.

18     The Clerk is directed to send copies of this order to all parties of record.

19     DATED this 17th day of May, 2010.

20

21     _____
        BRIAN A. TSUCHIDA
22       United States Magistrate Judge

23

ORDER REGARDING DISCOVERY AND CONFIDENTIALITY
OF PASSENGER MANIFEST- 3