# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ABDIKARIM KARRANI,<br><br>       Plaintiff,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, a Delaware corporation,<br><br>       Defendant. | No.: 2:18-cv-01510-RSM<br><br>PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S SECOND SUPPLEMENTAL RESPONSES THERETO* |

JetBlue Airways Corporation ("JetBlue") supplement their initial responses to Plaintiff's First Interrogatories and First Requests for Production, as follows. These supplemental responses are based on information reasonably available at this time after a duty diligent search.

## GENERAL OBJECTIONS

JetBlue objects to the extent that Plaintiff's instructions purport to impose a duty beyond that imposed by the Federal Rules of Civil Procedure and Local Civil Rules. JetBlue also objects to Plaintiff's definitions to the extent they are inconsistent with the plain meaning of any particular term. JetBlue specifically objects to the definition of AS7 as being a JetBlue flight. AS7 was the flight Plaintiff originally booked with Alaska Airlines but apparently missed when he was delayed during his travels. The JetBlue flight was Flight B263.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S SECOND SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 1

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**REQUEST FOR PRODUCTION NO. 2:** Please produce the personnel file for each employee identified in the prior interrogatory.

**RESPONSE:**

Objection. This request is overly broad, unduly burdensome, and seeks information that is not pertinent to the issues, disproportionate to the needs of the case and the importance of the requested matters to the litigation, *see* FRCP 26(b)(1), and unnecessarily invades the reasonable privacy interests of JetBlue's employees. By way of example, this request purports to seek personal and confidential information related to employees' compensation, payroll data, benefits, retirement benefits, insurance, dependents, and other sensitive employment information that has no relation or relevance to Plaintiff's claims.

**FIRST SUPPLEMENTAL RESPONSE:**

**Notwithstanding and without waiving any objections, JetBlue agrees to produce, subject to protective order and with sensitive, confidential information redacted (***see*** Privilege Log), the employment file (not including payroll records) of crew member Pancerman, attached as JB 000435–000560.**

**INTERROGATORY NO. 2:** Please identify and describe any instance in which a passenger has complained or sent you a complaint since January 1, 2014.

**ANSWER:**

Objection. This interrogatory is overly broad, unduly burdensome, and expensive, taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues because it is not reasonably limited in terms of time, geographic scope, or subject matter. *See* FRCP 26(b)(1). The interrogatory is overly broad and unduly burdensome to the extent it seeks the identification of "any instance" in which any passenger "complained" about any matter. This could include an inconceivable number of incidents. To illustrate, with respect to subject matter, this interrogatory is improper because it is not reasonably limited to alleged discrimination-based complaints, nor is it limited to complaints regarding passengers removed from flights by law enforcement. As such, this interrogatory is not reasonably limited in terms of time or subject matter and is not reasonably calculated to lead to the discovery of admissible evidence. By way of further objection, JetBlue objects to the request that it provide information for the past five years as unreasonable, unduly burdensome, and overly broad. Finally, JetBlue objects to the request that it provide information on other complaints as seeking irrelevant information.

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JETBLUE AIRWAYS CORPORATION *AND DEFENDANT JETBLUE AIRWAYS CORPORATION'S SECOND SUPPLEMENTAL RESPONSES THERETO* (NO. 2:18-cv-01510-RSM) - 4

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**INTERROGATORY NO. 6:** Please state your gross and net profits from January 1, 2010 to the present.

**ANSWER:**

Objection. This request is overly broad, unduly burdensome, and seeks irrelevant information because it seeks financial information from 2010. JetBlue further objects to the extent responsive information may be obtained by Plaintiff though public court records or other means by which Plaintiff has equal access.

Notwithstanding and without waving any objections, JetBlue directs Plaintiff to the publicly-available financial information available via:

https://www.nasdaq.com/symbol/jblu/financials?query=income-statement

SUPPLEMENTAL ANSWER:

Notwithstanding and without waiving any objections, *see* http://blueir.investproductions.com/investor-relations/financial-information/sec-filings.

**REQUEST FOR PRODUCTION NO. 12:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 6.

**INTERROGATORY NO. 7:** Please identify every complaint against Cindy Pancerman in the last ten years. As to each:

    (a) State the nature of the alleged complaint;
    (b) State the date(s) of the alleged mistreatment;
    (c) Identify all documents related to the alleged mistreatment;
    (d) Identify all documents that relate to your response to the alleged mistreatment;

**ANSWER:**

Objection. This request is overly broad taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance

PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO DEFENDANT JETBLUE AIRWAYS
CORPORATION *AND DEFENDANT JETBLUE AIRWAYS
CORPORATION'S SECOND SUPPLEMENTAL RESPONSES THERETO*
(NO. 2:18-cv-01510-RSM) - 11

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

of the proposed discovery in resolving the issues because it is not reasonably limited in terms of time, geographic scope, or subject matter. *See* FRCP 26(b)(1). To illustrate, with respect to subject matter, this request is improper because it is not reasonably limited to discrimination-related allegations, nor is it limited to actions between passengers and Ms. Pancerman. The request is vague in that it does not define what kind of complaint so as to be subject to multiple interpretations. In addition, JetBlue objects to the request that it provide information for the past ten years as unreasonable, unduly burdensome, and overly broad. Finally, JetBlue objects to the request that it provide information on other complaints as seeking irrelevant and private information regarding other customers.

Subject to and without waiving any objections, JetBlue will search for and produce any documented customer complaints involving crew member Cindy Pancerman in the three years prior to the subject flight. Any such material will be produced subject to protective order.

SUPPLEMENTAL ANSWER:

Notwithstanding and without waiving any objections, in the ordinary course of business and consistent with JetBlue's document retention policy and 14 CFR 249.20, customer complaints are deleted after 3 years. By way of further response, JetBlue produces the following complaints regarding crewmember Cindy Pancerman and corresponding incident reports, if any, since 2016. JetBlue is still working to produce these records in their original format. JB 000414–000419.

SECOND SUPPLEMENTAL ANSWER:

Notwithstanding and without waiving any objections, see

1. Previously produced JB 000412–000413, JB 000420–000422, JB 000423–000425, JB 000432–434, JB 000426–431;
2. Updated version of JB 000412–413 to reflect the date the complaint was sent, now produced as JB 000615–000616;
3. First Supplemental response to Request for Production No. 2.

REQUEST FOR PRODUCTION NO. 13: Please produce any and all documents related to your answer to the proceeding interrogatory.

RESPONSE:

*See* objection and response to Interrogatory No. 7.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

SUPPLEMENTAL RESPONSE:

*See* objection and supplemental answer to Interrogatory No. 7.

**SECOND SUPPLEMENTAL RESPONSE:**

*See* **objection and supplemental answers to Interrogatory No. 7.**

**INTERROGATORY NO. 8:** Please identify every passenger on Flight AS7.

**ANSWER:**

Objection. This request is overly broad, unduly burdensome, and an unreasonable invasion into the privacy interests of passengers, particular of passengers not in a position to observe the interactions at issue in this litigation. *See* FRCP 26(b)(1). By way of further objection, airline passengers have a federally-recognized expectation of privacy. 14 C.F.R. § 243. JetBlue also notes that the subject flight was designated as JetBlue Flight B263.

Notwithstanding and without waiving any objections JetBlue produces, subject to the protective order, available contact information for passengers assigned to seats A–F in rows 1–3 as well as the passengers mentioned in the Incident Reports related to the subject flight. [JB 000082].

**REQUEST FOR PRODUCTION NO. 14:** Please produce any and all documents related to your answer to the proceeding interrogatory.

**RESPONSE:**

*See* objection and response to Interrogatory No. 8. By way of further objection, it is unclear what "documents" are sought. JetBlue objects to the production of Passenger Name Records of other passengers as such documents contain private and confidential information.

**REQUEST FOR PRODUCTION NO. 15:** Please produce a seating chart for Flight AS7.

**RESPONSE:**

*See* objection and response to Interrogatory No. 8.

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**ATTORNEY'S CERTIFICATION**

I certify that the foregoing responses comply with FRCP 26.

DATED this 29th day of April 2019.

> MILLS MEYERS SWARTLING P.S.
> Attorneys for Defendant JetBlue Airways
> Corporation
>
> By: _Samantha Pitsch_
> Caryn Geraghty Jorgensen
> WSBA No. 27514
> John Fetters
> WSBA No. 40800
> Samantha Pitsch
> WSBA No. 54190

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**VERIFICATION**

Under penalty of perjury under the laws of the United States, I make the following declaration: I am Litigation and Regulatory Counsel for JetBlue Airways Corporation, and I am an authorized agent for the purposes of verifying these responses on its behalf. These responses are not within my personal knowledge, but rather have been drafted and assembled by counsel based on information supplied by authorized employees, and JetBlue Airways Corporation believes the responses are true and correct.

DATED *April 29*, 2019.

JETBLUE AIRWAYS CORPORATION

*Laura Rodgers*

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner indicated a copy of the within and foregoing document upon the following persons:

*Attorneys for Plaintiff:*

John P Sheridan
Mark W. Rose
Sheridan Law Firm, P.S.
705 Second Avenue, Suite 1200
Seattle, WA 98104

☐ Via first class mail, postage prepaid
☐ Via facsimile to
☐ Via legal messenger
☑ Via e-mail:
   jack@sheridanlawfirm.com
   mark@sheridanlawfirm.com
   colton@sheridanlawfirm.com
   alea@sheridanlawfirm.com

DATED April 29, 2019.


_____
Linda McIntosh Wheeler

LAW OFFICES OF
**MILLS MEYERS SWARTLING P.S.**
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

# EXHIBIT 2

REDACTED BY PLAINTIFF PER STIPULATION OF COUNSEL -- UNRELATED TO PRESENT MOTION PRACTICE

| | | | | |
|---|---|---|---|---|
| 12/20/2012 | Other | Kriebel | Phone | Click here to attach a file |

On 12-20 Cynthia removed three customers (Flt 805 - JFK-PLA) which took a 33min delay, one of the three had a cell phone on in her purse in the OHB. She wanted to turn off her phone during the demo, used profanity. Inflt Spv and Corp Sec involved. Cindy did not want customers back on AC as "she felt uncomfortable".

Insert Performance Follow-UP

| | | | | |
|---|---|---|---|---|
| 12/20/2012 | Complaint | Kriebel | In Person | Click here to attach a file |

Removed Cust - cursed regarding turning phone off in OHB

Insert Performance Follow-UP

| | | | | |
|---|---|---|---|---|
| 3/16/2014 | Compliment | Padavano | Other | Click here to attach a file |

Congratulated Cynthia on a Recent Customer Compliment. See Customer Feedback Case [redacted]Compliment2014-03-16.xml for details.

Insert Performance Follow-UP

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

REDACTED BY PLAINTIFF PER STIPULATION OF COUNSEL -- UNRELATED TO PRESENT MOTION PRACTICE

| | | | | |
|---|---|---|---|---|
| 12/16/2015 | Complaint | Padavano | Other | Click here to attach a file |

Cynthia was found coachable on this Recent Customer Concern. See Customer Feedback Case [redacted] Complaint2015-12-16.xml for details.

Insert Performance Follow-UP

| | | | | |
|---|---|---|---|---|
| 1/13/2016 | Complaint | Falcone | In Person | Click here to attach a file |

Met with Cynthia this morning and discussed the two complaints that came in on her in December.
Cynthia will be following up with a statement and has already filled out an IRR on one of them.

Insert Performance Follow-UP

| | | | | |
|---|---|---|---|---|
| 2/6/2016 | Complaint | Padavano | Other | Click here to attach a file |

Crewmember Received a Trending Complaint in the [ Serious Confrontation] category. Assessment # [ 184863]

Insert Performance Follow-UP

REDACTED BY PLAINTIFF PER STIPULATION OF COUNSEL -- UNRELATED TO PRESENT MOTION PRACTICE

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Inflight Service

| Customer Feedback Case Form (Complaint) | | *Oct/2011 Version* |
|---|---|---|

**Category:**
○ Compliment ⊙ Complaint

**Source:** Speak Up

**Source Note:**
3004842

**F/A Position:**
F1○ F2○ F3○

**Priority:**
⊙ Normal ○ High

**Crewmember Name: ( Last, First )**

**Crewmember ID:**

**Inflight Supervisor:**

**Base:**

**Event Date:**
2/11/2012

**Flight Number:** 712

**City Pair:**
SJU ___ JFK

**PNR:**

**Case Created:**
3/5/2012

---

**Customer Comment Letter:** (*Customer name and contact information are omitted*)

**Trigger Point Categorization:** General Behavior - Polite/Rude

Departure City: SJU
Destination City: JFK
Flight Date: 2/11/12
Flight Number: 712
Urgent: N
Crewmember: "Cindy"
Level One: Inflight
Level Two: Customer service
Level Three:
Comments: Flight B6 0712, 2/11/12 flight attendants: ███████ and "Cindy" (no name tag) "Cindy" started the flight by screaming at the woman one seat behind me two rows over to "turn off that phone NOW".  The woman was obviously getting off the phone and no it was not an inappropriate usage yet. A short time later in the flight the man next to me asked (nicely) for a new cup as the one handed to him was dirty, "Cindy" was rude in her reply, jumping down his throat as though he was inconsiderate in asking her for a replacement.  When I went to the bathroom in the back of the cabin and I noted that she did not have a name tag on, so I asked her what her name was.

