UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIKARIM KARRANI,

Plaintiff,

v.

JETBLUE AIRWAYS CORPORATION, a Delaware Corporation,

Defendant.

Case No. C18-1510 RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Defendant JetBlue Airways Corporation ("JetBlue")'s Motion for Summary Judgment. Dkt. #52. Plaintiff Abdikarim Karrani opposes JetBlue's Motion in entirety. Dkt. #69. The Court has determined that oral argument is not necessary. Having reviewed the Motion, Plaintiff's Response, Defendant's Reply, and all documents submitted in support thereof, the Court GRANTS Defendant's Motion for Summary Judgment.

## II. BACKGROUND

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 1

Plaintiff claims that JetBlue discriminated against him on the basis of his race, national origin, and/or ethnicity under 42 U.S.C. § 1981 by wrongfully removing him from an airline flight. Mr. Karrani is an 81-year-old U.S. citizen born in Somalia who now resides in Washington state. On January 20, 2018, Mr. Karrani was returning home on JetBlue Flight 263 from New York bound for Seattle when a medical emergency occurred in Row 1. Dkt. #53-2 at 5. The medical emergency required the plane to make an emergency landing in Billings, Montana shortly thereafter. During the plane's descent into Billings, Mr. Karrani—whose age and diabetic condition causes him to experience sudden and urgent needs to use the restroom—attempted to use the lavatory at the front of the plane and found it occupied by another passenger. Dkt. #53-7 at 4. After shutting the door, Mr. Karrani proceeded to stand outside the bathroom. Noticing Mr. Karrani waiting next to the restroom, JetBlue flight attendant Cynthia (i.e. Cindy) Pancerman approached to direct him to the back lavatory. *Id.*

The precise details of what happened between Ms. Pancerman and Mr. Karrani remain a dispute of fact. Ms. Pancerman claims that she attempted to guide Mr. Karrani towards the back lavatory and, in response, Mr. Karrani hit her. Dkt. #68-1 at 50-51. Mr. Karrani, in contrast, claims that Ms. Pancerman initiated physical contact by pushing him towards the back and, startled and anxious, he attempted to brush her hand off him. Dkt. #53-7 at 5. According to Mr. Karrani, Ms. Pancerman did not say anything else to him except: "Go to the back one." *Id.* After this interaction, Mr. Karrani proceeded to the back of the plane to use the back lavatory. It is undisputed that the plane's captain, Captain Mitchell Ouillette, was not a witness to the event.

During the plane's final descent into Billings, the pilots in the cockpit—Captain Ouillette and co-pilot Michael Cheney—received a call from Ms. Pancerman. While the parties dispute

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 2

what details Ms. Pancerman provided to the pilots regarding her interaction with Mr. Karrani, it is undisputed that during the plane's final approach into Billings, a call was made from the cockpit requesting law enforcement to meet the airplane upon landing. Dkt. #68-1 at 10-11. Once the plane landed, airport police boarded the plane and escorted Mr. Karrani off the plane. Dkt. #53-7 at 6.

After interviewing witnesses, airport police officer Randy Winkley issued an incident report and determined that he would not charge Mr. Karrani with assault. Dkt. #68-1 at 106, 116. However, Captain Ouillette did not allow Mr. Karrani to re-board the flight. *Id.* at 111. As a result, while the remaining passengers were transported to Seattle, Mr. Karrani was driven by police to a hotel in Billings to stay overnight. The next day, he purchased a new flight on Delta from Billings to Seattle which JetBlue did not refund, even after he reported his ordeal to a JetBlue supervisor at Seattle Tacoma airport. Dkt. #1 at 5. On October 15, 2018, Mr. Karrani filed this lawsuit. JetBlue now seeks summary judgment on Plaintiff's claims under 42 U.S.C. § 1981 on the basis that Mr. Karrani has not raised a triable issue of fact that his removal from Flight 263 was because of his race, ethnicity, or national origin.

