1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIKARIM KARRANI,

    Plaintiff,

    v.

JETBLUE AIRWAYS CORPORATION, a
Delaware Corporation,

    Defendant.

Case No. C18-1510-RSM

ORDER DENYING PLAINTIFF'S
MOTION TO ALTER OR AMEND
JUDGMENT AND DENYING REQUEST
FOR SANCTIONS

## I.   INTRODUCTION

15

16    This matter comes before the Court on Plaintiff Abdikarim Karrani's Motion to Alter or

17 Amend Judgment.  Dkt. #87.  On July 31, 2019, this Court granted summary judgment dismissal

18 of Plaintiff's claims against Defendant JetBlue Airways Corporation ("JetBlue") and entered

19 judgment for JetBlue.  Dkts. #84, #85.  On August 28, 2019, Plaintiff moved to alter or amend

20 the judgment on the basis that JetBlue withheld key documents that would have changed the

21 outcome of the Court's decision.  Dkt. #87 at 3.  JetBlue opposes Plaintiff's Motion.  Dkt. #100.

22 Plaintiff separately moved for sanctions, Dkt. #86, which JetBlue also opposes.  For the reasons

23

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 1

set forth below, the Court DENIES Plaintiff's Motion to Alter or Amend Judgment and his request for sanctions.

## II.    BACKGROUND

On July 31, 2019, this Court granted summary judgment dismissal of Plaintiff's claims against JetBlue for unlawful discrimination under 42 U.S.C. § 1981.  Dkt. #84.  The same day, the Court entered judgment for JetBlue that dismissed all claims in the underlying lawsuit.  Dkt. #85.  On August 28, 2019, Plaintiff filed the instant motion claiming that JetBlue improperly withheld three "critical" documents: (1) Section 7 of the Flight Attendant Manual ("FAM § 7"); (2) the Pilot Manual ("PM") and (3) various pilot training materials "that may provide guidance to pilots on addressing issues like race and implicit bias" related to alleged passenger misconduct. Dkt. #87 at 2-3.

### A.  Production of SSI Documents

On December 12, 2018, parties submitted their joint status report and discovery plan.  Dkt. #10.  The plan discussed the potential need for parties to secure approval from the Transportation Security Administration ("TSA") for production of material marked as Sensitive Security Information ("SSI"), as required by federal law.  Dkt. #10 at 3-4 (citing 49 C.F.R. § 1520 *et seq.*). TSA reviews documents containing SSI under "the 525(d) process," wherein individuals may obtain access to SSI in civil litigation if they can demonstrate substantial need for the information in preparation of their case and pass a TSA background check.  *See* Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, § 525, 120 Stat. 1382 (Oct. 4, 2006).  Parties agreed that because Plaintiff would potentially seek documents containing SSI in discovery, JetBlue

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 2

1  would produce a log of all material withheld as SSI so that Plaintiff could evaluate whether he

2  would request access to those documents from TSA.  Dkt. #10 at 4.

3  **B.  Plaintiff's Discovery Requests**

4  On February 6, 2019, Plaintiff served his first set of discovery requests on JetBlue.  This

5  included Request for Production ("RFP") 24, which requested "all documents related to the rules,

6  policies, procedures, contract provisions, federal or state regulations or laws in effect at JetBlue

7  or governing JetBlue's actions for the removal of a passenger from a flight before during, or after

8  the flight." Dkt. #88-1 at 17.  In its response dated March 15, 2019, JetBlue stated that an excerpt

9  from its Flight Operations manual—the FAM § 7—contained information responsive to RFP 24.

10  Dkt. #88-1 at 35.  However, because this excerpt of the manual was designated as SSI, TSA

11  needed to approve its production to Plaintiff.  *Id.*  Discovery closed on April 29, 2019.  Dkt. #11.