There was at least a minute of a stare-down before she said "Cindy". Rude, inconsiderate, nasty only begin to describe "Cindy". She made what would have been a decent experience horrible. Even though none of the attacks were directly towards me, they were all around me.  Let me know if she is working any flight I sign up for as I will gladly change carriers, no matter the price.  I wish you luck in changing her attitude. Please request that she wear her name tag, that way people can write and let you know how she effects your business.
Recommend Level: 0

File Attachment

**Customer Letter (Scanned Copy):**

---

**Complaint Investigation and Outcome ( All Complaints ):**

**Investigation Checklist:**

☑ Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☐ Collect other Crewmember (including Flight, & CSA) if necessary
☑ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☐ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**

None

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**
I spoke with Cindy about this concern . There seems to be some inconsistencies with this Customers statement - in that "none of her attacks were directed at me" however she stated that when asking for Cindy's name least a minute of a stare-down before she said "Cindy". Rude, inconsiderate, nasty only only begin to describe "Cindy". She made what would have been a decent experience horrible. Never the less, she had no recollection of this event, she is a very calm individual and does not "yet;;" at anyone. She may not have worn her name tag but always does now due to our new appearance guidelines..

**Additional Attachment:** [File Attachment]

**Investigation Outcome:**
Cindy and I spoke over the phone and due to the fact this concern is from February, the fact it is not directly about a situation with this Customer complaining and Cindy and there seems to be very little in this concern to go on (with the exception of the name tag) I am holding her coachable for a part of this concern The coachable moment is not wearing a name tag and hesitating in response to a customer asking for her name. .

**Coachable Moments :** ◉ Yes ○ No
**Date Of Determination:** 8/27/2012        **Determined By:** Jonathan Kriebel

( *All complaints investigation/determination will need Base Manager review before next step )

**Manager Review :** ◉ Accept ○ Reject     **Base Manager** Joseph Cerrigone

**Comments : ( Why?)**              **Date of Status Change:** 9/21/2012

**Coachable Moments (Normal) :**

**Documentation of Discussion with Crewmember:**
Cindy and I spoke over the phone and due to the fact this concern is from February, the fact it is not directly about a situation with this Customer complaining and Cindy and there seems to be very little in this concern to go on (with the exception of the name tag) I am holding her coachable for a part of this concern The coachable moment is not wearing a name tag and hesitating in response to a customer asking for her name. .

**Additional Attachment:** [File Attachment]

**Implemented By:** Jonathan Kriebel       **Mentored By:** Joseph Cerrigone

**Date Of Coach and Counsel:** 8/27/2012      **Action Taken:** Mutual Understanding

**Crewmember Administrative E-file Document Complete:** ☑ ( Yes )

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Inflight Service

**Customer Feedback Case Form (Complaint)**  *Oct/2011 Version*

| Category:<br>○ Compliment ◉ Complaint | Source: Speak Up | Source Note:<br>3350334 |
|---|---|---|

| F/A Position:<br>F1◉ F2○ F3○ | Priority:<br>◉ Normal ○ High | Crewmember Name: ( Last, First ) |
|---|---|---|

| Crewmember ID: | Inflight Supervisor: | Base: | Event Date:<br>12/11/2012 |
|---|---|---|---|

| Flight Number: | City Pair:<br>AUA ___ JFK | PNR: | Case Created:<br>1/4/2013 |
|---|---|---|---|

**Customer Comment Letter:** (*Customer name and contact information are omitted*)

**Trigger Point Categorization:** General Behavior - Friendly/Unfriendly

TrueBlue member: Y
PNR:
Departure City: AUA
Destination City: JFK
Flight Date: 12/11/12
Flight Number: 758
Urgent: N
Crewmember: the only female crew #758 on 12/11/12 at 5:30
LevelOne: Inflight
LevelTwo: Other
LevelThree:
Comments: First let me be positive and tell you how much we like Jet Blue-we fly your airline quite often and both hold Jet Blue american express cards. Your crew have always been pleasant and cordial and we love when your pilots joke about going somewhere warm. But after a few flights with this particular attendant I feel that I must express this concern. This is not the first incident with this crew member as we have been on other flights with her. I am a friendly person and when I enter an aircraft or exit, I say hi or thanks for a great ride. When entering the aircraft you get a stare from her and never a response to my hello.  When she walks down the aisle her nose is so high in the air that she can't see anyone who needs help or has a question. On one flight my husband sitting on an aisle seat touched her arm to get her attention as she was looking the other way. She turned and yelled at him "don't touch me."  Little things that we just ignored.  But on our most recent flight from Aruba she really hit my patience. I am a retired  first grade teacher who has more patience than anyone. While in Aruba I suffered from a kidney stone attack and was actually in the hospital for a day.  I felt fine before the flight but as we were boarding the plane I began experiencing some pain--not much you can do but struggle through the pain and hope the stone passes.
Unfortunately, this time I was very nauseous because of the pain. My husband and I were sitting on end seats across from each other and I asked him to ring the call bell. When she arrives at his row she just stood there looking at the three people in the seats,never asking who needs something? My husband tells her that it is me so she needs to turn around. I tell her my problem and ask if there is an empty seat in the rear of the aircraft near the lavatory and she tells me go sit in 1d-well I know that is an extra leg room seat and people next to me wouldn't be too happy that I was sitting there without paying. There was an empty seat in the back because people waiting for the lav were sitting in it.  As she turned away from me she mumbles "oh, God" I guess she forgot that my husband was across from me. I remained in my seat, took pain pills that they had given me at the hospital and luckily had a young doctor sitting next to me who gave me some medication that she had. By the end of the flight I was fine but my concern was that this attendant NEVER came back to me throughout the flight to ask how I was or if there was anything that she could do for me. When exiting the aircraft one would think that she might ask if I was feeling better. Send her back to a refresher course on people skills as she certainly is not an asset to jet blue.

We think her name is Cindy but to be fair since we are not positive   the person we are concerned about was the only female crew member on flight 758 from Aruba on 12/11 Recommend Level:

JB 000525<br>CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| Customer Letter (Scanned Copy): | File Attachment |
|---|---|

---

**Complaint Investigation and Outcome ( All Complaints ):**

**Investigation Checklist:**

☑ Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☑ Collect other Crewmember (including Flight, & CSA) if necessary
☑ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☐ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**
One - coachable

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**
Cindy and I met with regard to this concern. It appears the Customer was totally out of line and was actually removed from the AC by the Captain. Cindy remained calm and professional during this unfortunate event.

| | Pancerman 758 1-15.docx<br>Microsoft Word Document<br>14.2 KB |
|---|---|
| **Additional Attachment:** | |

**Investigation Outcome:**
I am not considering this a coachable moment as the Customer was out of control and it appears Cindy did all she could with regard to this individual. The captain removed this Customer - as this is where the conflict was centered. In his FCIR he wrote..."
He then proceed back on to the aircraft clearly still agitated ranting something about being a U.S. citizen and immediately got in the F2's face and demanded her name and let her know that there was going to be big trouble. At this point, both Gate Agents and all three flight attendants were not comfortable with this customer traveling on our flight, nor was I. I informed him that in the interest of safety that he was not going to be traveling on the flight. He came off initially, but tried to convince me to change my decision through several tactics including, getting in my face, and making several threats of how I was making a big mistake and that I should contact the consulate's office. I told him my decision was made and that it was not going to change, that he was only making matters worse at this point"

**Coachable Moments :** ○ Yes ● No

| **Date Of Determination:** 2/11/2013 | **Determined By:** Jonathan Kriebel |
|---|---|

**( *All complaints investigation/determination will need Base Manager review before next step )**

---

**Manager Review :** ● Accept ○ Reject    **Base Manager** Joseph Cerrigone

**Comments : ( Why?)**    **Date of Status Change:** 4/6/2013

---

**No Coachable Moments:**

**The investigation is closed:** ☑ ( Yes )

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Inflight Service

| Customer Feedback Case Form (Complaint) | | | *Oct/2011 Version* |
|---|---|---|---|

**Category:**
○ Compliment  ⊙ Complaint

**Source:** Speak Up

**Source Note:**
3344788

**F/A Position:**
F1 ⊙ F2 ○ F3 ○

**Priority:**
⊙ Normal ○ High

**Crewmember Name: ( Last, First )**

**Crewmember ID:**

**Inflight Supervisor:**

**Base:**

**Event Date:**
12/20/2012

**Flight Number:**

**City Pair:**
JFK ..... PLS

**PNR:**

**Case Created:**
1/4/2013

**Customer Comment Letter:** *(Customer name and contact information are omitted)*

**Trigger Point Categorization:** General Behavior - Friendly/Unfriendly

TrueBlue member: N
PNR: KPJRWM
Departure City: JFK
Destination City: PLS
Flight Date: 12/20/12
Flight Number: 805
Urgent: N
Crewmember: would not release name
LevelOne: Inflight
LevelTwo: Customer service
LevelThree:
Comments: Our family was looking forward to a 5 day vacation to Turks & Caicos Islands on December 20th, 2012. We were booked on Jet Blue Flight #805 leaving JFK at around :0:12 AM.

Two out of three of us, were sitting on the first row of the plane. As we took our seats we noticed an altercation ensue where a mother (as she entered the plane) accidentally bumped into the Flight Attendant while chasing her child who had ran in front of her. The Flight Attendant rudely confronted and yelled at this mom. Witnessing this event, I told my daughter that the FA was not correct in this situation, and she could have handled this more gently, and with courtesy. Little did we expect what was going to happen next.

An announcement was made twice that the plane will not leave unless all cell phones were shut off.
My wife realizing that her cell phone was in her handbag that was placed in the overhead (as she was sitting in the front row), got up to shut off her cell phone. The same FA rudely said: "what do you think you are doing"? My wife responded that she was getting up to get her handbag to shut off her cell phone as requested. The FA rudely responded: "Sit down right now". The plane had not left the tarmac at this point.

This behavior by the FA triggered a response from my wife. My wife muttered (in a low tone to my daughter who was sitting next to her): this is f——g ridiculous. The FA hearing this responded:
"are you cursing at me"? My wife responded that she did not curse at her, and that she was only attempting to shut off her phone as requested by the loudspeaker twice.

The FA got off her seat and called security. All three of us were asked to exit the aircraft. We attempted to explain the situation to the security, but it quickly became clear that it was a losing battle. Our bags were removed from the plane, and we had to go back home, clearly humiliated by Jet Blue. Luckily we booked a flight the following day, but lost over $1500 in our hotel bookings at Seven Stars, which was not cancelable. Besides the monetary loss, this experience cut short our holiday vacation, and caused much stress and anxiety.

Clearly your Flight Attendant was having a bad day. I am not justifying my wife's response; however it was triggered by the unprofessional and non courteous behavior by your FA. We were frustrated because we did not see any recourse in the matter, and did not have the opportunity to clear up the situation. However, the response was completely unwarranted and could have been handled differently, especially during the Holidays.

There was no commotion in the plane, although causing at least a 45 minute delay for the other passengers, while our luggage were traced and removed. We probably would not have issued this complaint, if not having found the mother who was unfairly confronted by the same FA, and other passengers who had witnessed this incident. It just happened that they were staying at the same hotel in Turks and Caicos Islands. We discussed this matter, and you will be hearing from them as well.

Before pursuing this matter further, we want to hear your response. I am sure that this is not the first time this FA reacted in such a confrontational way towards a passenger.

Recommend Level: 0

| File Attachment |
|---|

**Customer Letter (Scanned Copy):**

**Complaint Investigation and Outcome ( All Complaints ):**

JB 000527
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Investigation Checklist:**

☑ Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☐ Collect other Crewmember (including Flight, & CSA) if necessary
☑ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☐ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**
None prior to this

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**
I met with Cynthia to discuss how this might have been handled better.  She agreed that although the Customer was in the wrong, she could have handled the situation differently  - thus having a more positive outcome.

**Additional Attachment:**   | File Attachment |

**Investigation Outcome:**
I met with Cynthia to discuss how this might have been handled better.  She agreed that although the Customer was in the wrong, she could have handled the situation differently  - thus having a more positive outcome.  This was a coachable moment for Cindy.

**Coachable Moments :** ⦿ Yes ◯ No
**Date Of Determination:** 2/8/2013     **Determined By:** Jonathan Kriebel

**( *All complaints investigation/determination will need Base Manager review before next step )**

**Manager Review :** ⦿ Accept ◯ Reject     **Base Manager** Joseph Cerrigone

**Comments : ( Why?)**     **Date of Status Change:** 4/6/2013

**Coachable Moments (Normal) :**

**Documentation of Discussion with Crewmember:**
I met with Cynthia to discuss how this might have been handled better.  She agreed that although the Customer was in the wrong, she could have handled the situation differently  - thus having a more positive outcome.  This was a coachable moment for Cindy.

**Additional Attachment:**   | File Attachment |

**Implemented By:** Jonathan Kriebel     **Mentored By:**

**Date Of Coach and Counsel:** 2/8/2013     **Action Taken:** Other

**Crewmember Administrative E-file Document Complete:** ☑ ( Yes )

JB 000528
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Inflight Service

**Customer Feedback Case Form (Complaint)**    *Oct/2011 Version*

| Category:<br>○ Compliment ⊙ Complaint | Source: Speak Up | Source Note:<br>3368946 |
|---|---|---|

| Priority:<br>○ Normal ⊙ High | Crewmember Name: ( Last, First ) |
|---|---|

| Crewmember ID: | Inflight Supervisor: | Base: | Event Date:<br>1/15/2013 |
|---|---|---|---|

| Flight Number: | City Pair:<br>AUA ___ JFK | PNR: | Case Created:<br>1/25/2013 |
|---|---|---|---|

**Customer Comment Letter:** (*Customer name and contact information are omitted*)

**Trigger Point Categorization:** Customer Removal

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**From:** Haskins, Ron
**Sent:** Monday, January 28, 2013 9:54 AM
**To:** Shi, Clark
**Cc:** Kriebel, Jonathan
**Subject:** Re: ███████ / High Complaint

Hey Clark,

After reviewing this "High" complaint that you put in my queue for ████████ I believe this one is for "Cynthia Pancerman" for a couple of reasons. The customer's description: The blonde flight attendant, who might be in her 40's or early 50's and who didn't have a name tag on

1. ███ has dark hair
2. ███ wears her name tag
3. ███ is 34 years old.