### III. DISCUSSION

#### A. Plaintiff's Request for Judicial Notice

As a preliminary matter, Plaintiff requests that this Court take judicial notice of several documents published by the U.S. Department of Transportation ("DOT"). *See* Dkt. #60. Specifically, Plaintiff requests judicial notice of two DOT guidance documents related to passenger discrimination in air travel, *see* Dkt. #60-1 at 4-15, and four Consent Orders issued by DOT against domestic airline carriers for discriminatory removal of minority passengers from

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 3

aircrafts, *see* Dkt. #60-1 at 16-35. Federal Rule of Evidence 201 provides that courts may take judicial notice of adjudicative facts "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Jespersen v. Harrah's Operating Co., Inc.,* 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (quoting Fed. R. Evid. 201) (internal quotations omitted). JetBlue does not dispute that the records at issue are self-authenticating pursuant to Fed. R. Evid. 902(5), Dkt. #66 at 2, so the remaining issue is whether the documents are a proper subject of judicial notice.

Plaintiff's request the Court take judicial notice with respect to the existence of these materials—specifically, that DOT has issued non-binding policy guidance that airlines may use to prevent discrimination against passengers, and that DOT has adjudicated various claims against airlines alleging discriminatory removal. *See Interstate Nat. Gas Co. v. S. California Gas Co.,* 209 F.2d 380, 385 (9th Cir.1953) (A court "may take judicial notice of records and reports of administrative bodies."). While JetBlue opposes judicial notice of these materials, its opposition chiefly addresses what inferences and conclusions the Court may draw from their contents. Whether to take judicial notice in the first instance is a separate inquiry from how the Court may rely on the contents of the documents. Accordingly, the Court grants Plaintiff's request.

### B. Parties' Motions to Strike

Pursuant to Fed. R. Civ. P. 56(e) and Local Rule 7(g), Plaintiff and JetBlue move to strike various documents on the grounds that a court may not consider improper lay opinions, unauthenticated documents, or inadmissible hearsay statements on summary judgment. Dkt. #69

at 16; Dkt. #72 at 10-11. Because the Court does not rely on any of the cited documents in its decision to grant summary judgment, the issue is moot.

### C. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### D. Discriminatory Removal of Airline Passengers under 42 U.S.C. § 1981(a)

Mr. Karrani claims that his removal from Flight 263 constitutes discrimination under 42 U.S.C. § 1981(a). Section 1981 provides, in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 5

1  contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and
2  proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42
3  U.S.C. § 1981(a).  A claim under Section 1981 requires a plaintiff to show intentional
4  discrimination on account of race.  *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989) (citing
5  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 376 (1982)).  To establish a
6  prima facie case under Section 1981, a plaintiff must prove: "(1) that they are members of a racial
7  minority; (2) that the defendants had an intent to discriminate on the basis of race; and (3) that
8  the discrimination concerned one or more activities enumerated in the statute."  *Modoc v. W.*
9  *Coast Vinyl, Inc.*, No. 10-cv-05007-RJB, 2011 WL 1363785, at *7 (W.D. Wash. Apr. 11, 2011).
10 There is no dispute that Plaintiff, a man of Somali origin with an accent, meets the first element.
11 Parties likewise do not dispute the third element, since Plaintiff claims discrimination in his right
12 to contract with JetBlue through purchase of an airline ticket.  The Court's focus on this summary
13 judgment motion is therefore the second element: whether a reasonable dispute of fact exists as
14 to whether JetBlue intended to discriminate against Mr. Karrani on the basis of race, ethnicity, or
15 national origin.

16      To prove intentional discrimination under Section 1981, a plaintiff must prove racial
17 animus either through direct evidence, such as derogatory or offensive comments, or through
18 circumstantial evidence.  *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1152 (9th Cir. 2006).
19 Plaintiff offers no direct evidence of discrimination by Ms. Pancerman, Captain Ouillette, or any
20 other member of the JetBlue flight crew.  *See generally* Dkt. #69.  Consequently, Plaintiff's
21 Section 1981 claim hinges on circumstantial evidence to create an inference of discrimination
22 against Mr. Karrani.  *Id.* at 20-21.

Circumstantial evidence for individual claims of discrimination is evaluated under the *McDonnell Douglas* framework. *White v. Cal.*, 754 Fed. Appx. 575, 576 (9th Cir. 2019). Under this burden-shifting framework, a plaintiff must first establish a prima facie case proving (1) he is a member of a protected class; (2) he attempted to contract for certain services; (3) he was denied the right to contract for those services; and (4) such services remained available to similarly-situated individuals who were not members of plaintiff's protected class. *Lindsey*, 447 F.3d at 1144–45 (9th Cir. 2006). If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse action. Upon doing so, the burden shifts back to plaintiff to prove, with "specific and substantial" evidence, that the reason was merely pretext for intentional discrimination. *Id.* at 1152.