12  On May 1, 2019, Plaintiff's counsel contacted TSA regarding access to the FAM § 7.  Dkt.

13  #88-1 at 64.  Counsel was redirected to various TSA staff until finally reaching TSA attorney

14  Kate Gannon on May 22, 2019, who initiated the SSI review process.  *See id.* at 60-64.  On June

15  10, 2019, TSA asked JetBlue to provide them with FAM § 7 so that TSA security experts could

16  identify and redact the SSI with specificity.  *Id.* at 86.  TSA notified Plaintiff's counsel that if

17  counsel determined he had a substantial need for the SSI after seeing the redacted version of the

18  FAM § 7, Plaintiff could contact TSA again to initiate the Section 525(d) process.  *Id.*  JetBlue

19  provided the documents to TSA one week later, on June 17, 2019.  *Id.* at 101.  TSA returned the

20  redacted version of the FAM § 7 to JetBlue on July 3, 2019, who in turn produced FAM § 7 with

21  TSA-approved redactions to Plaintiff on July 8, 2019.  *Id.* at 116.  On July 11, 2019, counsel for

22  Plaintiff contacted TSA explaining that Plaintiff needed information contained in the redacted

23  ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 3

material.  Dkt. #81 at ¶ 6.  The next day, JetBlue produced a second version of FAM § 7 which Plaintiff filed under seal in support of the instant motion.  Dkt. #88-1 at 133-34.

On July 21, 2019, Plaintiff's counsel "realized that Section 7 of the FAM, would likely be the same procedures for pilots" and asked JetBlue whether a manual existed for pilots similar to the manual for flight attendants.  Dkt. #88 at ¶ 8; Dkt. #88-1 at 136.  JetBlue confirmed that JetBlue's Flight Operations Manual, which included the FAM § 7, contained separate excerpts that applied to pilots (referred to hereafter as "the PM").  Plaintiff then notified TSA that JetBlue would provide TSA with the PM for review and redaction.  Plaintiff also asked that TSA conduct the review "as soon as possible" given parties' late August trial date.  Dkt. #88-1 at 136.  On July 28, 2019, Plaintiff sent TSA a follow-up message asking whether JetBlue had provided them with the PM.  *Id.* at 143.  In this same email, Plaintiff asked JetBlue whether there were any training materials for the pilots for addressing customer disturbances and, if so, to also provide those to TSA for review.  *Id.*  On July 29, 2019, JetBlue confirmed that it had submitted the PM to TSA that morning but did not mention any training materials.  *Id.* at 146.  On July 31, 2019, the Court dismissed this case on summary judgment before JetBlue produced the PM or any pilot training materials to Plaintiff.  *See* Dkt. #84.

### III.   DISCUSSION

#### A.  Motion to Strike

As an initial matter, JetBlue moves to strike Plaintiff's Proposed Findings of Fact and Conclusions of Law ("the PFF").  Dkt. #99 at 12; Dkt. #100 at 8.  Plaintiff filed the PFF as an exhibit to both his Motion to Amend and Motion for Sanctions.  *See* Dkts. #86-1, #87-1.  The PFF totals forty-four pages and includes both proposed factual findings and legal argument.  JetBlue

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 4

argues that the Court must strike Plaintiff's PFF pursuant to the local rules, which limit motions to twelve pages unless the party successfully moves to file an overlength brief.  Dkt. #99 at 12 (citing Local Rules W.D. Wash. LCR 7(e)(4) and 7(f)).  Plaintiff responds that "findings of fact are appropriate in sanctions motions" and the PFF therefore aids the Court in reaching its decision. Dkt. #108 at 5 (citing *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 n.2 (9th Cir. 1983)). Plaintiff does not respond to JetBlue's Motion to Strike the PFF with respect to his Rule 59(e) Motion.  *See* Dkt. #110.

The Court finds nothing in *Wyle* supporting Plaintiff's argument that he may file a forty-four-page document containing legal argument and proposed factual findings to support either his Motion for Sanctions or his Rule 59(e) Motion.  Instead, *Wyle* stands for the proposition that an appellate court reviews a district court's factual findings on a motion for sanctions under the clearly erroneous standard.  *Wyle*, 709 F.2d at 589 n.2.  Given that Plaintiff declined to move to file an overlength brief, the Court must grant JetBlue's Motion to Strike the PFF as to both of Plaintiff's motions.  To do otherwise would condone Plaintiff's effort to circumvent the twelve-page limit.  *See* Local Rules W.D. Wash. LCR 7(e)(4).  Accordingly, JetBlue's Motions to Strike, Dkts. #99, #100, are GRANTED.