Also, the letter that provides the description is from the brother of the customer and he wasn't even traveling. The second letter (follow up to ████████ doesn't give a description of the F/A. So I'm not quite sure how this ended up being filled in for ████████ Cynthia and ████████ both meet the description of ████ but again he wasn't on the plane to this one is a bit tough. I do know that Cynthia has a history of removing customers and I believe this is something that she would have done.

Original Message Follows:
------------------------
**E-mail Address:** ████████████
**Customer:** ████████
Phone Number:
**TrueBlue member: N**
PNR:
Departure City: AUA
Destination City: JFK
Flight Date: 01/15/13
Flight Number: 758
Urgent: N
Crewmember:
LevelOne: Inflight
LevelTwo: Customer service
LevelThree:
Comments: Hi there, I just wanted to report a situation that happened the other day when my sister was coming back from Aruba, where she traveled with her family for vacations.
She told me about it, but she didn't want to complain. I work in customer service area, and I have done it for almost 15 years already, and I told her she should express her concerns, still, she refused. That's why I am writing now.
he took the flight number 758 from Aruba to U.S, the one at 5.00p.m and when she, her husband and my nephews boarded the plane they witnessed a flight attendant arguing about a cell phone off or on.
10 min. later they removed the passenger from the plane under safety concerns and right after that, the very same flight attendant approach to my sister who was turning off her cell phone and said to her " You have to turn off your phone m'aam, you don't want to loose your flight? do you?" My sister replied back "I'm just turning it off, I see you had a hard day, and it is o.k. I understand" The blonde flight attendant, who might be in her 40's or early 50's and who didn't have a name tag on her replied back: "Just do as you are told, so we all can leave in time, thank you"
"The sarcasm she used in her speech was unbelievable" my sister said. I couldn't believe what I heard. And then my sister told me that other passengers explained her what really happened with the removed man earlier. They all said

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

that she approached him already in a bad mood, and when he told her, please, "don't be nasty, I'm already turning it off" she started to raise her voice and finger pointing the man. The passenger got upset and wanted her to identify herself, which she refused.
Then, he was removed by security, not before having the captain telling him that she was just doing her job.
My sister will never flight with you again, that's for sure. She was a customer as everybody else.
and we have to always be alert in the case of something out of normal, but not going to these extremes. If I were you guys, I would talk to that blonde flight attendant and see what's going on with her.
Thnak you for taking the time to read this...

Recommend Level:
-----------------------------------------------------------------

original Message Follows:
-----------------------
Dear
We all are ok here and we understand the situation pretty clear .
If the decision of captain was to return me back to the flight any one, even a closest to him member cannot scream over: "I said: he is not flying today!"
I believe it is not her business, she is just a Flight Attendant.
The situation was not so serious like that Flight Attendant was painting and that's why Mr            (the captain of aircraft) let me in and continue the flight. For some reason he changed his mind after that F.A. start to yell and make her personal comments and stories. And the reason for her reaction was very simple: I ASKE HER NAME OR TO PROVIDE ME WITH HER BUSINESS CARD .......
Anyway I have 4 friends who accomplished  that flight back to January 15th and all of us ready to face any court house or arbitration room to testify against her.
For sure the entire situation does not give any credits to the captain of that aircraft.
He has to be a leader, not the follower. And his word has to be the last one!
Dear         I was expecting more understanding from your side, but it looks like I have to let my lawyer to start talking.
It is a shame you guys covering unprofessional actions of your workers with all those safety regulations which have nothing to do with my particular situation. She did not even give me a chance to turn my phone down. She start to call to the captain         after I showed her that my phone is working in AIRLINE MODE.
I believe she should say:"Honey, please turn your phone down completely."
         beside everything else I still believe that your captain needs more training so next time in similar situation he would never leave a US citizen overseas  in jeopardy, in the country which does not have even our embassy.
I also believe that that Flight Attendant is not service oriented AT ALL.
She is not even proud enough to wear her company nametag.
I am very disappointed with Jet Blue even if it was my first flight with you guys.
I have been around and I flew with almost all airlines. I have my own little travel agency and we are growing.....
I would never ever recommend my customers to deal with Jet Blue in a future.
I already made a poster for my office to provoke my customers to ask me about my own experience with Jet Blue.
And I am sending you a draft of my letters to send all of them out ASAP.
P>S: The draft and poster attached to this e-mail.
With all my respect.
Very upset passenger

On 1/18/13 1:15 PM, "Dear JetBlue" <DearJetBlue@jetblue.com> wrote:

> To:
> Re: email received Thursday,01/17/13 2:16 PM, Speak Up 3368946
>
> Dear
>
> Thank you for contacting JetBlue Airways regarding your experience
> after boarding Flight #758 on Tuesday. We appreciate the opportunity

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

> to respond to your concerns.
>
> We strive to offer a safe and pleasant flight experience for all of
> our customers, and we regret that the events on Tuesday resulted in
> you being removed from the flight.
> Please know that we take
> your concerns very seriously, and have shared your comments of Captain
> ███████ and inflight crewmember ████ with their leadership teams.
> This situation will be personally reviewed with both crewmembers as an
> internal review. For confidentiality reasons, you will not be notified
> of the outcome of this review. We assure you that we do not condone
> rude behavior.
>
> Safety is a top priority of JetBlue. We follow all FAA guidelines, and
> accordingly our inflight instructions state that all cell phones must
> be powered off, not in airplane mode. According to our Contract of
> Carriage, or the agreement between each customer and JetBlue, upon
> confirming a reservation we have the right to refuse transportation or
> to remove any customer who does not comply with the rules.
>
> The complete text of our Contract of Carriage may be viewed on our website:
> http://www.jetblue.com/travelinfo/howToDetail.asp?topicID=30
>
> In the interest of all customers onboard, our inflight crew and
> captain have the right to determine on a case by case basis if a
> customer will be able to travel with us. We stand by the decision of
> our crewmembers should they feel the potential exists for an
> uncomfortable or unsafe condition onboard the aircraft.
>
> We thank you for letting us explain the circumstances and hope that we
> can offer you a renewed and improved experience on a JetBlue flight to
> come.
>
> Sincerely,
>
> ███████
> Customer Commitment Crew
> JetBlue Airways
> Crewmember ████
>
> Original Message Follows:
> ------------------------
> E-mail Address ████████████
> Customer: ████████████
> Phone Number: ██████████
> TrueBlue member: Y
> PNR:
> Departure City: AUA
> Destination City: JFK
> Flight Date: 1/15/13
> Flight Number: 758
> Urgent: N
> Crewmember:
> LevelOne: Inflight
> LevelTwo: Other

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

> LevelThree:
> Comments: Dear Administrator!
> We draw your attention to the unacceptable behavior of your employees.
> Our flight 758 (Aruba-NY) on January 15, 2013 was foiled by one of
> your flight attendants under the protection of Captain ████████
> On that day, my friends and I arrived to airport of Aruba in advance.
> We went trough dual control by the local administration and the U.S.
> border control. So we passed those controls successfully.
> On the plane, we had observed unacceptable behavior of one of the
> flight attendants. "Immediately take your seats!"-Commanded she to my
> friends. Her vocabulary was obviously missing any nice words like
> PLEASE/WOULD YOU/THANK YOU... etc.
> As she passed my seat, she told me to turn off my telephone. I told
> her that my phone is in safe AIRLINE MODE, and I let her see it. At
> the same moment she threatened her finger and yelled, "I said, turning
> off the phone at all!"
> I told her that her behavior is unacceptable. And this kind of voice
> and the way to approach looks familiar to me from the jail movies.
> Then she got in touch with the captain and demanded to remove me out
> of  the flight for security reason. (Now any rodness or other
> misbehavior could be covered by "Security Reasons").
> I stepped out from the aircraft with the captain of that flight
> ████████ and I explained to him the entire situation. Captain
> ████████ allowed me to take my seat back.
> When the flight attendant saw me on board again she start to scream
> out that, I am not allowed to fly with them anymore.  The captain just
> repeated after her that I have to leave the flight.
> Before I left the airplane, I asked the name of that flight attendant
> since she did not have her nametag  on.
> Captain ████████ did not give me any answer and asked me to leave the
> aircraft again.
> Leaving me out of the flight captain ████████ did not even asked
> whether I have enough money in excess of unplanned stay on the
> island.... In addition, I am sure the captain knows that Aruba does
> not even have a US Consular Office to help the US citizens in case of
> emergency.
> I take the whole incident as a demonstration of personal dislike to me
> by your staff. I take it as a demonstration of not neseserelly power
> of the representative of JetBlue company. And I take the situation
> like the leaving  an U.S. citizen in danger abroad.
> I request immediate internal investigation of everything what happened
> to me back to that day. I believe the strongest action what could take
> a place it is to ask me to give up my telephone during flight time.
> Please keep me informed ASAP.
> Otherwise, I have to take legal actions.
> Recommend Level: 0


[ Attachment 1  Type: video/x-fl  Name: Jet Blue.pdf] [ Attachment 2  Type: application/msword  Name: Dear Administrator.pdf]

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Pancerman 1-15 AUA-
JFK.docx
Microsoft Word Document
16.1 KB

**Customer Letter (Scanned Copy):**

**Complaint Investigation and Outcome ( All Complaints ) :**

**Investigation Checklist:**
☑ Review Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☑ Collect other Crewmember statements (including Flight, & CSA) if necessary
☑ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☑ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**
three

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**
Cindy and I met to discuss this concern.  She stated that she was helping the F1 to do her compliance and when she got to row 7 one individual would not shut his phone down.  She asked him politely to turn it off and he became belligerent.  He had the phone in airplane mode and would not turn it off.  He actually pushed the phone in her face and asked me if I needed glasses and asked her if I was stupid.  She informed the Captain who ultimately threw 7A off the AC.

File Attachment

**Additional Attachment:**

**Investigation Outcome:**
After reviewing the CM's statement and most importantly the Captain FCR., it has been determined that Mr. Pancerman acted in a professional manner and completed her responsibilities in a manner that is acceptable to JetBlue and the Inflight Department.  We are not holding Ms. Pancerman accountable / coachable for this concern.

**Coachable Moments:** ○ Yes ⦿ No
**Date Of Determination:** 2/11/2013    **Determined By:** Jonathan Kriebel

( *All complaints investigation/determination will need Base Manager review before next step )

**Inflight Manager Review:** ⦿ Accept  ○ Reject **Base Manager:** Joseph Cerrigone
Comments: ( If rejected )

**Date of Status Change:** 2/14/2013

**No Coachable Moments:**

The investigation is closed: ☑ ( Yes )

Inflight Service

**Customer Feedback Case Form (Complaint)**  *Oct/2011 Version*

| Category: | Source: | Select... | Source Note: |
|---|---|---|---|
| ○ Compliment ⊙ Complaint | | | |

| Priority: | Crewmember Name: ( Last, First ) |
|---|---|
| ○ Normal ⊙ High | |

| Crewmember ID: | Inflight Supervisor: | Base: | Event Date: |
|---|---|---|---|
| | | | 12/14/2015 |

| Flight Number: 135 | City Pair: | | PNR: | Case Created: |
|---|---|---|---|---|
| | JFK | ___ PHX | | 12/28/2015 |

**Customer Comment Letter:** (*Customer name and contact information are omitted*)

**Trigger Point Categorization:**

: I have been a long-standing customer of Jet Blue Airways. On Monday Dec 14th my flight was delayed by 3 hours. As I boarded the flight I requested a bottle of water. I was told that I had to drink it right there before I got to my seat. I did so, as I turned to walk away I heard "f***ing bitch". I turned around and said "Excuse me, please give me your name" (she did not have her badge on). I asked twice and she did not give it to me so I left and sat on my seat. A couple of minutes later the lady who checked my ticket at the gate came in and asked my husband and me to leave. I asked why and was told that the stewardess was not comfortable flying with me. Another attendant came by and yelled at me and I asked for her name and she did not give it to me either. Another man with a red jacket came by and asked us to leave. So we left without any explanation of the cause. I feel humiliated and would like an explanation and an apology for the way we were treated.

| File Attachment |
|---|
| |

**Customer Letter (Scanned Copy):**

**Complaint Investigation and Outcome ( All Complaints ):**

**Investigation Checklist:**

☑ Review Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☐ Collect other Crewmember statements (including Flight, & CSA) if necessary
☐ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☐ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**
0 Complaints

JB 000535
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**

F1 ██████████

F2 ██████████

F3 Cynthis Pancerman

F4 ██████████

**Additional Attachment:**

| File Attachment |
|---|

**Investigation Outcome:**

After speaking with Cynthia and reviewing both the IRR she submitted the day after this occurrence as well as the statement she wrote in as well as verbal confirmation from the other crewmember on the flight, I do not find this complaint to be coachable.

Both Crewmembers remember this customer boarding the plane in a rude and harsh way and both state it was the customer who was forceful with Cynthia, by pushing the bottle of water into Cynthia's stomach.

Cynthia and ██████████ both state that at no time did Cynthia curse at the customer and it was determined by both and the Captain on this flight to remove the customer.

The IRR states that it took a CRO as well as Corporate Security to remove the customer from the aircraft.