### 1. Mr. Karrani's prima facie case of discrimination

Parties do not dispute that Plaintiff satisfies the first three elements. On the fourth element, Plaintiff does not attempt to argue that he was treated differently from similarly-situated individuals on his flight. Instead, he contends that the "similarly-situated" standard "is not an appropriate requirement for a prima face [sic] case and is unnecessary here[.]" Dkt. #69 at 27. Plaintiff urges this Court to follow Sixth Circuit precedent and convert this fourth element to the standard of whether plaintiff received services in a markedly hostile manner and a manner in which a reasonable person in plaintiff's circumstances would find objectively discriminatory. Dkt. #69 (citing *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 872 (6th Cir.2001)). However, the Ninth Circuit has not expressly adopted this modification of the *McDonnell Douglas* framework. *Lindsey*, 447 F.3d at 1145 (9th Cir. 2006) ("Although we find the Sixth Circuit's reasoning compelling, we need not decide today whether its modification of the fourth element

of a *prima facie* case under section 1981 is required in many or all cases arising in a commercial, non-employment context."). Because of this open question, courts within the Ninth Circuit have continued to apply the traditional "similarly-situated" standard while acknowledging that the outcome would not change under the "reasonable person" standard. *See Portfolio Investments, LLC v. First Sav. Bank*, No. C12-104 RAJ, 2013 WL 1187622, at *5 (W.D. Wash. Mar. 20, 2013), *aff'd sub nom. Portfolio Investments LLC v. First Sav. Bank Nw.*, 583 F. App'x 814 (9th Cir. 2014); *Harrison v. Wells Fargo Bank, N.A.*, No. C18-07824 WHA, 2019 WL 2085447, at *3 (N.D. Cal. May 13, 2019).

Here, however, the Court is faced with two different outcomes depending on the standard applied. Under the traditional "similarly situated" standard, there is no question that Plaintiff has failed to establish a prima facie case. He has provided no evidence of "similarly situated" passengers on Flight 263, nor does he attempt to. However, application of the "similarly situated" standard to this case gives rise to the very concern identified by the Ninth Circuit in *Lindsey*— that in the commercial, non-employment context such as an airline flight, the "similarly situated" requirement is perhaps "too rigorous." *Lindsey*, 447 F.3d at 1145. It would require Mr. Karrani to identify passengers on Flight 263 meeting an extremely specific set of requirements: those who attempted to use the front lavatory during the medical emergency but received different treatment from the flight attendants, or those who engaged in an alleged conflict with a flight attendant but were allowed by the captain to continue flying. In contrast, under the "reasonable person" standard, a jury viewing the facts in a light most favorable to Plaintiff could reasonably conclude that an 81-year-old man was treated by JetBlue in a "markedly hostile manner" based on a flight attendant initiating physical contact with him and lying about the events to the Captain,

culminating in his removal from the aircraft by airport police and stranding him overnight in an unfamiliar city. *See Christian*, 252 F.3d at 871 (6th Cir.) (setting forth "markedly hostile" factors). Given these two disparate outcomes and the Ninth Circuit's open question regarding the proper standard, the Court finds it necessary to proceed through the remainder of the *McDonnell Douglas* framework to evaluate Plaintiff's claim.

### 2. JetBlue has articulated a legitimate, non-discriminatory reason for Mr Karrani's removal.

Having found that Plaintiff has presented a triable issue of fact as to his prima facie case of discrimination, the burden shifts to JetBlue to provide a legitimate, non-discriminatory reason for the adverse action. It is undisputed that JetBlue has articulated such a reason under Section 44902 of the Federal Aviation Act, which provides that an air carrier "may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902. *See* Dkt. #52 at 6-7.