**B.  Standard of Review**

A district court has considerable discretion when considering a motion to alter or amend a judgment under Rule 59(e).  *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).  There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 5

motion is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law. *Id.* Vacating a prior judgment under Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.*

### C. "Newly Discovered" Evidence under Rule 59

Plaintiff does not argue manifest error by the Court in its prior ruling, nor does he identify a change in the controlling law. Instead, Plaintiff submits the FAM § 7 as "new evidence" compelling the Court to reverse its previous ruling. Dkt. #87 at 3. Plaintiff also contends that the PM and training materials likely contain information that would change the Court's summary judgment analysis. *Id.* at 2.

The Court finds that the FAM § 7 is not "newly discovered" evidence for the purposes of Rule 59. Plaintiff admits that he received Version 2 of the FAM § 7 on July 12, 2019 but failed to raise it before the Court's summary judgment ruling on July 31, 2019. Dkt. #87 at 2. He justifies his delay on the basis that he anticipated discussing the manual at oral argument. Dkt. #110 at 2. The local rules, however, clarify that all motions are decided without oral argument unless otherwise ordered by the court. Local Rules W.D. Wash. LCR 7(b)(4). Plaintiff also argues that since he discovered the evidence only after briefing was complete on the summary judgment motion, he could not reasonably have used the information before the Court dismissed the case. Dkt. #110 at 2.

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 6

The first criterion for reconsideration based on "newly discovered evidence" requires that the evidence in question was not in the moving party's possession at the time of "trial." *Albuquerque v. Arizona Indoor Soccer, Inc.,* 880 F.2d 416 (9th Cir. 1989). In cases where the court dismisses the case on summary judgment, the moving party must not have had possession of the evidence prior to the court's disposition on the motion for summary judgment. 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2859 (3d ed.2019) ("Under both rules [59 and 60], if [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered and does not entitle the party to relief."); *see also Branch Banking & Tr. Co. v. Frank*, No. 2:11-CV-1366 JCM CWH, 2013 WL 6669100, at *7 (D. Nev. Dec. 17, 2013) (citing *Engelhard Indus., Inc. v. Research Instrumental Corp.,* 324 F.2d 347, 352 (9th Cir.1963)). Since Plaintiff possessed this evidence prior to the court granting summary judgment, these documents are not "newly discovered."

After briefing on a motion is complete, parties may bring matters to the attention of the court by requesting leave to file a sur-reply or a supplement. Here, Plaintiff possessed the FAM § 7 prior to the Court's order of dismissal yet failed to bring it to the Court's attention until now. By not requesting leave to file a sur-reply or a supplement, Plaintiff relinquished his ability to have the FAM § 7 considered as part of the summary judgment motion. *See Pac. Aerospace & Elecs., Inc. v. SRI Hermetics, Inc.*, No. CV-05-0155-AAM, 2006 WL 47540, at *3 (E.D. Wash. Jan. 9, 2006) (Rejecting plaintiff's argument that no mechanism allowed it to present evidence prior to entry of order of dismissal); *see also Frank*, 2013 WL 6669100, at *7 (same). Moreover, the same flowchart Plaintiff now relies on in the instant motion was produced as early as June 11, 2019—six days before Plaintiff filed his response brief—but was not referenced until this point.

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Dkt. #102 at ¶ 4; Dkt. #105 at 29.  To allow a party to present available evidence after an adverse ruling has been made "would contradict every notion of judicial economy" and cannot be considered "newly discovered."  *Frank*, 2013 WL 6669100, at *7.