**Coachable Moments:** ○ Yes ◉ No

**Date Of Determination:** 1/28/2016   **Determined By:** Anthony Falcone

**( *All complaints investigation/determination will need Base Manager review before next step )**

**Inflight Manager Review:** ◉ Accept ○ Reject **Base Manager:** Mike Roldan

Comments: ( If rejected )

**Date of Status Change:** 1/28/2016

**No Coachable Moments:**

**The investigation is closed:** ☑ ( Yes )

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Inflight Service

**Customer Feedback Case Form (Complaint)**  *Oct/2011 Version*

| Category: ⚪ Compliment ⦿ Complaint | Source: Select... | Source Note: |
|---|---|---|

**Priority:** ⚪ Normal ⦿ High | **Crewmember Name: ( Last, First )**

| Crewmember ID: | Inflight Supervisor: | Base: | Event Date: 12/16/2015 |
|---|---|---|---|

| Flight Number: 98 | City Pair: DEN ___ JFK | PNR: | Case Created: 12/28/2015 |
|---|---|---|---|

**Customer Comment Letter:** (*Customer name and contact information are omitted*)

**Trigger Point Categorization:**

These two flight attendants, ▓▓▓▓ and Cindy, were in noticeably bad moods. The flight was late at night and delayed but I don't think that's a reason to be short and rude with passengers. They also seemed ready to fight with anyone who spoke to them, which is concerning considering these days flight attendants are able to kick people off flights. I will consider other airlines in the future as jet blue no longer has super friendly flight attendants.

File Attachment

**Customer Letter (Scanned Copy):**

**Complaint Investigation and Outcome ( All Complaints ):**

**Investigation Checklist:**

☑ Review Complaint (complaint received, read, verified)
☑ Crewmember complaint history completed on complaint form
☐ Collect other Crewmember statements (including Flight, & CSA) if necessary
☐ Investigation outcome (synopsis of your findings/recommendation)
☐ **For Executive level & DOT investigations: Compile CMs performance snapshot (Admin & Dependability E-file)
☐ Others (Please explains under investigation section)

**Crewmember Complaint History: (Past 12 Months)**
1 Complaint (not addressed yet)

**Investigation: ( Such as Crewmember Statement, IIR, Other Parties, or Customer)**

F1 ███████████████████
F2 ███████████████████
F3 ███████████
F4 Cynthia Pancerman

**Additional Attachment:**

> File Attachment

**Investigation Outcome:**

After speaking with Cynthia, I find this as a coaching moment to express how our demeanor could be read to our customers. That the moment the first customer boards the aircraft we are ON and whatever we are feeling must be put aside and we must express an outgoing personality and offer the JetBlue experience. At no time are we ever to be rude to our customers especially during a delay, because they too were delayed and sitting around waiting to board the aircraft.

**Coachable Moments:** ⦿ Yes ◯ No

**Date Of Determination:** 1/20/2016   **Determined By:** Anthony Falcone

( *All complaints investigation/determination will need Base Manager review before next step )

**Corrective Action Plan (CAP) - High Level Complaint:**

**CAP Date:**

**Inflight Manager Review:** ⦿ Accept   ◯ Reject **Base Manager:** Mike Roldan
Comments: ( If rejected )

**Date of Status Change:** 1/24/2016

**Coachable Moments:(High)**

**Implementation Documentation: ( Only implement with Base Manager's Approval )**

After speaking with Cynthia, I find this as a coaching moment to express how our demeanor could be read to our customers. That the moment the first customer boards the aircraft we are ON and whatever we are feeling must be put aside and we must express an outgoing personality and offer the JetBlue experience. At no time are we ever to be rude to our customers especially during a delay, because they too were delayed and sitting around waiting to board the aircraft.

**Additional Attachment:**

> File Attachment

**Implemented By:** Anthony Falcone   **Mentored By:**

**Date Of Coach and Counsel:** 1/20/2016   **Action Taken:** Select...

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Crewmember Administrative E-file Documentation complete:** ☑ ( Yes )

**Inflight General Manager Review:** ☐ (GM Only)

JB 000539
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 3

From: **Mark Rose** mark@sheridanlawfirm.com
Subject: Re: Karrani - Meet-And-Confer
Date: May 9, 2019 at 4:14 PM
To: Samantha Pitsch spitsch@millsmeyers.com
Cc: Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com,
Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Linda Wheeler
lwheeler@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Paula McMillan pmcmillan@millsmeyers.com

Samantha,

Thank you. I believe that's workable in terms of avoiding a motion to seal.

Thank you for also letting us know that Defendant now agrees to un-redact the names of other JetBlue employees. We would appreciate if you would please provide JB 523, 530-533, 536-538, without those redactions tomorrow. It is a small volume of documents — 8 pages — with only a few redactions that need to be digitally undone, so it shouldn't take long to turn around.

As for the issue still remaining about JetBlue's continuing objection to producing other passengers' names, email address and phone numbers, I believe the issue is larger than you describe it. I requested in my April 30 email and again during the meet-and-confer yesterday, "**all other versions or forms of the complaints that exist in unredacted form; JetBlue's responses to the complaints; and any incident reports or witness statements the company possesses concerning the complaints.**"

In the case of the Jeff Roberts and Fatima Wachuku complaints, we know that the copies of the complaints JetBlue originally produced turned out to not be the only copies on file. We learned, for example, that another version of Ms. Wachuku's complaint existed that included her name and contact information, which was not the copy we were originally provided. Based on the objections JetBlue is maintaining with regard to producing non-party passenger names for the complaints found at JB 519-540,  my understanding is that if you locate other versions of the complaints or other related documents, Defendant's position remains as to those documents that it will not violate the passengers' rights of privacy and will not disclose the persons' names or contact information. Please correct me if I'm misunderstanding Defendant's position.

I say all of this to say that since we don't yet know how many other documents exist pertaining to the newly produced Pancerman complaints, no one can say yet know how many passenger names are implicated by JetBlue's continuing objection.

In any case, we appreciate your cooperation in agreeing to release the other JetBlue employee names and hope to receive those unredacted pages tomorrow if possible.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

On May 9, 2019, at 3:37 PM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:

Mark,

For the purposes of this motion to compel, JetBlue has advised that the confidential designation can be lifted from pages JB 519-540 if:

1.  the document retains its original redactions;
2.  pages JB 519 and JB 522 are omitted;
3.  the top four entries on page JB 520 and
4.  the top four entries and the last entry (from 5/16/17) on JB 521 are redacted.

If Plaintiff agrees to these additional redactions, JetBlue will agree to lifting the confidential designation for these pages for the purpose of the motion.

Additionally, JetBlue has agreed to un-redact its employee names from the other customer complaint records. Accordingly, only one passenger name will be redacted in these records. The other redacted names are passenger's family names.

Thank you,
Samantha

Samantha

_____

**Samantha K. Pitsch |** [vCard](#)
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA  98104
Direct: 206.812.7476 | Reception: 206.382.1000
[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com) | [www.millsmeyers.com](http://www.millsmeyers.com)

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

---

**From:** Mark Rose <[mark@sheridanlawfirm.com](mailto:mark@sheridanlawfirm.com)>
**Sent:** Thursday, May 9, 2019 12:52 PM
**To:** Samantha Pitsch <[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com)>
**Cc:** Jack Sheridan <[jack@sheridanlawfirm.com](mailto:jack@sheridanlawfirm.com)>; Alea Carr <[alea@sheridanlawfirm.com](mailto:alea@sheridanlawfirm.com)>; Jamie Wipf <[Jamie@sheridanlawfirm.com](mailto:Jamie@sheridanlawfirm.com)>; Caryn Jorgensen <[cjorgensen@millsmeyers.com](mailto:cjorgensen@millsmeyers.com)>; John Fetters <[jfetters@millsmeyers.com](mailto:jfetters@millsmeyers.com)>; Linda Wheeler <[lwheeler@millsmeyers.com](mailto:lwheeler@millsmeyers.com)>; Anna Armitage <[aarmitage@millsmeyers.com](mailto:aarmitage@millsmeyers.com)>; Paula McMillan <[pmcmillan@millsmeyers.com](mailto:pmcmillan@millsmeyers.com)>
**Subject:** Re: Karrani - Meet-And-Confer

Samantha,
Thank you for the response. As I read your email I can understand where the confusion stems from.

Yes, we're seeking to have JetBlue remove the redactions from the other passenger complaints. I understand from the first sentence in your email below that JetBlue is not amenable to that, owing to concerns about non-party passenger and JetBlue employee privacy.

Separately, for purposes of motion practice, we need to share with the Court the redacted version of the other passenger complaints produced to date. For that reason, we're asking if JetBlue will agree to remove the Confidential designations as to the redacted versions of the other passenger complaint pages. Otherwise, we'll have to file another motion to seal to get the Confidential stamped documents before the Court, which seems unnecessary given that all of the passenger and other employee names have already been redacted.

If you'd like us to redact additional portions of JB 519-540 for purposes of filing (using a distinguishing "Redacted by Plaintiff" redaction box), that is an option, depending on what else you'd want redacted to waive the Confidential designations. For example, we could agree to redact the entries at JB 519 (dated 5/8/19 and 6/3/19) and also redact the next four entries on the next page JB 520 — which aren't relevant to a motion seeking to compel disclosure of unredacted complaints. The same with respect to the top four entries on JB 521; and we can omit JB 522 altogether if you like. Beyond that, I think we need the Court to see the complaint records in the form produced to us in discovery.

Does that clarify what we're seeking? I'm free to chat by phone this afternoon if you wish to discuss further.

Thanks,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On May 9, 2019, at 12:10 PM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:

Mark,

JetBlue has advised that it will not change its previously discussed position on non-party passenger and JetBlue employee information contained in the unrelated passenger complaints (JB 000523-000540).

In regard to confidential designation vs. redactions – I think there is some confusion as to what is being requested. Just to clarify, here is my understanding of Plaintiff's request:

- Remove Confidential Designations (keep redacted)

    - JB 1 (Captain's Incident Report)
    - JB 3 (crew member Pancerman's incident report)

- Remove redactions (keep confidential designation)

    - JB 000519-000540 (other passenger complaints)
    - JB 449 (Pancerman's ratings as job candidate);
    - JB 451 (name of JetBlue employee who recommended Ms. Pancerman for hire);
    - JB 453 (Ms. Pancerman's rate of pay);
    - JB 454 (name of hiring official);
    - JB 521 (name of complainant);
    - JB 523 (name of flight attendant who is witness to facts referenced in complaint);
    - JB 530-31 (name of flight attendant and captain who are witnesses to facts referenced in complaint; name of complainant; complainant's email address; unknown what else is redacted on pages);
    - JB 532-33 (name of flight attendant and captain who are witnesses to facts referenced in complaint; name of complainant; complainant's email address and phone number; unknown what else is redacted on pages);

3

- JB 536 (names of flight attendants who are witnesses to facts referenced in complaint);
- JB 537-38 (names of flight attendants who are witnesses to facts referenced in complaint)

Can you please clarify what you are requesting so that we can respond?

Thank you,
Samantha

_____

**Samantha K. Pitsch |  vCard**
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA  98104
Direct: 206.812.7476 | Reception: 206.382.1000
spitsch@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

---

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Wednesday, May 8, 2019 5:15 PM
**To:** Samantha Pitsch <spitsch@millsmeyers.com>
**Cc:** Jack Sheridan <jack@sheridanlawfirm.com>; Alea Carr <alea@sheridanlawfirm.com>; Jamie Wipf <Jamie@sheridanlawfirm.com>; Caryn Jorgensen <cjorgensen@millsmeyers.com>; John Fetters <jfetters@millsmeyers.com>; Linda Wheeler <lwheeler@millsmeyers.com>; Anna Armitage <aarmitage@millsmeyers.com>; Paula McMillan <pmcmillan@millsmeyers.com>
**Subject:** Re: Karrani - Meet-And-Confer

Samantha,

Please let us know if JetBlue decides to reverse course in its opposition to disclosing third party passenger names and contact information no later than the close of business tomorrow. We asked JetBlue to produce the unredacted complaints on the morning of April 30, just hours after we received the complaints in redacted form the night before.

We gave your office one week to confer with your corporate client and to come to a decision on whether Defendant would agree to produce the other complaints against Ms. Pancerman in unredacted form. Yesterday, a week after I sent the email asking JetBlue to produce the unredacted complaints, or to meet-and-confer on the issue, you responded that JetBlue wouldn't agree to produce the unredacted complaints, stating unambiguously:

> *If these passengers wanted their information regarding these events to be made public, they could have pursued litigation. … JetBlue continues to assert the privacy rights and interests of the other passengers. The circumstances of Mr. Karrani's claim do not justify intrusion on the privacy of these non-parties.*

During our subsequent meet-and-confer yesterday afternoon, Caryn continued to object to the requested production based on the privacy rights of non-party passengers and JetBlue employees, and added that the disclosure of other passengers' names and contact information was not "proportional" to the needs of the case. This was reiterated in your notes of the meet-and-confer below.

Thus, all of the statements by Defendant to date have been clear that JetBlue has no intention of disclosing the other complainants' names or un-redacted copies of their complaints. There is no need for us to wait another week only to be told that JetBlue's position remains unchanged. As I said yesterday and in one of my emails last week, the deadline for discovery motions passed long ago (March 29), so time is of the essence. As you know, we could not have timely raised this issue with the Court, as we were in the dark about the existence of the other complaints against Ms. Pancerman until we received the redacted complaints from JetBlue on April 29. To avoid further prejudice to our client, we'll need to file a motion this week seeking the production of the unredacted copies of the other Passenger complaints.