### 3. Plaintiff has not raised a triable issue of fact that his removal from Flight 263 was because of his race.

Once a defendant presents a legitimate, non-discriminatory reason for its actions, the presumption of discrimination "drops out of the picture" and the burden shifts back to plaintiff to prove the proffered reasons were a pretext for discrimination. *Lindsey*, 447 F.3d at 1148 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993)) (internal quotations omitted). Plaintiff may prove pretext one of two ways: (1) indirectly, by showing the defendant's proffered explanation is "unworthy of credence," or (2) directly, by showing that unlawful discrimination more likely motivated the defendant. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1127 (9th Cir. 2000). The Court finds that (1) JetBlue's decision to remove Mr. Karrani was

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 9

proper as a matter of law; and (2) Plaintiff has presented no triable issue of fact that unlawful discrimination more likely motivated JetBlue. Accordingly, Plaintiff has not raised a triable issue of fact that his removal from Flight 263 was because of his race, and summary judgment in favor of JetBlue is warranted. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890–91 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) ("[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption.").

### a. The undisputed facts establish that Captain Ouillette appropriately exercised his discretion under Section 44902 in removing Mr. Karrani and prohibiting him from re-boarding.

As a matter of law, JetBlue appropriately exercised its discretion to remove Mr. Karrani from the flight pursuant to its authority under Section 44902. Section 44902 provides that an air carrier "may refuse to transport a passenger or property the carrier decides is, *or might be*, inimical to safety." 49 U.S.C. § 44902 (emphasis added). The Ninth Circuit has interpreted this provision as follows:

> The test of whether or not the airline properly exercised its power under § 1511 [now § 44902] to refuse passage to an applicant or ticket-holder rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision whether or not the opinion and decision were rational and reasonable in the light of those facts and circumstances. They are not to be tested by other facts later disclosed by hindsight.

*Cordero v. Cia Mexicana De Aviacion, S.A.*, 681 F.2d 669, 672 (9th Cir. 1982) (*quoting Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d. Cir. 1975)).

The threshold for an airline determining that a passenger presents a possible safety issue is very low, given the countervailing interest of the airline to ensure the safety and security of its other passengers and flight crew. For that reason, courts grant airlines broad latitude to determine

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 10

what constitutes a "safety risk"—even if the matter seems innocuous. *See Shaffy v. United Airlines, Inc.*, 360 F. App'x 729, 730 (9th Cir. 2009) (Upholding summary judgment for airline where passenger who repeatedly removed dog from carrier—against flight attendant instruction to keep it contained—posed "safety risk" justifying removal from aircraft). This is because in the business of commercial air travel, "the highest priority is assigned to safety, even though the federal aviation statute also has a general prohibition on race and national origin discrimination." *Cerqueira*, 520 F.3d at 11 (1st Cir. 2008).

The pilot in command holds the decision-making authority to remove a passenger from a flight. 14 C.F.R. § 91.3(a). A passenger's removal is proper under Section 44902 so long as the pilot's decision is not arbitrary or capricious. *Cordero*, 681 F.2d at 671–72 ("[I]f the passenger is excluded because the opinion of the pilot is arbitrary or capricious and not justified by any reason or rational appraisal of the facts, then the denial of passage is discriminatory."). Plaintiff relies on dicta from *Eid v. Alaska Airlines, Inc.* to argue that *Cordero* actually applied a standard of reasonableness—not arbitrariness/capriciousness—to passenger removal from domestic flights. Dkt. #69 at 30 (citing 621 F.3d 858, 868 (9th Cir. 2010)). However, as affirmed in *Shaffy*, *Cordero* plainly adopted the arbitrary and capricious standard set forth by the Second Circuit in *Williams*. *Shaffy*, 360 F. App'x at 730 ("The test for whether a refusal to transport is permissible 'rests upon . . whether or not the opinion and decision were *rational and reasonable and not capricious or arbitrary*.'") (citing *Cordero*, 681 F.2d at 672). Accordingly, this Court follows the binding precedent in *Shaffy* and applies the arbitrary and capricious standard to passenger removal from domestic flights under 49 U.S.C. § 44902. *Accord Mercer v. Sw. Airlines Co.*, No.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 11

13-CV-05057-MEJ, 2014 WL 4681788, at *3 (N.D. Cal. Sept. 19, 2014) (understanding *Cordero* as applying arbitrary and capricious standard).