Plaintiff also argues that the Court must vacate its judgment based on the missing PM and training materials, since they "likely contain[] specific procedures for the captain to follow" that were applicable to Mr. Karrani's removal from the flight.  Dkt. #87 at 3.  Again, the Court is not convinced by Plaintiff's argument.  On July 21, 2019, Plaintiff notified TSA of the PM and requested that it conduct its review for SSI "as soon as possible" because of the upcoming trial date.  Dkt. #88-1 at 136.  Despite urging TSA to expedite its review because of the approaching trial date, Plaintiff declined to file a Rule 56(d) declaration to request that the Court either deny or defer consideration of JetBlue's summary judgment motion to allow Plaintiff time to receive and review the materials.  *See* Fed. R. Civ. P. 56(d).  For that reason, when the Court ruled on JetBlue's motion, it had no knowledge of any of the materials that Plaintiff now contends would have changed the outcome of this case.  Plaintiff again requests reconsideration for reasons he could have raised before an adverse ruling.  Granting such a request undermines both the purpose of Rule 56 and judicial economy.  *See Ross v. F/V MELANIE*, C95-654Z, 1996 WL 521413, at *1 (W.D. Wash. Aug. 8, 1996) (Denying motion to amend judgment where plaintiff failed to submit affidavit under Fed. R. Civ. P. 56 to request additional time to respond at summary judgment stage).

For these reasons, Plaintiff's failure to file a sur-reply, supplement, Rule 56 affidavit, or any other notice that would have advised the Court of these discovery issues prior to ruling is sufficient to warrant denial of Plaintiff's Motion under Rule 59(e).

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 8

### D.  Discovery Misconduct under Rule 60(b)(3)

Although Plaintiff does not expressly reference Fed. R. Civ. P. 60(b)(3), his allegations of discovery abuse by JetBlue and motion for sanctions require that the Court also consider his Motion under Rule 60(b)(3).  When misconduct in discovery is alleged, courts apply the Rule 60(b)(3) standard for Rule 59 motions.  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).  Rule 60(b)(3) permits a court to relieve a party of a final judgment obtained through "fraud . . . misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  To prevail under Rule 60(b)(3), the moving party must (1) establish by clear and convincing evidence that a judgment was obtained by fraud, misrepresentation, or misconduct, and (2) that the conduct complained of prevented the moving party from fully and fairly presenting the case.  *Hausman v. Holland Am. Line-U.S.A.*, No. CV13-0937 BJR, 2016 WL 51273, at *2 (W.D. Wash. Jan. 5, 2016) (citing *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)).  Rule 60(b)(3) "is aimed at judgments that were unfairly obtained, not at those that are merely factually incorrect."  *Id.* (citing *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir. 1987)).  In the context of discovery disputes, failure to disclose or produce materials requested in discovery may constitute misconduct under Rule 60(b)(3).  *Jones*, 921 F.2d at 879.  Courts disagree on whether such misconduct includes accidental omissions or is limited to instances where the non-moving party engaged in intentionally malicious behavior.  *Hausman*, 2016 WL 51273, at *3 (collecting cases).

### i.    The FAM § 7

Upon review of the record, the Court finds that JetBlue's delayed production of the FAM § 7 cannot be blamed on unilateral discovery misconduct by JetBlue.  On the contrary, it appears

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 9

that parties' joint failure to develop a clear discovery process regarding SSI-designated material resulted in the delays.  Plaintiff alleges that JetBlue "used the SSI objection as a sword by falsely claiming that the FAM § 7 had to be withheld in entirety" and should have produced a redacted version of the FAM § 7 on March 15, 2019.  *Id.* at 7.  Plaintiff is incorrect.  The information that constitutes SSI changes depending on factors such as timing and proposed recipients of the material.  *See* Department of Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, § 525, 120 Stat. 1382 (Oct. 4, 2006); *see also* 49 C.F.R. § 1520 *et seq.*  For that reason, federal law authorizes only TSA—not private airlines—to determine what material must be redacted as SSI versus what may be produced to litigants:

> Congress has delegated to the TSA the determination of what information would be detrimental to the safety of air transportation if disclosed. . . . Sensitive security information, by its very nature, cannot be precisely identified in advance. Moreover, . . . what is sensitive security information, that is, what information would be detrimental to air transportation if disclosed, changes with the circumstances.