Also, I want to make sure things don't get confused by your summary below. The first bullet point is not accurate. My email before the meet-and-confer yesterday asked JetBlue to agree to drop the "*Confidential*" designations as to JB 1, JB 3, and JB 519-540, so that the Protective Order won't apply to those documents and we can file them in the Court file without sealing. That's a different issue from the question of redactions. (JB 1 has no redactions, but remains subject to the protective order. The other pages are redacted, but that's why you should agree to drop the Confidential designations ).

While I did send you a list of documents from Ms. Pancerman's personnel file last night to consider unredacting, the only thing new there that you haven't already presented to your client are:

> JB 449 (Pancerman's ratings as job candidate);
> JB 451 (name of JetBlue employee who recommended Ms. Pancerman for hire);
> JB 453 (Ms. Pancerman's rate of pay);
> JB 454 (name of hiring official);

We don't require an immediate answer about whether JetBlue is going to

unredact these entries, but please tell us by tomorrow if the company is changing its mind and plans to produce unredacted copies of the other passenger complaints against Ms. Pancerman. Defendant's had plenty of time to consider this question and has thus far declined to agree based on concerns about privacy and proportionality, as we discussed yesterday.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On May 8, 2019, at 2:58 PM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:

Mark,

Below is my summary of what we discussed in the meet and confer.  In addition to this summary, I have interlineated additional comments below.
- Removing redactions – we will confer with JetBlue regarding whether JetBlue will agree to remove the redactions from:
    - JB 1 (Capt.'s incident report regarding Mr. Karrani's flight);
    - JB 3 (Ms. Pancerman's incident report regarding Mr. Karrani's flight, as previously redacted by JetBlue);
    - JB 519-540 (recently disclosed complaints about Ms. Pancerman, as previously redacted by JetBlue)
        - Plaintiff's Counsel will review JetBlue's privilege log to specifically note which items to un-redact
- Jeff Roberts' complaint – we will confer with JetBlue regarding whether the highlighting of the dates in JB 000615–000616 is something that JetBlue added or if that is how the email would look in its original format.
- Wachuku complaint – JetBlue will search for any additional records related to Ms. Wachuku's BUR-JFK flight.  In addition, JetBlue is working to determine if any currently-employed supervisory personnel recall speaking with crew member Pancerman regarding this complaint. If JetBlue identifies any personnel who recall discussing this incident, we will disclose that person's name.

- Crew member Pancerman Personnel File
  - JetBlue is currently looking into whether there are missing entries in Pancerman's personnel file as there are no performance entries after 5/16/17.
  - We will follow up with JetBlue regarding documentation showing Ms. Pancerman's training history.
- DOT guidance
  - We will follow up with JetBlue regarding whether there were any emails or records relating to the released DOT guidance.
- Produced complaints
  - We will follow up with JetBlue regarding searching for any other documents related to the complaints found in Pancerman's personnel file.

Additionally, attached is a corrected supplemental report from Paula Gaudet.

Thank you,
Samantha

_____
**Samantha K. Pitsch |** **vCard**
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
Direct: 206.812.7476 | Reception: 206.382.1000
spitsch@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private. It may contain privileged or confidential information. If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Tuesday, May 7, 2019 3:55 PM
**To:** Caryn Jorgensen <cjorgensen@millsmeyers.com>; John Fetters <jfetters@millsmeyers.com>; Samantha Pitsch <spitsch@millsmeyers.com>
**Cc:** Jack Sheridan <jack@sheridanlawfirm.com>; Alea Carr <alea@sheridanlawfirm.com>; Jamie Wipf <Jamie@sheridanlawfirm.com>
**Subject:** Re: Karrani - Meet-And-Confer

Caryn,
Thanks for making time to chat today before you head across the Atlantic. I have noted my take-ways from today's conversation in red.

Atlantic. I have noted my take-ways from today's conversation in red below. If you or your team have anything to add, please chime in.

Thanks again,
- Mark

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

> On May 6, 2019, at 11:43 PM, Mark Rose <mark@sheridanlawfirm.com> wrote:
>
> Counsel,
>
> It has been one week since I wrote requesting to meet-and-confer if Defendant would not agree to our requests for supplementation. I've not received any substantive response to our requests. Let's chat at 11:00 a.m. tomorrow (Tues.). If that time won't work, please let me know what time you are available tomorrow to talk.
>
> For ease of reference, here is a list of the issues I've previously written to you about, which we need to discuss:
>
> **From email dated 4/30:**
>
> - **Will Defendant produce Ms. Pancernman's personnel file without redactions?** Redactions made based on "privacy" do not comply with the civil rules, as they are not based on a recognized privilege. Moreover, there is already a protective order in place to ensure that private and personal information is treated accordingly.

I agreed to mark-up the privilege log to highlight specific pages we wish to see un-redacted.  I mentioned that we'd like to obtain, for example, the names of passengers, coworkers and other witnesses whose names have been redacted. We are not seeking to obtain disclosure of any Social Security Numbers, but do want contact

information of witnesses where that's been redacted. You said that
you believe the disclosure of third party witness names implicates an
issue of "proportionality," although the redaction of names is more
burdensome for JetBlue than disclosing the information.

The objection we discussed with regard to redactions  was JetBlue
employees' and passengers' reasonable expectations of privacy.  The
individuals' whose names plaintiff seeks have no relationship to the
underlying event.  The proportionality argument relates not to the
burden of redacting (which already has been done), but to the
imposition on non-party passenger and employee reasonable privacy
interests as the other incidents are remote and distinct and, with
regard to passengers, JetBlue produced litigated claims – those
passengers litigating against JetBlue reasonably waived any interest
they may have in keeping their information private.  The other non-
parties have not.  Nonetheless, we will review the marked-up
privilege log with JetBlue and make a determination on any further
revisions to the production.

- **Will Defendant supplement its answer to
  Interrogatory No. 7 and the related RFP 13?**
  We've asked JetBlue to provide all of the
  requested information and documentation it
  possesses about the 7 complaints against Ms.
  Pancerman that were just produced to s on 4/29,
  including **all other versions or forms of the
  complaints that exist in _unredacted_ form;
  JetBlue's responses to the complaints; and any
  incident reports or witness statements the
  company possesses concerning the complaints**.
  What we were provided on 4/29 has all of the
  complainants' names and contact information
  redacted, which again does not comply with the
  rules.

You will ask JetBlue whether any further documentation exists (such
as that described above) with regard to the new complaints we
received as part of Ms. Pancerman's personnel file. I said this
required in order to have a complete answer to Interrogatory No. 7
and RFP 13, and we then debated whether the new complaints were
actually called for by the language of Interrogatory No. 7. You said
that Jack had previously agreed to narrow the scope of the request to
complaints alleging discrimination. I said that that limitation related
to Interrogatory No. 2 and noted that JetBlue's original answer to the
discovery did not purport to limit the scope in such a way. Compare
Def.'s Answer to Interrogatory No. 2 with Def. Answer to Interrogatory
No. 7. In fact, JetBlue originally produced benign complaints
regarding passenger comfort (a "broken seat cushion") in its original

9

regarding passenger comfort (a "broken seat cushion") in its original response to Interrogatory No. 7. <u>See</u> JB 417.  So, for that reason, we were surprised to find so many complaints alleging unfair removal of passengers, similar to Mr. Karrani's claim here, had been withheld. The definition of "complaint" in the discovery requests was not limited to discrimination claims, but instead includes claims of "unfair" treatment made against Ms. Pancerman.

In response to your comment about Interrogatory No. 7: JetBlue did not produce a "benign" complaint in its original production. As noted on JB 000418, the passenger's description of events triggered us to produce this complaint based on the definition of "complaint" in the discovery, as discussed with Jack in a prior discovery conference. Moreover, we noted in our conference that JetBlue has produced all of the complaints related to crew member Pancerman found in her personnel file, regardless of the interpretation of the definition of "Complaint."

- **Will you produce documentation showing how management responded and internally resolved the February 2016 and January 2018 complaints filed against Ms. Pancerman by Ms. Wachuku and Mr. Roberts?** This information was provided for the other complaints made against Ms. Pancerman but is conspicuously absent for Ms. Wachuku's complaint of racial discrimination and for Mr. Roberts' complaint about Mr. Karrani's treatment.

You will confirm whether any follow up took place regarding Ms. Wachuku's complaint that's not documented and will provide a written answer to Interrogatory No. 7 if you find something. I asked for JetBlue to provide a written answer either way, which you would not agree to. You said there was no follow up regarding Mr. Roberts' complaint, and that it never made its way to Ms. Pancerman's management. Again, you would not agree to provide a written answer to Interrogatory 7 about the lack of an investigation or response to the .

 We debated whether Interrogatory No. 7 in fact seeks complaints like Ms.

The last sentence was incomplete.  See also the note above – JetBlue is inquiring to determine if any personnel recall discussing Ms. Wachuku's incident with Ms. Pancerman.  If JetBlue identifies any such personnel, it will produce that name.

- **Is a page missing from the database printout in Ms. Pancerman's personnel file?** There are no

**Ms. Pancerman's personnel file.** There are no Performance entries dated after 5/16/2017.

You said you did not yet know the answer to this question yet, as your team had missed seeing the question in my email dated 4/30. You will get back to me once you know if there have been any Performance entries in the personnel database over the course of the past two years.

**From email dated 5/1:**

- **Has Defendant produced the "Admin/Training File" for Ms. Pancerman referenced at JB 522, and all of Ms. Pancerman's training records?** We've found no records among JetBlue's production that relate to Ms. Pancerman's training.

You said that training files aren't considered part of the personnel file at JetBlue. Still it was part of our discovery requests definition of personnel file. You have a pending question to your client as to whether there's any documentation showing Ms. Pancerman's training history, including the linked document I cited at JB 522 of the personnel file.

**From email dated 4/29:**

- **Does JetBlue possess any documents related to the DOT guidance documents ("*Guidance for Airline Personnel on Nondiscrimination in Air Travel*" and "*Passengers' Right to Fly Free from Discrimination*")**? Such records are responsive to Requests for Production No. 10 and 23.

You said that JetBlue had no revision to training materials or publications as a result of the above-cited DOT guidance documents being published. However, you agreed to check whether JetBlue had any email or other records related to the "roll-out" of DOT's guidance documents.

We agreed to follow up with JetBlue regarding any corporate communications related to the 2017 DOT Guidance. We explained that training programs are FAA approved programs and that it is not unusual to not see a revision to training programs as a result of non-prescriptive guidance. Nonetheless, we will ask JetBlue to advise of any communications regarding the 2017 DOT Guidance.

From email dated 4/30:

- **What is the jurisdiction and cause number for the** <u>Keith Maurer v. Alaska Airlines</u> **case in which Ms. Gaudet states she gave deposition testimony?** Her list of cases omitted this information. See <u>Elgas v. Colorado Belle Corp.</u>, 179 F.R.D. 296, 300 (D. Nev. 1998) ("The list of other cases in which the witness has testified as an expert should include the court, the names of the parties, the case number, and whether the testimony was by deposition or at trial."); <u>and</u> <u>Coleman v. Dydula</u>, 190 F.R.D. 316, 317 (W.D.N.Y. 1999) ("list should include the name of the court, the names of the parties, the docket number (if available), and whether the testimony was given during a deposition or at a trial.")

You clarified that Ms. Gaudet's supplemental report had typographical errors that caused opinions she previously gave to be omitted, and that she'll be delivering another supplemental report to re-incorporate the opinions that were in the original report but not the latest report. I asked if you would agree to strike Ms. Gaudet as an expert, or to at least withdraw some of her opinions and provided my rationale. You did not agree to strike her as an expert.

From email dated 5/7:

- Will you please let us know if you will remove the confidential designations made for the following documents:
  - JB 1 (Capt.'s incident report regarding Mr. Karrani's flight);
  - JB 3 (Ms. Pancerman's incident report regarding Mr. Karrani's flight, as previously redacted by JetBlue);
  - JB 519-540 (recently disclosed complaints about Ms. Pancerman, as previously redacted by JetBlue);

You said you'll need to confer with your corporate client and cannot immediately this question.

Yes – your request came in 20 minutes prior to our conference.  As discussed, we need notice and time to confer with our client contacts at JetBlue.  We are working through these issues with them and will respond.

<190503 JB-Karrani Corr Supp Expert Report.pdf>

# EXHIBIT 4

| From: | **Mark Rose** mark@sheridanlawfirm.com |
| --- | --- |
| Subject: | Re: Karrani v JetBlue No. 2:18-cv-01510-RSM |
| Date: | April 30, 2019 at 11:43 AM |
| To: | Samantha Pitsch spitsch@millsmeyers.com |
| Cc: | Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Linda Wheeler lwheeler@millsmeyers.com, Paula McMillan pmcmillan@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com |

Thanks, Samantha. I appreciate the update. Please have your client respond soon so we can promptly resolve these issues and not have them drag on much longer. As you know, under the scheduling order discovery was to be completed yesterday (April 29). We timely served these requests on February 6th, making JetBlue's response to requests due on March 8th -- nearly 8 weeks ago. So, time is of the essence for the requested supplementation.