Under the arbitrary and capricious standard, Captain Ouillette's decision to remove Mr. Karrani was proper as a matter of law. Taking Mr. Karrani's account of the incident to be true, Ms. Pancerman pushed Mr. Karrani after he refused to use the back lavatory and then falsely reported to the captain that Mr. Karrani pushed her. Although several passengers contested Ms. Pancerman's account of events, *see, e.g.*, Dkt. #68-1 at 10-11; 166, a second flight attendant corroborated her story. *Id.* at 155. Parties dispute what details Ms. Pancerman reported to the cockpit and at what point the captain made his decision to remove Mr. Karrani—whether during the descent into Billings, or upon landing. *See* Dkt. #69 at 9-10. There is likewise a dispute of fact as to the type of physical touch that Ms. Pancerman claims occurred—specifically, whether it was a hit or a push. *See id.* However, it is undisputed that Captain Ouillette did not personally witness the interaction between Mr. Karrani and Ms. Pancerman. It is likewise undisputed that he based his decision to remove Mr. Karrani on a flight attendant's account, corroborated by a second flight attendant, that Plaintiff touched her in an inappropriate way that she considered assault after she directed him to use the back lavatory. *See* Dkt. #68-1 at 20.

Plaintiff argues that 49 U.S.C. § 44902 required Captain Ouillette to do more than defer to his flight attendants—rather, he should have independently investigated the different versions of events when deciding whether to remove Mr. Karrani. Dkt. #69 at 28-30. The cases cited by Plaintiff do not support this proposition. Unlike *Cordero*, where the flight attendant identified the wrong passenger for removal, this case does not involve a problem of mistaken identity requiring more careful action by the Captain—it is undisputed that Mr. Karrani had the alleged

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 12

conflict with Ms. Pancerman. *Cf. Cordero*, 681 F.2d at 670–72. *Id.* Likewise, *Eid* addresses removal of passengers under the Tokyo Convention, not the Federal Aviation Act, wherein the court applied a standard of "reasonableness." *Cf. Eid*, 621 F.3d at 869–71. Plaintiff also cites to language in DOT's guidance documents and administrative orders to show that Captain Ouillette was obligated to conduct an independent factual investigation. However, as Plaintiff acknowledges, such material does not set forth legally binding law. *See* Dkt. #69 at 29 (arguing that DOT materials should be entitled to deference).

On the contrary, courts analyzing the lawfulness of a captain's removal decision routinely consider only that information acted upon by the captain—not the information "he reasonably *should have* known." *Cerqueira*, 520 F.3d at 14–15 (1st Cir. 2008) (emphasis added); *see also Dasrath,* 467 F.Supp. 2d at 446 ("[I]f [the Captain] reasonably believed that something had taken place (even if it had not), his reasonable belief is what is critical, not what actually took place."). Consequently, in instances such is this one, where flight attendants may have provided exaggerated or false information to the captain, the inquiry nevertheless depends on the reasonable belief of the captain. *See Christel v. AMR Corp.,* 222 F. Supp. 2d 335, 340 (E.D.N.Y. 2002) (Granting summary judgment for airline where plaintiff/passenger claimed pilot who ordered removal was provided with false information by a member of the flight crew, despite thirteen passengers offering to corroborate passenger's story); *see also Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 848 (S.D. Ohio 2003) ("[Captain] is entitled to rely on the information provided to him by his crew despite any exaggerations or false representations."). As a matter of law, Captain Ouillette's decision to believe his flight attendants—without conducting his own factual investigation—was not arbitrary and capricious.

Lastly, Plaintiff argues that JetBlue was obligated to allow Mr. Karrani to re-board the flight after he spoke with police. In support of this proposition, Plaintiff again relies on language from non-binding DOT administrative orders. Dkt. #69 at 29. Even if these administrative orders are entitled to a level of deference, they do not support Plaintiff's proposition that JetBlue was required to allow Mr. Karrani to re-board after he spoke with police about his conflict with Ms. Pancerman. The referenced orders involve passengers initially removed from an aircraft to conduct secondary security screening. *See* Dkt. #60-1 at 27-28; 32. Here, Plaintiff was removed after an alleged physical altercation with a flight attendant—not so that the airline could conduct secondary screening. Mr. Karrani's meeting with police is not analogous to a secondary security screening that effectively "clears" an individual to fly upon further inspection. Accordingly, Plaintiff has raised no material dispute that JetBlue exceeded its authority under Section 44902 in prohibiting Mr. Karrani from re-boarding.

### b. Plaintiff has not raised a triable issue of fact that unlawful discrimination more likely motivated JetBlue's actions.