*Chowdhury v. Nw. Airlines Corp.*, 226 F.R.D. 608, 612 (N.D. Cal. 2004).  49 C.F.R. § 1520.5(b)(1) designates security plans in flight operation manuals as "information constituting SSI," and the footer on every page of the FAM § 7 plainly reads, in part: "*No part of this record may be disclosed to persons without a 'need to know,' as defined in CFR parts 15 and 1520, except with the written permission of the administrator of the Transportation Security Administration or the Secretary of Transportation.*"  *See generally* Dkt. #90 (emphasis added).  Accordingly, JetBlue properly withheld the FAM § 7 until TSA could determine which portions of the document should be redacted as SSI.  JetBlue therefore did not engage in misconduct by refusing to produce the FAM § 7 before TSA could conduct the SSI review.

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 10

1    Other issues that delayed the production of FAM § 7 cannot be blamed solely on JetBlue.

2    JetBlue timely notified Plaintiff about the FAM § 7 on March 15, 2019, but Plaintiff's counsel

3    waited until May 1, 2019—more than six weeks later—to contact TSA about SSI redactions.  Dkt.

4    #88-1 at 64.  Production was further delayed by Plaintiff's counsel's lack of knowledge regarding

5    how to contact TSA for SSI review.  *See id.* at 60-64 (Plaintiff was redirected to various TSA

6    staff before reaching attorney Kate Gannon on May 22).  Because of this delay, TSA did not

7    receive the materials from JetBlue until mid-June, and it took several weeks for TSA to review

8    the information and provide their redactions to JetBlue for production in early July.  *Id.* at 86.

9    JetBlue undoubtedly could have expedited this process by reaching out directly to TSA

10   counsel or, at a minimum, providing Plaintiff with the proper contact information for TSA's

11   attorneys.  However, despite Plaintiff's argument that "typical procedure" for SSI material

12   required JetBlue to send its requests directly to TSA, Dkt. #108 at 2, both parties' actions

13   comported with their discovery plan. Dkt. #10 at 4 ("JetBlue will produce a log of any responsive

14   Sensitive Security Information in discovery so that Plaintiff can evaluate whether to pursue

15   obtaining access.").  Based on this language, JetBlue was not obligated to do more than simply

16   identify the responsive material containing SSI in its privilege log and allow Plaintiff to decide

17   whether he would request access to the material.  Such delays could have been avoided had parties

18   developed a more detailed discovery plan for production of SSI material, including how parties

19   would coordinate with TSA to review and redact the material.  Accordingly, given Plaintiff's

20   delays in reaching out to TSA and parties' mutual failure to develop an appropriately detailed

21   discovery plan for SSI material, Plaintiff cannot blame production delays on misconduct by

22   JetBlue.

23   ORDER DENYING PLAINTIFF'S MOTION TO
     ALTER OR AMEND JUDGMENT AND
     DENYING REQUEST FOR SANCTIONS
     PAGE - 11

### ii.      The PM and Training Materials

Plaintiff also alleges discovery misconduct by JetBlue with respect to withholding the PM and training materials for pilots.  Dkt. #87 at 2-3.  On July 19, 2019, Plaintiff's counsel notified JetBlue's counsel that upon review of the Flight Attendant Manual, "it occurred to [him] that there must be a Pilot manual that discusses removal and threat levels."  Dkt. #104 at 6.  On July 21, 2019, counsel conferred telephonically on multiple matters, including whether there were excerpts from the FOM that applied separately to pilots.  *Id.* at ¶¶ 4-5.  Counsel for JetBlue agreed to inquire into manual excerpts and, on July 29, 2019, produced the PM to TSA for review.  Dkt. #88-1 at 146.  Plaintiff claims that JetBlue should have initially listed the PM in its March 15, 2019 privilege log, which only listed the manual for flight attendants without reference to the corresponding manual for pilots.  *Id.* at 27; Dkt. #87 at 2.  JetBlue does not dispute that the PM should have been listed in the privilege log alongside the FAM, but counters that "neither JetBlue personnel assisting in our discovery nor our office, as counsel had thought to inquire as to manual excerpts related to passenger removals that were specific to pilots" because "the overwhelming focus of Plaintiff's discovery had been on the actions of the Inflight crewmembers" rather than pilots.  Dkt. #104 at ¶ 5.

On one hand, given that JetBlue's summary judgment briefing focused heavily on pilots' authority to remove passengers, the Court is skeptical that it "never occurred" to JetBlue staff or its counsel to inquire about a manual for pilots.  *See generally* Dkt. #52.  However, not even Plaintiff's counsel thought to inquire about a pilot manual until mid-July—despite the fact that JetBlue had produced documents on the regulatory framework and contract of carriage provisions for pilots months earlier, as well as other excerpts from the Flight Attendant Manual.  *See* Dkt.

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 12

#104 at ¶ 5.  Plaintiff's counsel likewise failed to file a Rule 56 affidavit to delay consideration of the summary judgment motion once JetBlue confirmed that it had a manual for pilots. Moreover, while the term "misconduct" under Rule 60(b)(3) may cover even accidental omissions, *see Jones*, 921 F.2d at 879, JetBlue was in the process of producing the document to Plaintiff when the Court granted summary judgment dismissal.  *See* Dkt. #88-1 at 146 (confirming JetBlue sent PM to TSA for review).  This fact distinguishes this case from others addressing alleged misconduct under Rule 60(b)(3), wherein withholding parties repeatedly denied the existence of a document despite specific inquiries from the movant.  *See, e.g.*, *Hausman*, 2016 WL 51273, at *2 (Non-movant deleted and withheld emails, tampered with witness testimony, fabricated injuries and testified falsely); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928 (1st Cir. 1988) (Defendant repeatedly "played possum" in response to interrogatories and Rule 34 requests); *Rozier v. Ford Motor Co*., 573 F.2d 1332, 1341 (5th Cir. 1978) (Non-movant withheld document in violation of Court's discovery order).  In contrast, JetBlue promptly agreed to search for and produce the document once Plaintiff asked whether a pilot corollary to the FAM § 7 existed.  For these reasons, the Court finds that Plaintiff has failed to establish by clear and convincing evidence that JetBlue committed discovery misconduct warranting the extraordinary remedy sought by Plaintiff.

The Court likewise finds that Plaintiff has failed to establish that JetBlue unlawfully withheld pilot training materials.  Plaintiff's Motion claims that JetBlue improperly withheld pilot training materials that "may provide guidance to pilots on addressing issues like race and implicit bias in the context of allegations of customer misconduct."  Dkt. #87 at 2-3.  This Court previously compelled JetBlue to produce all documents "related to the training received by JetBlue

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 13

1  employees on or relating to (a) race or national origin discrimination and (b) implicit bias that

2  were current at the time of Flight 263 . . . ."  Dkt. #50 at 9.  On July 28, 2019, Plaintiff's counsel

3  wrote to JetBlue: "Since there were training materials for the flight attendants, one would think

4  there are training materials for the pilots right?  If so, if any of them require TSA review, please

5  send them along too or produce them."  Dkt. #88-1 at 143.  Counsel for JetBlue replied the

6  following day, "[W]e are conferring with JetBlue regarding any related training materials."  *Id.*

7  at 146.  Neither Plaintiff's original request nor JetBlue's response references material related to

8  race or implicit bias training.  For that reason, Plaintiff's contention that JetBlue withheld anti-

9  bias or anti-discrimination training material, in violation of this Court's previous order, is

10  unfounded.  JetBlue's response likewise provides no indication that JetBlue improperly withheld

11  any pilot training materials.  On the contrary, JetBlue's email simply indicates that it would search

12  for additional pilot training materials to see if responsive documents existed.

13      Accordingly, the Court finds that Plaintiff has failed to provide clear and convincing

14  evidence of discovery misconduct under Rule 60(b)(3).

15  **E.  Effect of Procedural Manuals on Summary Judgment Analysis**

16      The Court finds that Plaintiff has failed to meet his respective burdens under Rule 59(e)

17  or Rule 60(b)(3) to obtain the extraordinary remedy he seeks.  Nevertheless, given the lengthy

18  process of accessing SSI-designated material and the numerous discovery disputes between these

19  parties, the Court finds it necessary to address the merits of Plaintiff's motion to determine if

20  granting his requested relief would prevent any manifest injustice.  Having reviewed the FAM §

21  7 and Plaintiff's descriptions of the PM and training materials, the Court is not persuaded that

22

23  ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 14

procedures for flight attendants and pilots contained in the FAM § 7, nor the anticipated information in the PM or training materials, would have changed the Court's analysis.

In granting summary judgment for JetBlue, the Court found that Plaintiff failed to raise a triable issue that JetBlue removed him from Flight 263 because of his race and/or ethnicity. Dkt. #84 at 9. Plaintiff offered no direct evidence of discrimination by Ms. Pancerman, Captain Ouillette, or other members of the JetBlue flight crew. *Id.* at 6. For that reason, Plaintiff's Section 1981 claim hinged entirely on whether circumstantial evidence created an inference of discrimination against Mr. Karrani. *Id.* (citing Dkt. #69 at 20-21). Circumstantial evidence for individual claims of discrimination is evaluated under the *McDonnell Douglas* framework. *White v. Cal.*, 754 Fed. Appx. 575, 576 (9th Cir. 2019). If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse action. Upon doing so, the burden shifts back to plaintiff to prove, with "specific and substantial" evidence, that the reason was merely pretext for intentional discrimination. *Id.* at 1152. On summary judgment, the Court found that Plaintiff had not offered "specific and substantial" evidence raising a triable issue of pretext. Dkt. #84 at 9.

Plaintiff claims that the FAM § 7 provides "specific and substantial" evidence that JetBlue's reasons for removing Mr. Karrani were merely pretext, and that the missing PM and training materials would likely provide such evidence. *See* Dkt. #86 at 10. Plaintiff's argument relies on a line of employment law cases wherein an employer's deviation from established policy or practice in terminating an employee constitutes circumstantial evidence of discrimination. Dkt. #110 at 2 (citing *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108 (9th Cir. 2011); *Anderson v. Wal-Mart Stores, Inc.*, No. 2:16-CV-00072-SAB, 2017 WL 1960673 (E.D. Wash. May 11,

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 15

2017); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201 (9th Cir. 2008); *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21 (1st Cir. 1998)). The courts in these employment cases found evidence of pretext where an employer deviated from company policy or practice in deciding to terminate an employee. Under this reasoning, Plaintiff argues, any deviation by JetBlue crewmembers from the Flight Operations Manual, which includes the FAM § 7 and the PM, should likewise constitute evidence of pretext. Dkt. #110 at 2-3. Plaintiff points to two flowcharts provided in the FAM § 7 and describes various ways in which JetBlue's flight crew—specifically Ms. Pancerman and Captain Ouillette—deviated from these step-by-step procedures. Dkt. #87 at 5-7. Plaintiff also argues that Ms. Pancerman violated FAM § 7.2.7, despite the fact that this subsection refers to unwanted touching between passengers. *Id.* at 6. With respect to the missing PM, Plaintiff contends that the manual "likely contains specific procedures" breached by Captain Ouillette with respect to Mr. Karrani's removal. *Id.* at 2.

The Court finds Plaintiff's arguments unavailing. First, the FAM § 7 explicitly preserves the flight crew's discretion to deviate from its procedures. When responding to customer disturbances, flight attendants may skip directly to the step of notifying the flight deck. *Id.* at 6 ("Depending on the severity of the disturbance, Crewmembers may need to bypass steps on the flow chart."). The manual also states that "[s]ecurity incidents may require the use of irregular procedures that may deviate from established policies in the Flight Attendant Manual . . . ." Dkt. #90 at 14. Accordingly, Plaintiff's claim that the FAM § 7 required the crewmembers on Flight 263 to follow the same steps set forth in the flow chart is unsupported. *See* Dkt. #87 at 5 (arguing that the incident with Mr. Karrani was required to end "in the air" at Step 1 of Flow Chart 7-1.) Moreover, the FAM § 7 does not specify—nor does it attempt to specify—the proper procedure

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 16

for responding to the unique conditions on Flight 263, which involved a crewmember's conflict with a passenger during an emergency landing.  Accordingly, while Plaintiff presents these employment cases as dispositive case law, he fails to provide a sufficient basis for applying them here.  The Court is therefore unpersuaded by Plaintiff's argument that the procedures set forth in the FAM § 7 raise a triable issue of pretext that saves Plaintiff's discrimination claim from summary judgment.

Furthermore, none of the materials referenced in Plaintiff's Motion change the Court's analysis that the captain's decision to remove Mr. Karrani was proper as a matter of law.  *See* Dkt. #84 at 9.  The undisputed fact remains true that Captain Ouillette, who held exclusive decision-making authority to remove passengers from the flight, did not personally witness the interaction between Mr. Karrani and Ms. Pancerman.  Dkt. #84 at 11-12 (citing 14 C.F.R. § 91.3(a)).  It likewise remains undisputed that Captain Ouillette based his decision on Ms. Pancerman's account of the incident that was corroborated by a second flight attendant.  *See id.* at 12; *see also* Dkt. #54 at ¶¶ 7-8 ("Based on the report of the physical contact by a passenger with a crewmember and failure to abide by a crewmember's instruction, I made the decision to remove the involved passenger from the flight.").  Even in instances where flight attendants have provided exaggerated or false information to the captain, a court's inquiry "nevertheless depends on the reasonable belief of the captain." Dkt. #84 at 13 (collecting cases).  The guidance provided in non-binding operation manuals or training materials therefore cannot eliminate a captain's discretion to rely on the representations of his flight crew.

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 17

1      For the reasons set forth above, neither the FAM § 7 nor the anticipated information in the

2  PM or training materials justify the "extraordinary remedy" requested by Plaintiff.  *Carroll*, 342

3  F.3d at 945.  Accordingly, the Court DENIES Plaintiff's Motion to alter or amend the judgment.

4      **F.  Sanctions**

5      Finally, the Court will address Plaintiff's Motion for Sanctions.  Dkt. #86.  Plaintiff argues

6  that sanctions are appropriate given JetBlue's misleading and bad faith representations related to

7  the FAM § 7, the PM, and the training materials, which he claims constituted "a complete failure

8  to respond" and unfairly tainted the summary judgment process.  *Id.* at 9-10.  Plaintiff requests

9  that the Court take several actions: (1) strike the summary judgment order; (2) order JetBlue to

10  produce the PM and any responsive pilot training materials; (3) strike JetBlue's Answer and enter

11  default judgment for Plaintiff; (4) award Plaintiff costs and fees to date for prevailing under his §

12  1981 claim; (5) order JetBlue to post all court orders on its Welcome webpage for ninety

13  consecutive days under the heading "Court Sanctions JetBlue"; and (6) set a trial date on the

14  damages question.  *Id.* at 10-11.  Plaintiff states that the factors "weigh in favor of the harshest

15  sanction; no other lesser sanctions will do."  *Id.* at 13.

16      Federal Civil Rule 37 provides that a court may order sanctions against a disobedient

17  party, including entry of a judgment by default, where the party fails to respond to interrogatories

18  or requests for document production.  Fed. R. Civ. P. 37(d).  Courts have refrained from awarding

19  sanctions under Rule 37(d) "unless there is a total failure to respond to the discovery requests."

20  *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990) (citing *Fjelstad v. Am.*

21  *Honda Motor Co.*, 762 F.2d 1334, 1339–40) (9th Cir. 1985)).  As set forth above, the Court is not

22  persuaded that JetBlue engaged in discovery misconduct warranting the extraordinary remedy of

23  ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 18

vacating the judgment, nor that the summary judgment process was unfairly tainted. Accordingly, the Court DENIES Plaintiff's request for sanctions.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to present new evidence warranting relief under Rule 59(e) or clear and convincing evidence of discovery misconduct warranting relief under Rule 60(b)(3).

Accordingly, and after having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that:

(1) JetBlue's Motions to Strike, Dkts. #99, #100, are GRANTED. Plaintiff's Proposed Findings of Fact and Conclusions of Law, Dkts. #86-1, #87-1, are stricken.

(2) Plaintiff's Motion to Alter or Amend the Judgment, Dkt. #87, is DENIED.

(3) Plaintiff's Motion for Sanctions, Dkt. #86, is DENIED.


DATED this 19 day of November 2019.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT AND
DENYING REQUEST FOR SANCTIONS
PAGE - 19