Also, I'd appreciate if you would please forward JetBlue the email that I sent yesterday concerning the request for supplementation on its training documents responsive to RFP Nos. 10 and 23, in light of the existence of the guidance documents USDOT published in 2017. We received supplemental production from Defendant yesterday in response to RFP Nos. 10 and 23— documents Bates-stamped JB 585-610 — however, those training documents pertain only to JetBlue's treatment of its employees, as opposed to training on how employees should treat customers and not discriminate against passengers. So, we still need JetBlue to confirm whether it possesses documents related to the guidance documents that USDOT published in 2017 or any similar training materials regarding its duty to not discriminate against passengers.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

> On Apr 30, 2019, at 11:27 AM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:
>
> Mark,
>
> We are forwarding your communication to JetBlue. Once we are able to confer with JetBlue, we will contact you to set up a time to discuss.
>
> Thank you,
> Samantha
>
> _____
>
> **Samantha K. Pitsch |** **vCard**
> **Attorney**
> **Mills Meyers Swartling P.S.**
> 1000 Second Avenue, 30th Floor | Seattle, WA  98104
> Direct: 206.812.7476 | Reception: 206.382.1000
> spitsch@millsmeyers.com | www.millsmeyers.com
>
> This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.
>
> **From:** Mark Rose <mark@sheridanlawfirm.com>
> **Sent:** Tuesday, April 30, 2019 9:29 AM
> **To:** Caryn Jorgensen <cjorgensen@millsmeyers.com>; John Fetters <jfetters@millsmeyers.com>; Samantha Pitsch <spitsch@millsmeyers.com>
> **Cc:** Linda Wheeler <lwheeler@millsmeyers.com>; Paula McMillan
> <pmcmillan@millsmeyers.com>; Anna Armitage <aarmitage@millsmeyers.com>; Jack Sheridan

<pmcmillian@millsmeyers.com>, Anna Armitage <aarmitage@millsmeyers.com>; Jack Sheridan
<jack@sheridanlawfirm.com>; Alea Carr <alea@sheridanlawfirm.com>; Jamie Wipf
<Jamie@sheridanlawfirm.com>
**Subject:** Re: Karrani v JetBlue No. 2:18-cv-01510-RSM

Counsel,

We need to meet-and-confer on the supplemental production JetBlue served yesterday. Can we chat
this afternoon?

In JetBlue's response to the motion to compel, you wrote that "**Because JetBlue already produced all
available 'Complaints,**' as that term is defined in Plaintiff's discovery, **against crew member
Pancerman, there is no justifiable need for production of her personnel file.**" Dkt. # 22 at p. 8. After
Defendant filed its brief making that assertion, we wrote to you about a comment made by a customer
service rep to a passenger who had complained of racial discrimination by Ms. Pancerman. The
customer service representative told the complainant that Ms. Pancerman would be "coached." After
directing you to this comment, you wrote it "changed [y]our analysis regarding the discoverability of
Ms. Pancerman's personnel file." As a result, yesterday we received a 117-page .PDF file that is
represented to be "the employment file (not including payroll records) of crew member Pancerman."
(The request for Ms. Pancerman's personnel file was already the subject of Plaintiff's motion to
compel, which remains pending before the Court.).

I am writing you now to address a number of concerns we have concerning the personnel file JetBlue
produced for Ms. Pancerman.

As an initial matter, I note that there are a number of documents that are highly relevant to this case
and which we expected to find in the personnel file, but instead found to be missing:

1. Another passenger on Mr. Karrani's January 2018 flight filed a complaint about Ms. Pancerman.
   The personnel file that we received contains no reference to this complaint; and the printout
   from the personnel database that purports to summarize complaints on file against Ms.
   Pancerman also makes no reference to the complaint. See JB 519 to 521 (showing
   "Performance" documents and complaints ranging in date from 5/8/2009 to 5/16/2017). Given
   that many similar complaints are catalogued in the database, it is curious that the January 2018
   passenger complaint regarding Mr. Karrani's removal and Ms. Pancerman's refusal to carry on
   with her shift that day, was not similarly cataloged. Such omission from JB 521 leads us to
   believe that a page additional "Performance" entries from the personnel database — showing
   events from 5/17/2017 through the present — may be missing. Please confirm with JetBlue
   that no data exists in the database for Performance entries dated after 5/16/2017.
2. The personnel file is also missing documentation showing how management resolved the
   complaint made by Mr. Karrani's fellow passenger on the January 2018 flight. For other
   complaints filed by passsengers, the personnel file shows how Ms. Pancernman's supervisors
   and managers reviewed and investigated each complaint made against her and came to a
   determination on how it should be resolved, including whether it gives rise to a "coachable"
   moment. Please produce the documentation showing how the complaint filed regarding Mr.
   Karrani's flight was resolved by management.
3. Similarly, the personnel file is missing documentation related to the racial discrimination
   complaint made against Ms. Pancerman in February 2016 by the witness recently deposed in

Atlanta. The complaint is included in the database printout (JB 521), but otherwise omitted from the personnel file. Again, for other customer complaints, including a complaint made just a month before in January 2016 (JB 537-529), the personnel file shows how Ms. Pancernman's supervisors and managers review and investigate each complaint made against her and come to a determination on how it should be resolved, including whether it gives rise to a "coachable" moment. We have still yet to receive any documentation showing how management resolved the February 2016 racial discrimination complaint made by the Atlanta witness, including management's determination of whether it was a "coachable" moment. Please produce the documentation showing the racial discrimination complaint was resolved.

I must also note that it is now apparent that a large number of written complaints filed against Ms. Pancerman had not previously been produced, despite the representation made to the Court that "JetBlue already produced all available complaints." I believe we received at least 7 new complaints against Ms. Pancerman yesterday. The newly produced complaints are significant, as they show that JetBlue has known since at least January 2013 that Ms. Pancerman "has a history of removing customers" from flights. JB 530. Indeed, several of the complaints just produced relate to Ms. Pancerman's removing customers from flights under circumstances that the passengers, like Mr. Karrani, claim were unwarranted.

Thus, it should go without saying that we must contact the other passenger who complained about Ms. Pancerman in order determine if they fit with the pattern we have observed so far, in which persons who Ms. Pancerman has removed from flights are persons of color and/or immigrants. However, at present, we cannot conduct that investigation, as JetBlue has made redactions throughout Ms. Pancerman's personnel file, including making redactions to the complaints filed against her. To the extent redactions have been to the personnel file documents based "privacy," they are not warranted and do not comply with the civil rules, as they are not based on a recognized privilege. Moreover, there is already a protective order in place to ensure that private and personal information is treated accordingly.

Also, the redaction of customer names and email addresses does not appear to have been made for the purpose of protecting third party privacy, but instead appears aimed at inhibiting our ability to investigate. One of the complaints in which the name and email address of the complainant is redacted illustrates this point. He writes: "I have 4 friends who accomplished that flight back to January 15th [sic] and all of us ready to face any court house or arbitration room to testify against her" [Ms. Pancerman]. JB 531.

Please promptly produce all complaints about Ms. Pancerman without redactions. Please also supplement your answer to Interrogatory No. 7 and the related RFP 13 to provide all documentation that JetBlue possesses concerning the complaints just produced, including all other versions or forms of the complaints that exist; JetBlue's responses to the complaints; and any incident reports or witness statements the company possesses concerning the complaints, none of which were provided yesterday.

If JetBlue will not agree to cooperate and promptly provide this requested supplementation, we will be forced to file a motion seeking relief from the Court and will request terms.

I'm available all day to discuss these issues. Please let know what time works for you.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On Apr 29, 2019, at 4:15 PM, Linda Wheeler <lwheeler@millsmeyers.com> wrote:

Attached please find the following documents:

JetBlue's Second Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production;
JetBlue's Responses to Plaintiff's Second Set of Interrogatories and Requests for Production;
JetBlue's Verification Page to its First Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production (previously served; and
Jet Blue's Privilege Log.

A link to the document production is below. The password will follow in a separate e-mail.


https://millsmeyers.box.com/s/llctbgx2lrpt3izkvfjkow0i7yo2xqs7

---

**Linda McIntosh Wheeler | vCard**
**Legal Assistant/Paralegal**

**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA  98104
Direct: 206.812.7474 | Reception: 206.382.1000
lwheeler@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

<190429 JBlues 2nd Suppl Resp  Pltf 1st Discv.pdf><190429 JBlues Resp ptfs 2nd Discv.pdf><190429 JetBlue Karrani Privilege Log.pdf><Verification Page_First Supp Resp.pdf>

# EXHIBIT 5

**From:** **Mark Rose** mark@sheridanlawfirm.com
**Subject:** Karrani - Meet-And-Confer
**Date:** May 6, 2019 at 11:43 PM
**To:** Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Samantha Pitsch spitsch@millsmeyers.com
**Cc:** Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com

Counsel,

It has been one week since I wrote requesting to meet-and-confer if Defendant would not agree to our requests for supplementation. I've not received any substantive response to our requests. Let's chat at 11:00 a.m. tomorrow (Tues.). If that time won't work, please let me know what time you are available tomorrow to talk.

For ease of reference, here is a list of the issues I've previously written to you about, which we need to discuss:

From email dated 4/30:

- **Will Defendant produce Ms. Pancerman's personnel file without redactions?** Redactions made based on "privacy" do not comply with the civil rules, as they are not based on a recognized privilege. Moreover, there is already a protective order in place to ensure that private and personal information is treated accordingly.

- **Will Defendant supplement its answer to Interrogatory No. 7 and the related RFP 13?** We've asked JetBlue to provide all of the requested information and documentation it possesses about the 7 complaints against Ms. Pancerman that were just produced to s on 4/29, including all other versions or forms of the complaints that exist in *underacted* form; JetBlue's responses to the complaints; and any incident reports or witness statements the company possesses concerning the complaints. What we were provided on 4/29 has all of the complainants' names and contact information redacted, which again does not comply with the rules.

- **Will you produce documentation showing how management responded and internally resolved the February 2016 and January 2018 complaints filed against Ms. Pancerman by Ms. Wachuku and Mr. Roberts?** This information was provided for the other complaints made against Ms. Pancerman but is conspicuously absent for Ms. Wachuku's complaint of racial discrimination and for Mr. Roberts' complaint about Mr. Karrani's treatment.

- **Is a page missing from the database printout in Ms. Pancerman's personnel file?** There are no Performance entries dated after 5/16/2017.

From email dated 5/1:

- **Has Defendant produced the "Admin/Training File" for Ms. Pancerman referenced at JB 522, and all of Ms. Pancerman's training records?** We've found no records among JetBlue's production that relate to Ms. Pancerman's training.

From email dated 4/29:

- **Does JetBlue possess any documents related to the DOT guidance documents ("***Guidance for Airline Personnel on Nondiscrimination in Air Travel***" and "***Passengers' Right to Fly Free from Discrimination***")?** Such records are responsive to Requests for Production No. 10 and 23.

-

From email dated 4/30:

- **What is the jurisdiction and cause number for the** <u>Keith Maurer v. Alaska Airlines</u> **case in which Ms. Gaudet states she gave deposition testimony?** Her list of cases omitted this information. See <u>Elgas v. Colorado Belle Corp.</u>, 179 F.R.D. 296, 300 (D. Nev. 1998) ("The list of other cases in which the witness has testified as an expert should include the court, the names of the parties, the case number, and whether the testimony was by deposition or at trial."); and <u>Coleman v. Dydula</u>, 190 F.R.D. 316, 317 (W.D.N.Y. 1999) ("list should include the name of the court, the names of the parties, the docket number (if available), and whether the testimony was given during a deposition or at a trial.")

I look forward to speaking with you soon and to resolving these issues.

Thank you,

Thank you,
- Mark

Mark Rose
Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949

# EXHIBIT 6

**From:** **Samantha Pitsch** spitsch@millsmeyers.com
**Subject:** RE: Karrani v JetBlue No. 2:18-cv-01510-RSM
**Date:** May 7, 2019 at 10:42 AM
**To:** Mark Rose mark@sheridanlawfirm.com, Jack Sheridan jack@sheridanlawfirm.com, Alea Carr alea@sheridanlawfirm.com, Jamie Wipf Jamie@sheridanlawfirm.com
**Cc:** Caryn Jorgensen cjorgensen@millsmeyers.com, John Fetters jfetters@millsmeyers.com, Anna Armitage aarmitage@millsmeyers.com, Linda Wheeler lwheeler@millsmeyers.com

Mark,

Please see our responses to your questions in red below. Also attached to this e-mail is a supplemental report from Paula Gaudet which includes the information regarding her prior testimony.

Per your email yesterday, we are not available for a meet and confer at 11 am but we are available at 2:30 pm today if that time works for you?

Thank you,
Samantha

_____

**Samantha K. Pitsch** | **vCard**
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
Direct: 206.812.7476 | Reception: 206.382.1000
spitsch@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private. It may contain privileged or confidential information. If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Tuesday, April 30, 2019 9:29 AM
**To:** Caryn Jorgensen <cjorgensen@millsmeyers.com>; John Fetters <jfetters@millsmeyers.com>; Samantha Pitsch <spitsch@millsmeyers.com>
**Cc:** Linda Wheeler <lwheeler@millsmeyers.com>; Paula McMillan <pmcmillan@millsmeyers.com>; Anna Armitage <aarmitage@millsmeyers.com>; Jack Sheridan <jack@sheridanlawfirm.com>; Alea Carr <alea@sheridanlawfirm.com>; Jamie Wipf <Jamie@sheridanlawfirm.com>
**Subject:** Re: Karrani v JetBlue No. 2:18-cv-01510-RSM

Counsel,

We need to meet-and-confer on the supplemental production JetBlue served yesterday. Can we chat this afternoon?

In JetBlue's response to the motion to compel, you wrote that "**Because JetBlue already produced all available 'Complaints**,' as that term is defined in Plaintiff's discovery, **against crew member**

1

**Pancerman, there is no justifiable need for production of her personnel file.**" Dkt. # 22 at p. 8. After Defendant filed its brief making that assertion, we wrote to you about a comment made by a customer service rep to a passenger who had complained of racial discrimination by Ms. Pancerman. The customer service representative told the complainant that Ms. Pancerman would be "coached." After directing you to this comment, you wrote it "changed [y]our analysis regarding the discoverability of Ms. Pancerman's personnel file." As a result, yesterday we received a 117-page .PDF file that is represented to be "the employment file (not including payroll records) of crew member Pancerman." (The request for Ms. Pancerman's personnel file was already the subject of Plaintiff's motion to compel, which remains pending before the Court.).

I am writing you now to address a number of concerns we have concerning the personnel file JetBlue produced for Ms. Pancerman.

As an initial matter, I note that there are a number of documents that are highly relevant to this case and which we expected to find in the personnel file, but instead found to be missing:

1. Another passenger on Mr. Karrani's January 2018 flight filed a complaint about Ms. Pancerman. The personnel file that we received contains no reference to this complaint; and the printout from the personnel database that purports to summarize complaints on file against Ms. Pancerman also makes no reference to the complaint. See JB 519 to 521 (showing "Performance" documents and complaints ranging in date from 5/8/2009 to 5/16/2017). Given that many similar complaints are catalogued in the database, it is curious that the January 2018 passenger complaint regarding Mr. Karrani's removal and Ms. Pancerman's refusal to carry on with her shift that day, was not similarly cataloged. Such omission from JB 521 leads us to believe that a page additional "Performance" entries from the personnel database — showing events from 5/17/2017 through the present — may be missing. Please confirm with JetBlue that no data exists in the database for Performance entries dated after 5/16/2017. <span style="color:red">We presume you are referring to the email sent by Jeff Roberts to JetBlue's Customer Commitment Team. This communication was not located in crew member Pancerman's personnel file. JetBlue advises that not all customer communications are logged or incorporated into crew member personnel files consequently, it is not out of the ordinary for this customer communication to not be included in her file.</span>

2. The personnel file is also missing documentation showing how management resolved the complaint made by Mr. Karrani's fellow passenger on the January 2018 flight. For other complaints filed by passsengers, the personnel file shows how Ms. Pancernman's supervisors and managers reviewed and investigated each complaint made against her and came to a determination on how it should be resolved, including whether it gives rise to a "coachable" moment. Please produce the documentation showing how the complaint filed regarding Mr. Karrani's flight was resolved by management. <span style="color:red">See response to question No. 1.</span>

3. Similarly, the personnel file is missing documentation related to the racial discrimination complaint made against Ms. Pancerman in February 2016 by the witness recently deposed in Atlanta. The complaint is included in the database printout (JB 521), but otherwise omitted from the personnel file. Again, for other customer complaints, including a complaint made just a month before in January 2016 (JB 537-529), the personnel file shows how Ms. Pancernman's supervisors and managers review and investigate each complaint made against her and come to a determination on how it should be resolved, including whether it gives rise to a "coachable" moment. We have still yet to receive any documentation showing how management resolved the February 2016 racial discrimination complaint made by the Atlanta witness, including

February, 2020 racial discrimination complaint made by the Atlanta witness, including management's determination of whether it was a "coachable" moment. Please produce the documentation showing the racial discrimination complaint was resolved.  As previously advised, JetBlue searched for and has produced the records relating to Ms. Wachuku's e-mail communications regarding the incident with JetBlue, JB 000432–434/JB 000420-422/JB 000423-425/JB 000414, crew member Pancerman's associated Incident Report, JB 000415-416, and the Burbank crew member's Incident Report, JB 000426-431. JetBlue searched for but did not identify any additional documents related to this event.

I must also note that it is now apparent that a large number of written complaints filed against Ms. Pancerman had not previously been produced, despite the representation made to the Court that "JetBlue already produced all available complaints." I believe we received at least 7 new complaints against Ms. Pancerman yesterday. The newly produced complaints are significant, as they show that JetBlue has known since at least January 2013 that Ms. Pancerman "has a history of removing customers" from flights. JB 530. Indeed, several of the complaints  just produced relate to Ms. Pancerman's removing customers from flights under circumstances that the passengers, like Mr. Karrani, claim were unwarranted. In opposition to Plaintiff's Motion to Compel, JetBlue stated that "JetBlue already produced all available 'Complaints,' *as that term is defined in Plaintiff's discovery*." Dkt. 22 at 8. Plaintiff's definition stated: "'Complain' or 'complained' or 'complaining' or 'complaint' means for a passenger to communicate to you or to a third party a concern about a JetBlue employee or about an incident involving a JetBlue employee, which may include actions or inactions by JetBlue which imply unfair, discriminatory, retaliatory, or harassing treatment by you against a passenger. This includes both oral and written communications received by you, directly or indirectly (i.e., a communication from a government agency notifying you of a complaint). "'Complain' or 'complained' or 'complaining' or 'complaint' also means any instance in which a member of a flight crew communicated to you or to a third party a concern about another flight crew member, which may imply unfair, discriminatory, retaliatory, or harassing treatment by you against a passenger or against another flight crew member." Dkt. # 20-1 at 23-24 (Sheridan Decl., Ex. 3: Plaintiff's First Set of Discovery Definitions).   The additional complaints found in crew member Pancerman's file do not match this definition because they do not assert that Pancerman's conduct was based on a discriminatory motive, which is why they were not originally produced. In any event, there were only 6 additional passenger complaints located in Ms. Pancerman's employment file (the 7th was a compliment) and of those 6 communications, only 3 involved removals.  If these passengers wanted information regarding these events to be made public, they could have pursued litigation.  JetBlue already produced litigated claims filed after 2014.  Plaintiff has access to those individuals who voluntarily made their incidents public. JetBlue continues to assert the privacy rights and interests of the other passengers.  The circumstances of Mr. Karrani's claim do not justify intrusion on the privacy of these non-parties.

Thus, it should go without saying that we must contact the other passenger who complained about Ms. Pancerman in order determine if they fit with the pattern we have observed so far, in which persons who Ms. Pancerman has removed from flights are persons of color and/or immigrants. However, at present, we cannot conduct that investigation, as JetBlue has made redactions throughout Ms. Pancerman's personnel file, including making redactions to the complaints filed against her. To the extent redactions have been to the personnel file documents based "privacy," they are not warranted and do not comply with the civil rules, as they are not based on a recognized privilege. Moreover, there is already a protective order in place to ensure that private and personal information is treated accordingly.

Also, the redaction of customer names and email addresses does not appear to have been made for the

purpose of protecting third party privacy, but instead appears aimed at inhibiting our ability to investigate. One of the complaints in which the name and email address of the complainant is redacted illustrates this point. He writes: "I have 4 friends who accomplished that flight back to January 15th [sic] and all of us ready to face any court house or arbitration room to testify against her" [Ms. Pancerman]. JB 531.

Please promptly produce all complaints about Ms. Pancerman without redactions. Please also supplement your answer to Interrogatory No. 7 and the related RFP 13 to provide all documentation that JetBlue possesses concerning the complaints just produced, including all other versions or forms of the complaints that exist; JetBlue's responses to the complaints; and any incident reports or witness statements the company possesses concerning the complaints, none of which were provided yesterday. In the spirit of cooperation, and despite the fact that we believe these documents to be beyond the scope of Plaintiff's discovery, see comment regarding definition of complaint above, JetBlue produces the Captain's FCIR for Flight 758 AUA-JFK on 1/15/13 as JB 000618–000619 and crew member Pancerman's IIR for Flight 135 JFK-PHX on 12/14/15 as JB 000620–000621.

If JetBlue will not agree to cooperate and promptly provide this requested supplementation, we will be forced to file a motion seeking relief from the Court and will request terms.

I'm available all day to discuss these issues. Please let know what time works for you.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On Apr 29, 2019, at 4:15 PM, Linda Wheeler <lwheeler@millsmeyers.com> wrote:

Attached please find the following documents:

JetBlue's Second Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production;
JetBlue's Responses to Plaintiff's Second Set of Interrogatories and Requests for Production;
JetBlue's Verification Page to its First Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production (previously served; and
Jet Blue's Privilege Log.

A link to the document production is below. The password will follow in a separate e-mail.


https://millsmeyers.box.com/s/llctbgx2lrpt3izkvfjkow0i7yo2xqs7

**Linda McIntosh Wheeler | vCard**
**Legal Assistant/Paralegal**

**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA  98104
Direct: 206.812.7474 | Reception: 206.382.1000
lwheeler@millsmeyers.com | www.millsmeyers.com

This e-mail is intended to be private.  It may contain privileged or confidential information.  If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

<190429 JBlues 2nd Suppl Resp  Pltf 1st Discv.pdf><190429 JBlues Resp ptfs 2nd Discv.pdf><190429 JetBlue Karrani Privilege Log.pdf><Verification Page_First Supp Resp.pdf>



| JB 00061…19.pdf | JB 00062…21.pdf | 190503 Gaudet Supp Report.pdf |

# EXHIBIT 7

From: **Samantha Pitsch** spitsch@millsmeyers.com
Subject: RE: Karrani - Meet-And-Confer
Date: May 9, 2019 at 12:10 PM
To: Mark Rose mark@sheridanlawfirm.com
Cc: **Jack Sheridan** jack@sheridanlawfirm.com, **Alea Carr** alea@sheridanlawfirm.com, **Jamie Wipf** Jamie@sheridanlawfirm.com, **Caryn Jorgensen** cjorgensen@millsmeyers.com, **John Fetters** jfetters@millsmeyers.com, **Linda Wheeler** lwheeler@millsmeyers.com, **Anna Armitage** aarmitage@millsmeyers.com, **Paula McMillan** pmcmillan@millsmeyers.com

Mark,

JetBlue has advised that it will not change its previously discussed position on non-party passenger and JetBlue employee information contained in the unrelated passenger complaints (JB 000523-000540).

In regard to confidential designation vs. redactions – I think there is some confusion as to what is being requested. Just to clarify, here is my understanding of Plaintiff's request:

- Remove Confidential Designations (keep redacted)
  - JB 1 (Captain's Incident Report)
  - JB 3 (crew member Pancerman's incident report)
- Remove redactions (keep confidential designation)
  - JB 000519-000540 (other passenger complaints)
  - JB 449 (Pancerman's ratings as job candidate);
  - JB 451 (name of JetBlue employee who recommended Ms. Pancerman for hire);
  - JB 453 (Ms. Pancerman's rate of pay);
  - JB 454 (name of hiring official);
  - JB 521 (name of complainant);
  - JB 523 (name of flight attendant who is witness to facts referenced in complaint);
  - JB 530-31 (name of flight attendant and captain who are witnesses to facts referenced in complaint; name of complainant; complainant's email address; unknown what else is redacted on pages);
  - JB 532-33 (name of flight attendant and captain who are witnesses to facts referenced in complaint; name of complainant; complainant's email address and phone number; unknown what else is redacted on pages);
  - JB 536 (names of flight attendants who are witnesses to facts referenced in complaint);
  - JB 537-38 (names of flight attendants who are witnesses to facts referenced in complaint)

Can you please clarify what you are requesting so that we can respond?

Thank you,
Samantha

_____

**Samantha K. Pitsch |** [vCard](vCard)
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
Direct: 206.812.7476 | Reception: 206.382.1000
[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com) | [www.millsmeyers.com](http://www.millsmeyers.com)

This e-mail is intended to be private.  It may contain privileged or
confidential information.  If you are not a person for whom the e-mail was intended,
please notify me immediately and then permanently delete the e-mail,
including any attachments, without copying or forwarding it.

**From:** Mark Rose <mark@sheridanlawfirm.com>
**Sent:** Wednesday, May 8, 2019 5:15 PM
**To:** Samantha Pitsch <spitsch@millsmeyers.com>
**Cc:** Jack Sheridan <jack@sheridanlawfirm.com>; Alea Carr <alea@sheridanlawfirm.com>; Jamie
Wipf <Jamie@sheridanlawfirm.com>; Caryn Jorgensen <cjorgensen@millsmeyers.com>; John
Fetters <jfetters@millsmeyers.com>; Linda Wheeler <lwheeler@millsmeyers.com>; Anna
Armitage <aarmitage@millsmeyers.com>; Paula McMillan <pmcmillan@millsmeyers.com>
**Subject:** Re: Karrani - Meet-And-Confer

Samantha,

Please let us know if JetBlue decides to reverse course in its opposition to disclosing third party
passenger names and contact information no later than the close of business tomorrow. We
asked JetBlue to produce the unredacted complaints on the morning of April 30, just hours after
we received the complaints in redacted form the night before.

We gave your office one week to confer with your corporate client and to come to a decision on
whether Defendant would agree to produce the other complaints against Ms. Pancerman in
unredacted form. Yesterday, a week after I sent the email asking JetBlue to produce the
unredacted complaints, or to meet-and-confer on the issue, you responded that JetBlue wouldn't
agree to produce the unredacted complaints, stating unambiguously:

> *If these passengers wanted their information regarding these events to be made public,
> they could have pursued litigation. … JetBlue continues to assert the privacy rights and
> interests of the other passengers. The circumstances of Mr. Karrani's claim do not justify
> intrusion on the privacy of these non-parties.*

During our subsequent meet-and-confer yesterday afternoon, Caryn continued to object to the
requested production based on the privacy rights of non-party passengers and JetBlue
employees, and added that the disclosure of other passengers' names and contact information
was not "proportional" to the needs of the case. This was reiterated in your notes of the meet-
and-confer below.

Thus, all of the statements by Defendant to date have been clear that JetBlue has no intention of
disclosing the other complainants' names or un-redacted copies of their complaints. There is no
need for us to wait another week only to be told that JetBlue's position remains unchanged. As I
said yesterday and in one of my emails last week, the deadline for discovery motions passed long
ago (March 29), so time is of the essence. As you know, we could not have timely raised this issue
with the Court, as we were in the dark about the existence of the other complaints against Ms.
Pancerman until we received the redacted complaints from JetBlue on April 29. To avoid further

prejudice to our client, we'll need to file a motion this week seeking the production of the unredacted copies of the other Passenger complaints.

Also, I want to make sure things don't get confused by your summary below. The first bullet point is not accurate. My email before the meet-and-confer yesterday asked JetBlue to agree to drop the "*Confidential*" designations as to JB 1, JB 3, and JB 519-540, so that the Protective Order won't apply to those documents and we can file them in the Court file without sealing. That's a different issue from the question of redactions. (JB 1 has no redactions, but remains subject to the protective order. The other pages are redacted, but that's why you should agree to drop the Confidential designations ).

While I did send you a list of documents from Ms. Pancerman's personnel file last night to consider unredacting, the only thing new there that you haven't already presented to your client are:

> JB 449 (Pancerman's ratings as job candidate);
> JB 451 (name of JetBlue employee who recommended Ms. Pancerman for hire);
> JB 453 (Ms. Pancerman's rate of pay);
> JB 454 (name of hiring official);

We don't require an immediate answer about whether JetBlue is going to unredact these entries, but please tell us by tomorrow if the company is changing its mind and plans to produce unredacted copies of the other passenger complaints against Ms. Pancerman. Defendant's had plenty of time to consider this question and has thus far declined to agree based on concerns about privacy and proportionality, as we discussed yesterday.

Thank you,

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


On May 8, 2019, at 2:58 PM, Samantha Pitsch <spitsch@millsmeyers.com> wrote:

Mark,

Below is my summary of what we discussed in the meet and confer.  In addition to this summary, I have interlineated additional comments below.
- Removing redactions – we will confer with JetBlue regarding whether JetBlue will agree to remove the redactions from:
  - JB 1 (Capt.'s incident report regarding Mr. Karrani's flight);
  - JB 3 (Ms. Pancerman's incident report regarding Mr. Karrani's flight, as previously redacted by JetBlue);

- - JB 519-540 (recently disclosed complaints about Ms. Pancerman, as previously redacted by JetBlue)
    - Plaintiff's Counsel will review JetBlue's privilege log to specifically note which items to un-redact
  - Jeff Roberts' complaint – we will confer with JetBlue regarding whether the highlighting of the dates in JB 000615–000616 is something that JetBlue added or if that is how the email would look in its original format.
  - Wachuku complaint – JetBlue will search for any additional records related to Ms. Wachuku's BUR-JFK flight. In addition, JetBlue is working to determine if any currently-employed supervisory personnel recall speaking with crew member Pancerman regarding this complaint. If JetBlue identifies any personnel who recall discussing this incident, we will disclose that person's name.
  - Crew member Pancerman Personnel File
    - JetBlue is currently looking into whether there are missing entries in Pancerman's personnel file as there are no performance entries after 5/16/17.
    - We will follow up with JetBlue regarding documentation showing Ms. Pancerman's training history.
  - DOT guidance
    - We will follow up with JetBlue regarding whether there were any emails or records relating to the released DOT guidance.
  - Produced complaints
    - We will follow up with JetBlue regarding searching for any other documents related to the complaints found in Pancerman's personnel file.

Additionally, attached is a corrected supplemental report from Paula Gaudet.

Thank you,
Samantha

_____

**Samantha K. Pitsch |** [vCard](vCard)
**Attorney**
**Mills Meyers Swartling P.S.**
1000 Second Avenue, 30th Floor | Seattle, WA 98104
Direct: 206.812.7476 | Reception: 206.382.1000
[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com) | [www.millsmeyers.com](http://www.millsmeyers.com)

This e-mail is intended to be private. It may contain privileged or confidential information. If you are not a person for whom the e-mail was intended, please notify me immediately and then permanently delete the e-mail, including any attachments, without copying or forwarding it.

**From:** Mark Rose <[mark@sheridanlawfirm.com](mailto:mark@sheridanlawfirm.com)>
**Sent:** Tuesday, May 7, 2019 3:55 PM
**To:** Caryn Jorgensen <[cjorgensen@millsmeyers.com](mailto:cjorgensen@millsmeyers.com)>; John Fetters

<[jfetters@millsmeyers.com](mailto:jfetters@millsmeyers.com)>; Samantha Pitsch <[spitsch@millsmeyers.com](mailto:spitsch@millsmeyers.com)>
**Cc:** Jack Sheridan <[jack@sheridanlawfirm.com](mailto:jack@sheridanlawfirm.com)>; Alea Carr
<[alea@sheridanlawfirm.com](mailto:alea@sheridanlawfirm.com)>; Jamie Wipf <[Jamie@sheridanlawfirm.com](mailto:Jamie@sheridanlawfirm.com)>
**Subject:** Re: Karrani - Meet-And-Confer

Caryn,
Thanks for making time to chat today before you head across the Atlantic. I have noted my take-ways from today's conversation in red below. If you or your team have anything to add, please chime in.

Thanks again,
- Mark

Mark Rose
Sheridan Law Firm, P.S.
705 2nd Ave., Suite 1200
Seattle, WA 98104
Tel:  (206) 381-5949


> On May 6, 2019, at 11:43 PM, Mark Rose
> <[mark@sheridanlawfirm.com](mailto:mark@sheridanlawfirm.com)> wrote:
>
> Counsel,
>
> It has been one week since I wrote requesting to meet-and-confer if Defendant would not agree to our requests for supplementation. I've not received any substantive response to our requests. Let's chat at 11:00 a.m. tomorrow (Tues.). If that time won't work, please let me know what time you are available tomorrow to talk.
>
> For ease of reference, here is a list of the issues I've previously written to you about, which we need to discuss:
>
> **From email dated 4/30:**
>
> - **Will Defendant produce Ms. Pancernman's personnel file without redactions?** Redactions made based on "privacy" do not comply with the civil rules, as they are not based on a recognized privilege. Moreover, there is already a protective order in place to ensure that private and personal information is treated accordingly.
>
> I agreed to mark-up the privilege log to highlight specific pages we wish to see un-redacted.  I mentioned that we'd like to obtain, for example, the names of passengers, coworkers and other witnesses whose names have been redacted. We

passengers, coworkers and other witnesses whose names have been redacted. We are not seeking to obtain disclosure of any Social Security Numbers, but do want contact information of witnesses where that's been redacted. You said that you believe the disclosure of third party witness names implicates an issue of "proportionality," although the redaction of names is more burdensome for JetBlue than disclosing the information.

The objection we discussed with regard to redactions  was JetBlue employees' and passengers' reasonable expectations of privacy.  The individuals' whose names plaintiff seeks have no relationship to the underlying event.  The proportionality argument relates not to the burden of redacting (which already has been done), but to the imposition on non-party passenger and employee reasonable privacy interests as the other incidents are remote and distinct and, with regard to passengers, JetBlue produced litigated claims – those passengers litigating against JetBlue reasonably waived any interest they may have in keeping their information private.  The other non-parties have not.  Nonetheless, we will review the marked-up privilege log with JetBlue and make a determination on any further revisions to the production.

- **Will Defendant supplement its answer to Interrogatory No. 7 and the related RFP 13?** We've asked JetBlue to provide all of the requested information and documentation it possesses about the 7 complaints against Ms. Pancerman that were just produced to s on 4/29, including **all other versions or forms of the complaints that exist in _underedacted_ form; JetBlue's responses to the complaints; and any incident reports or witness statements the company possesses concerning the complaints**. What we were provided on 4/29 has all of the complainants' names and contact information redacted, which again does not comply with the rules.

You will ask JetBlue whether any further documentation exists (such as that described above) with regard to the new complaints we received as part of Ms. Pancerman's personnel file. I said this required in order to have a complete answer to Interrogatory No. 7 and RFP 13, and we then debated whether the new complaints were actually called for by the language of Interrogatory No. 7. You said that Jack had previously agreed to narrow the scope of the request to complaints alleging discrimination. I said that that limitation related to Interrogatory No. 2 and noted that JetBlue's original answer to the discovery did not purport to limit the scope in such a way. Compare Def.'s Answer to Interrogatory No. 2 with Def. Answer to Interrogatory No. 7. In fact, JetBlue originally produced benign complaints regarding passenger comfort (a "broken seat cushion") in its original response to Interrogatory No. 7. See JB 417.  So, for that reason, we were surprised to find so many complaints alleging unfair removal of passengers, similar to Mr. Karrani's claim here, had been withheld. The definition of "complaint" in the discovery requests was not limited to discrimination claims, but instead includes claims of "unfair" treatment made against Ms. Pancerman.

In response to your comment about Interrogatory No. 7: JetBlue did not produce a "benign" complaint in its original production. As noted on JB 000418, the passenger's description of events triggered us to produce this complaint based on the definition of "complaint" in the discovery, as discussed with Jack in a prior discovery conference. Moreover, we noted in our conference that JetBlue has produced all of the complaints related to crew member Pancerman found in her personnel file, regardless of the interpretation of the definition of "Complaint."

- **Will you produce documentation showing how management responded and internally resolved the February 2016 and January 2018 complaints filed against Ms. Pancerman by Ms. Wachuku and Mr. Roberts?** This information was provided for the other complaints made against Ms. Pancerman but is conspicuously absent for Ms. Wachuku's complaint of racial discrimination and for Mr. Roberts' complaint about Mr. Karrani's treatment.

You will confirm whether any follow up took place regarding Ms. Wachuku's complaint that's not documented and will provide a written answer to Interrogatory No. 7 if you find something. I asked for JetBlue to provide a written answer either way, which you would not agree to. You said there was no follow up regarding Mr. Roberts' complaint, and that it never made its way to Ms. Pancerman's management. Again, you would not agree to provide a written answer to Interrogatory 7 about the lack of an investigation or response to the .

 We debated whether Interrogatory No. 7 in fact seeks complaints like Ms.

The last sentence was incomplete.  See also the note above – JetBlue is inquiring to determine if any personnel recall discussing Ms. Wachuku's incident with Ms. Pancerman.  If JetBlue identifies any such personnel, it will produce that name.

- **Is a page missing from the database printout in Ms. Pancerman's personnel file?** There are no Performance entries dated after 5/16/2017.

You said you did not yet know the answer to this question yet, as  your team had missed seeing the question in my email dated 4/30. You will get back to me once you know if there have been any Performance entries in the personnel database over the course of the past two years.

**From email dated 5/1:**

- **Has Defendant produced the "Admin/Training File" for Ms. Pancerman referenced at JB 522, and all of Ms. Pancerman's training records?** We've found no records among JetBlue's

production that relate to Ms. Pancerman's training.

You said that training files aren't considered part of the personnel file at JetBlue. Still it was part of our discovery requests definition of personnel file. You have a pending question to your client as to whether there's any documentation showing Ms. Pancerman's training history, including the linked document I cited at JB 522 of the personnel file.

**From email dated 4/29:**

- **Does JetBlue possess any documents related to the DOT guidance documents ("*Guidance for Airline Personnel on Nondiscrimination in Air Travel*" and "*Passengers' Right to Fly Free from Discrimination*")**? Such records are responsive to Requests for Production No. 10 and 23.

You said that JetBlue had no revision to training materials or publications as a result of the above-cited DOT guidance documents being published. However, you agreed to check whether JetBlue had any email or other records related to the "roll-out" of DOT's guidance documents.

We agreed to follow up with JetBlue regarding any corporate communications related to the 2017 DOT Guidance. We explained that training programs are FAA approved programs and that it is not unusual to not see a revision to training programs as a result of non-prescriptive guidance. Nonetheless, we will ask JetBlue to advise of any communications regarding the 2017 DOT Guidance.

From email dated 4/30:

- **What is the jurisdiction and cause number for the <u>Keith Maurer v. Alaska Airlines</u> case in which Ms. Gaudet states she gave deposition testimony?** Her list of cases omitted this information. See <u>Elgas v. Colorado Belle Corp.</u>, 179 F.R.D. 296, 300 (D. Nev. 1998) ("The list of other cases in which the witness has testified as an expert should include the court, the names of the parties, the case number, and whether the testimony was by deposition or at trial."); <u>and</u> <u>Coleman v. Dydula</u>, 190 F.R.D. 316, 317 (W.D.N.Y. 1999) ("list should include the name of the court, the names of the parties, the docket number (if available), and whether the testimony was given during a deposition or at a trial.")

You clarified that Ms. Gaudet's supplemental report had typographical errors that caused opinions she previously gave to be omitted, and that she'll be delivering another supplemental report to re-incorporate the opinions that were in the original report but not the latest report. I asked if you would agree to strike Ms. Gaudet as an expert, or to at least withdraw some of her opinions and provided my rationale. You did not agree to strike her as an expert.

From email dated 5/7:

- Will you please let us know if you will remove the confidential designations made for the following documents:
  - JB 1 (Capt.'s incident report regarding Mr. Karrani's flight);
  - JB 3 (Ms. Pancerman's incident report regarding Mr. Karrani's flight, as previously redacted by JetBlue);
  - JB 519-540 (recently disclosed complaints about Ms. Pancerman, as previously redacted by JetBlue);

You said you'll need to confer with your corporate client and cannot immediately this question.

Yes – your request came in 20 minutes prior to our conference. As discussed, we need notice and time to confer with our client contacts at JetBlue. We are working through these issues with them and will respond.

<190503 JB-Karrani Corr Supp Expert Report.pdf>