Plaintiff has likewise failed to raise a material dispute of fact that unlawful discrimination more likely motivated JetBlue's actions. As proof of racial animus, Plaintiff relies on testimony from a passenger on a 2016 JetBlue flight who claimed that Ms. Pancerman racially discriminated against her two years prior to Mr. Karrani's flight. Dkt. #69 at 10. While courts typically view past complaints by others within a protected class as only "collaterally relevant" to private, non-class action discrimination lawsuits, such evidence may be relevant "in *limited circumstances* where a plaintiff can make some showing to connect it to his or her claims." *Walech v. Target Corp.*, No. C11-254 RAJ, 2012 WL 1068068, at *7 (W.D. Wash. Mar. 28, 2012) (emphasis added). Likewise, DOT has indicated that in evaluating claims against airlines for discriminatory

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 14

removal, prior complaints of discrimination by a crew member can be "essential" evidence for investigating such claims. Dkt. #60-1 at 24. In accordance with this view, this Court granted Plaintiff's request to compel production of unredacted passenger complaints filed against Ms. Pancerman in the last ten years to determine whether Mr. Karrani's removal fit a larger pattern of Ms. Pancerman mistreating and/or unfairly removing racial minorities from JetBlue flights. *See* Dkt. #77 at 4. This discovery order compelled JetBlue to produce the names of all persons who submitted complaints against Ms. Pancerman, which Plaintiff estimated could amount to seven individuals who complained about her conduct on six flights. Dkt. #36 at 3.

Despite this broad scope of discovery of complaints against Ms. Pancerman, Plaintiff only proffers testimony from Fatima Wachuku, who was removed from a JetBlue flight in 2016, as evidence of Ms. Pancerman's racial animus against Mr. Karrani. In recalling her interaction with Ms. Pancerman, Ms. Wachuku concludes that her mistreatment could only be explained by racial animus: "[T]here's no other reason why you would sit here and try to create a commotion like this. . . . So what would be the cause for you to do this other than my race?" Dkt. #68-1 at 88. Although Plaintiff also references removal of a second black woman from Ms. Wachuku's 2016 flight, *see* Dkt. #68-1 at 88, Plaintiff does not allege that Ms. Pancerman was involved. *See* Dkt. #69 at 12. Moreover, this Court previously determined that the removal of the second woman had no clear connection to Ms. Pancerman. *See* Dkt. #77 at 8. In sum, Plaintiff's circumstantial evidence is predicated on one individual's testimony that Ms. Pancerman's animus towards her could only be explained by racial animus.

No reasonable jury could find that Ms. Wachuku's testimony amounts to specific or substantial evidence of racial animus against Mr. Karrani. It is not specific, as it merely states a

conclusion drawn by a passenger on a flight, two years prior to Mr. Karrani's. Nor is it substantial, as it represents one story out of what Plaintiff has indicated are multiple complaints against Ms. Pancerman for unfairly demanding passengers' removal. *See* Dkt. #36 at 3. On the contrary, another person's circumstantial evidence of discrimination by the same bad actor is hardly sufficient to establish even a prima facie inference of discriminatory animus. *See Santos v. Peralta Cmty. Coll. Dist.*, No. C-07-5227 EMC, 2009 WL 3809797 (N.D. Cal. Nov. 13, 2009) (Holding evidence insufficient to establish prima facie discrimination case where both plaintiff and co-worker alleged mistreatment by supervisor). Given that Plaintiff has not raised a material dispute of fact regarding Ms. Pancerman's racial animus towards Mr. Karrani, it is unnecessary to reach the question of whether a flight attendant's racial bias is imputable to Captain Ouillette, who held the ultimate decision-making authority on Plaintiff's removal from the flight.

For the foregoing reasons, while the Court is sympathetic to the ordeal suffered by Mr. Karrani during his travels home, he has not raised a triable issue of fact that JetBlue's decision to remove him from the flight was due to his race. Given the power held by flight attendants to report safety issues to a plane's captain, the disputed facts of this case raise the question of whether flight attendants who routinely request removal of passengers should be subject to closer scrutiny by an airline's management to ensure such issues are reported with honesty and integrity. However, such a question lies outside the scope of this case and is not within the province of this Court to answer.

## IV.　　CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendant JetBlue's Motion for Summary Judgment (Dkt. #52) is GRANTED in entirety. This case is now CLOSED.

DATED this 31 day of July 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE